*TO BE FILED UNDER SEAL*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **T-NETIX, INC.,** | § | |
| | § | |
| **Plaintiff/Counter-Defendant,** | § | |
| | § | |
| **v.** | § | **Case No. 3:05-CV-0654-D** |
| | § | **ECF** |
| **VALUE-ADDED** | § | |
| **COMMUNICATIONS, INC.** | § | |
| | § | |
| **Defendant/Counter-Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **SECURUS TECHNOLOGIES, INC.** | § | |
| | § | |
| **Counter-Defendant.** | § | |

## GRUBER HURST'S POST-HEARING BRIEF

Gruber Hurst Johansen Hail Shank, LLP ("Gruber Hurst") files this Post-Hearing Brief addressing the post-hearing legal issues identified by the Court.

**I.**
**SUMMARY**

Value-Added Communications, Inc. ("VAC") wants to have its cake and eat it too. During the 2008 contempt proceeding, VAC took the position that Gruber Hurst was not a party to the March 3, 2006 Protective Order ("Protective Order") and, therefore, was not entitled to possession of any document protected by the Protective Order. VAC convinced Judge Sanderson of the same who, as a result, gave Gruber Hurst the option of returning the protected documents or entering an appearance as counsel of record – thereby becoming subject to the Protective Order. While Gruber Hurst never represented to Judge Sanderson which option it

decided to take, Gruber Hurst did later return physical copies of the protected documents, including the McAlexander Rebuttal Report (the "Report"), and destroyed electronic versions of the same, thereby going above and beyond what Judge Sanderson actually requested.  Gruber Hurst never entered an appearance as counsel of record.  VAC, however, has now sought to hold Gruber Hurst in contempt of court for violating the same Protective Order.  In a confounding twist, VAC still argues that Gruber Hurst is not a party to the Protective Order.  As a matter of law and logic, both cannot be true.  It is uncontested that VAC represented to Judge Sanderson in briefing and at the 2008 contempt hearing that Gruber Hurst was not a party to the Protective Order and VAC is now estopped from claiming that Gruber Hurst is a party to the Protective Order.  (2013 Hearing Trans. at 102-103).  (Ms. Clouston: "I believe we are bound [to the representations about Gruber Hurst not being a party to the Protective Order].").  In fact, were Gruber Hurst a party to the Protective Order, Gruber Hurst would be able to retain a copy of the Report, which was marked "Counsel's Eyes Only."

VAC also offers no factual basis to assert that Gruber Hurst is in contempt as a non-party to the Protective Order.  A non-party is only liable for contempt when the non-party "acts with the enjoined party."  *Whitcraft v. Brown*, 570 F.3d 268, 272 (5th Cir. 2009).  This requires that the non-party "knowingly aids, abets, or conspires with another to evade an injunction or order of a court . . . ."  *Waffenschmidt v. MacKay*, 763 F.2d 711, 726 (5th Cir.1985).  VAC presented no evidence at the hearing to suggest that Gruber Hurst entered into a conspiracy with any party to the Protective Order, including T-Netix or Securus, to violate the Protective Order.  In reality, T-Netix and Securus were totally unaware that Gruber Hurst possessed or produced the Report at the time, and it is baffling why they are included in this contempt proceeding at all.  Gruber Hurst itself only possessed and inadvertently produced the Report as a tiny part of a massive

2

document production that contained over 600,000 electronic pages. The firm also took immediate steps to identify and claw back the Report. Such details are important because Gruber Hurst cannot be held in contempt based on an aiding and abetting theory if it acted inadvertently and in good faith. *Whitcraft*, 570 F.3d at 272. (Noting that "good faith is relevant to whether a non-party knowingly aided or abetted another in violating a court order.").

Even putting aside the Protective Order, VAC has no reason or other legal basis upon which to bring a contempt charge against Gruber Hurst. The facts simply do not support sanctioning Gruber Hurst for being unaware that one document in an electronic folder containing 600,000 images was subject to the Protective Order. Gruber Hurst was not a party to the 2008 Hearing, was never ordered to take any certain conduct by Judge Sanderson, and made no representation to Judge Sanderson then or later as to what it would do. Gruber Hurst nonetheless undertook real and substantial efforts to return and delete documents. In fact, Lisa Miller testified that she pulled documents from attorney offices, deleted them from Gruber Hurst's server, and even checked the recycle bins. (2013 Hearing Trans. 225:13-19).

At the February 25, 2013 hearing the Court also asked Gruber Hurst to brief whether there is any other legal basis to sanction Gruber Hurst or hold it in contempt. There is not. Judge Fitzwater's October 31, 2012 Order of Reference notes that VAC's "application for order to show cause" related to whether Gruber Hurst and others "should not be held in contempt for violation of the court's March 3, 2006 protective order," not any oral directive made by Judge Sanderson at the April 16, 2008 hearing. In any event, contempt is only appropriate where "a court order was in effect" and "the order required certain conduct." *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*, 177 F.3d 380, 382 (5th Cir. 1999). Judge Sanderson presented Gruber Hurst with two options at the hearing, not an order for certain conduct. Even if Judge

Sanderson's options are construed as an order for certain conduct, the evidence at the February 25, 2013 hearing established that Gruber Hurst substantially complied because the firm took every reasonable step to return or delete copies of the Report.

Equally, there is no basis for sanctions under Rule 11 or the Court's inherent authority. Rule 11 "only applies to the presentation of 'pleading[s], written motion[s], or other paper[s]' to the court."). *Rogler v. Standard Ins. Co.*, 30 Fed.Appx. 909, 914, 2002 WL 307731, 4 (10th Cir. 2002). Even if Rule 11 did apply, it only covers four specific areas of implied representations dealing with delay, frivolous arguments, or situations where a party asserts a fact without a reasonable belief. (*See* infra at 18-19). None of these four areas apply here. Rule 11 also generally requires that a motion be brought by another party and only after a safe harbor period for the opposing party to make amends. Fed. R. Civ. P. 11(c). While a court can issue sanctions under Rule 11 without a party motion or safe harbor, this is a limited exception and the available sanctions do not include attorney fees or monetary payments to a party. (*See* infra at 18-19). Putting Rule 11 aside, the court's inherent power to sanction is also inapplicable. Use of inherent authority to sanction is discouraged, but this power is limited to situations where there is a finding of "bad faith," and there are no facts to support such a finding in this case. *Elliott v. Tilton*, 64 F.3d 213, 217 (5th Cir. 1995).

## II.
## ARGUMENT

**A.   The Court's First Question:  Whether Gruber Hurst Was Subject to the Protective Order Such that It Could be Held in Contempt of Court for Violating It?**

  *1.     VAC is Judicially Estopped From Arguing that Gruber Hurst is a Party to the Protective Order.*

VAC takes the contradictory position that Gruber Hurst is not a party to the Protective Order – and, therefore, not entitled to possess the Report – yet somehow Gruber Hurst should be

held to have violated the Protective Order by possessing the Report. Both cannot be true. Moreover, VAC is not free to choose which position it will take. In briefing and at the hearing before Judge Sanderson, VAC took the position that Gruber Hurst is not a party to the Protective Order and that its possession of documents, including the Report, violated the Protective Order.

"Judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding. The purpose of the doctrine is to prevent litigants from 'playing fast and loose' with the courts." *Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003). For judicial estoppel to apply, a party must show that "the position of the party to be estopped is clearly inconsistent with its previous one; and second, that party must have convinced the court to accept that previous position." *Id*. The party's previous position is broadly construed to include "[s]tatements made in a previous suit by an attorney before the court can be imputed to a party and subject to judicial estoppel." *Id*. (Noting that judicial estoppel can arrive from a party's "statements to the court in the pleadings, [the party's] own motions, in response to [another party's] motions, and at the pretrial hearing."). Judicial "acceptance," meanwhile, does not require a party to prevail on the merits but only that a court accept the position as that taken by the party. *Hall*, 327 F.3d at 399. ("The 'judicial acceptance' requirement does not mean that the party against whom the judicial estoppel doctrine is to be invoked must have prevailed on the merits. Our cases suggest *that doctrine may be applied whenever a party makes an argument with the explicit intent to induce the district court's reliance.*"); *see*, *Everett v. National Union Fire Ins. Co. of Pittsburg, P.A.*, 857 F.Supp.2d 611, 617, n.4 (S.D. Miss. 2012). (Noting that the Fifth Circuit "has also held that the judicial estoppel doctrine may be applied whenever a party makes an argument 'with the explicit intent to induce the district court's reliance.'").

It is uncontroverted that VAC represented to Judge Sanderson in briefing and at the hearing that Gruber Hurst was not a party to the Protective Order, and Judge Sanderson relied on those representations in giving Gruber Hurst the option of either entering an appearance as counsel in the VAC case or returning the documents.  He also relied on those representations in his Report and Recommendation.  (February 25, 2013 Hearing Exhibit 3 at 7-8) (finding that Gruber Hurst was not counsel under the Protective Order).  When questioned by this Court at the February 25, 2013 Show Cause hearing on the issue, VAC's former counsel and witness, Stephanie Clouston, reached the same conclusion – "I believe we are bound [to the representations about Gruber Hurst not being a party to the Protective Order]."  (2013 Hearing Trans at 102-103).  Ms. Clouston testified to the same on cross examination:

> Q. So you're telling the court that basically Gruber Hurst is not a party to the protective order, right?
>
> A. Yes. That was our position.  I think that's -- was the -- where the -- where Judge Sanderson essentially came out in his report as well, given that Gruber Hurst did not formally appear during the course of the hearing before Judge Sanderson.

(2013 Hearing Trans. at 78:16-22).

The transcript from the April 2008 hearing before Judge Sanderson confirms Ms. Clouston's recollection of the position she took on behalf of VAC.  To wit:

> "In addition, the agreed protective order clearly prohibits providing to anyone other than counsel hired for this case documents that have been designated as Counsel's Eyes Only Confidential Information, but they've also violated that provision of the protective order by first providing the documents to the Gruber firm, who we think from the record were not counsel in this case when they were provided the information . . . ."

(2008 Hearing Trans. at 28).

Nor was Ms. Clouston aware of any subsequent fact at the February 25, 2013 hearing that would have made Gruber Hurst a party to the Protective Order:

> Q. All right.  Again, suffice it to say, Gruber Hurst does not become counsel of record in the VAC case on behalf of T-Netix and Securus, they return the documents, and you're not aware of any document that they signed whereby they agreed to be subject to the protective order at least after Judge Sanderson had his hearing in the case.
>
> A. None that I'm aware of after that hearing. . . .

(2013 Hearing Trans. at 83:23 – 84:4).

The reality is that VAC now attempts to make Gruber Hurst subject to the same Protective Order that it unequivocally said Gruber Hurst was not subject to five years ago. Nothing has changed in the intervening years, except that it now seems to further VAC's unexplained objectives to argue that Gruber Hurst should be held in contempt of the Protective Order.  This about face represents a classic case for judicial estoppel, where a party's position has switched to suit the moment.  *See, Teledyne Industries, Inc. v. N.L.R.B.*, 911 F.2d 1214, 1217-1218 (6th Cir. 1990) ("Judicial estoppel . . . preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment.").

    2.    *VAC is Collaterally Estopped From Arguing that Gruber Hurst is a Party to the Protective Order.*

Judge Sanderson relied on VAC's representations and argument in making his findings that Gruber Hurst was not a party to the Protective Order and not entitled to keep the documents. Because Judge Sanderson determined that Gruber Hurst was not a party to the Protective Order in 2008, VAC is also collaterally estopped from relitigating an issue "identical to that litigated in the prior action."  *Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1422 (5th Cir.1995) (Noting that the four factors of collateral estoppel are "(1) the issue under consideration is identical to that litigated in the prior action; (2) the issue was fully and vigorously litigated in the prior action; (3) the issue was necessary to support the judgment in the prior case; and (4) there is no

special circumstance that would make it unfair to apply the doctrine.").  The issue was

vigorously litigated and Judge Sanderson noted that "both sides have filed extensive pleadings

relative to these motions with attachments."  (2008 Hearing Trans. at 4:6-8).  It is clear also from

the transcript that one of VAC's primary claims before the Court was "that Gruber Hurst had

[its] confidential information and documents" but was not a party to the Protective Order.  Judge

Sanderson agreed and gave Gruber Hurst the option of returning the documents or entering as

counsel of record – and thereby becoming subject to the Protective Order.  (2008 Hearing Trans.

at 69:14-20; 70:10-16).  Gruber Hurst did nothing subsequently to make itself subject to the

Protective Order or undermine the collateral estoppel effect of Judge Sanderson's ruling.

### 3.   There is no Factual Basis to Hold Gruber Hurst Liable as a Non-Party to the Protective Order.

When challenged by the Court on the estoppel issue, VAC's counsel claimed Gruber

Hurst could be liable as a non-party to the agreement.  It is well established, however, that

"courts cannot enjoin the entire universe of potential violators of its orders." *Eli Lilly & Co. v.

Gottstein*, 617 F.3d 186, 195 (2nd Cir. 2010).  VAC, meanwhile, references cases holding that a

non-party is liable for contempt when the non-party "acts with the enjoined party." *Whitcraft*,

570 F.3d at 272 (5th Cir. 2009).  This approach requires that the non-party "knowingly aid[],

abet[], or conspire[] with another to evade an injunction or order of a court . . . ." *Waffenschmidt*,

763 F.2d at 726 (5th Cir.1985).  It also requires finding a lack of good faith, because while "good

faith is not a defense to a civil contempt order, good faith is relevant to whether a non-party

knowingly aided or abetted another in violating a court order." *Whitcraft*, 570 F.3d at 272.

For VAC to prevail on this conspiracy/aiding and abetting theory, it must prove that

Gruber Hurst actually conspired with the Securus parties.  VAC, however, presented no evidence

at the hearing that any party to the Protective Order, including T-Netix or Securus, entered into a

8

conspiracy with Gruber Hurst to produce the Report.  VAC called only two witnesses at the

February 25, 2013 hearing: Stephanie Clouston and Dennis Reinhold.  Neither offered any

evidence that Gruber Hurst conspired with the Securus parties to possess or use the Report.  Ms.

Clouston, for instance, testified that she had no knowledge that Securus, Mr. Reinhold, or Mr.

Smith had any involvement with the production of the Report to Combined, to wit:

> Q: . . . When I'm referring to the Securus parties we've got Securus, T-Netix, Mr.
> Reinhold, and Mr. Smith.
>
> * * * * *
>
> Q. You don't have anything in your declaration or any document or anything in
> your testimony where you have knowledge that any of the Securus parties
> provided a copy of the McAlexander rebuttal report to Gruber Hurst.
>
> A. No.
>
> Q. And you don't have any knowledge that they encouraged or asked Gruber
> Hurst to provide that document to anybody in the Combined Communications
> case or any other lawsuit?
>
> A. No, sir.

(2013 Hearing Trans. at 100:16 – 101:4).

VAC's only other witness was an adverse party, Mr. Reinhold, and he categorically

testified that Securus "did not have the document," and, "We still don't have the document.

We've never had the document."  (2013 Hearing Trans. 115:8-10).[1]  This is not proof of a

conspiracy.  VAC's position is further undercut by the evidence that Gruber Hurst presented.

Tony Magee, the Gruber Hurst attorney involved in the inadvertent production of the Report in

2010, unequivocally denied that Gruber Hurst acted in conspiracy with Securus, Mr. Reinhold,

or Mr. Smith:

---

[1] Mr. Reinhold also testified he had an electronic search run which did not find the document in Securus' possession.
In his words, "I wanted to make sure we did not have the document.  I knew we did not have the document, because
I had never seen it, nor had anyone in my office ever seen it, and so we did a search this past week."  (2013 Hearing
Trans. at 114:15-19).

Q. . . . When you were doing this entire document production process in the 2010 time frame, did you receive a copy of the McAlexander rebuttal report from the client, Securus, T-Netix, Mr. Reinhold, Mr. Smith, anyone from within the Securus parties holds?

A. No.

Q. Did you send a copy of it to them?

A. No.

Q. Did anyone from Securus, including Mr. Smith or Mr. Reinhold, ever direct you to produce a copy of the McAlexander rebuttal report to anyone in the litigation you were involved with?

A. No.

(2013 Hearing Trans. at 292:14-293:1).

In fact, Mr. Magee was completely unaware of the document's existence or the prior contempt proceeding when Gruber Hurst inadvertently produced the Report in 2010.  (2013 Hearing Trans. at 241:16-21).  It has been years since the original case settled and none of these supposed conspirators has even seen the Report at issue.  VAC offers no plausible motive or purpose as to why Securus, Mr. Reinhold, Mr. Smith, and Gruber Hurst would conspire to produce an unseen document years after the fact.  VAC has failed as a matter of law to make out a prima facie case that Gruber Hurst "knowingly aid[ed], abet[ted], or conspire[d] with another to" violate the Protective Order.  *Waffenschmidt*, 763 F.2d at 726.  Consequently, VAC has nothing to support a show cause order why Gruber Hurst, a non-party, violated the Protective Order.

Even if there were a scintilla of evidence to support VAC's aiding and abetting theory, it remains the undisputed fact that Gruber Hurst acted in good faith and immediately clawed back the document.  Gruber Hurst cannot be held in contempt based on an aiding and abetting theory if it acted inadvertently and in good faith.  *Whitcraft*, 570 F.3d at 272.  ("Although good faith is

10

not a defense to a civil contempt order, good faith is relevant to whether a non-party knowingly aided or abetted another in violating a court order."). In this matter, the computer forensic expert, David Cowen, testified that the Report only existed as part of a massive document production with over 600,000 images. It was never singled out or copied separate from that enormous group of documents. Nor did Gruber Hurst attempt to hide its reasons for clawing back the Report. In fact, had Mr. Magee not been so honest and transparent in his letter to Combined's counsel, in which he named the McAlexander Rebuttal Report and clearly noted that he was clawing the document back due to a protective order and not privilege, the associate at Jones Day might never have brought the privilege log to Ms. Clouston's attention. (2013 Hearing Trans. at 42:15-20). (Ms. Clouston: "The issue was raised that this appears to be someone else's document but how is it that Securus is claiming -- putting a document like that on their privilege log, is it their privilege, which struck me as odd. I looked at the privilege log and I realized pretty quickly from the description what I at least thought the document likely was . . . . the particular McAlexander rebuttal report."). Counsel for VAC erroneously stated at the February 25, 2013 hearing that VAC discovered the 2010 inadvertent production of the Report by sheer chance. In truth, VAC learned of the inadvertent disclosure as a direct result of Mr. Magee's candid explanation in his August 27, 2010 letter of the reason why the Report was being clawed back.

**B.     The Court's Second Question:  Assuming Gruber Hurst is Neither Subject to the Protective Order Nor Otherwise in Contempt of Court for Violating the Protective Order, Whether There is Any *Reason* or *Basis* to "Sanction" Gruber Hurst?**

*1.     There is No **Reason** to Sanction Gruber Hurst.*

The facts bear out that there is no reason to sanction Gruber Hurst for its inadvertent retention of the Report or its subsequent production and claw back of the Report.

11

The evidence established that Gruber Hurst, who was not a party to the 2008 Hearing, was not ordered to take a particular course of action by Judge Sanderson and made no representation to Judge Sanderson then or later as to what it would do.  After Gruber Hurst represented to the Court that it still had "discovery responses and [expert] reports," Judge Sanderson noted that Gruber Hurst should either return the documents or make an official entry as counsel of record.

> Judge: Well, I think the short answer is that needs to go back right now.  If you and your firm want to formally enter an appearance as the third counsel representing T-Netix in this case, then so be it.  But I think there are all kinds of confusions here when you are representing T-Netix or Securus in an Eastern District case.

(Hearing Trans. at 69:14-19).

> * * * * *
>
> Judge: But I do want those documents returned to counsel whose appearance has already been entered in the case.  Now, if you wish to enter an appearance formally and file a motion and entry of appearance in this case – that is, the case here in the Northern District of Texas -- then I think once you have been enrolled and your firm has been enrolled as cocounsel of record in the Northern District of Texas, you are then thereafter entitled to access under the terms of confidentiality order.

(Hearing Trans. at 70:7-16).

Judge Sanderson's report and recommendation confirms that he understood that Gruber Hurst had been given two options:

> The evidence before the court and the statements made by counsel at the April 16, 2008 hearing establish that the Gruber law firm successfully clawed back all copies of the McAlexander report from parties in the Eastern District of Texas case.  Further, Eric Tautfest agreed - pursuant to the undersigned magistrate judge's oral directive at the hearing - that copies of any documents which had been produced by VAC in this case under the agreed protective order and which the Gruber law firm had received from T-Netix's counsel of record in this case *would be destroyed or returned by the Gruber law firm unless or until the Gruber law firm entered its formal appearance as counsel of record for T-Netix in this action*.

Report and Recommendation at 6 (emphasis added).

While Gruber Hurst returned the physical documents and deleted electronic versions (though, apparently, it missed one electronic version of the Report) later that same day, it is important to note that Gruber Hurst never represented to the Court at the hearing or later that Gruber Hurst would choose the option of returning the documents. Eric Tautfest testified to the same during the February 25, 2013 hearing. (2013 Hearing Trans. 193:18-194:1).

Nor did Gruber Hurst make any subsequent representation to the Court about whether it would return or destroy documents or enter on the record as counsel. As noted, Mr. Tautfest did send a letter to Bell Nunnally the same day as the hearing in which he stated that he was returning "all documents in [Gruber Hurst's] possession that were received from [Bell Nunnally] regarding the VAC case." (Gruber Hurst Hearing Exhibit 3). Mr. Tautfest went on to note that Gruber Hurst "deleted the . . . documents from [its] database and . . . destroyed all working copies as well." *Id*. While the McAlexander Rebuttal Report is clearly noted in the letter and the letter confirms a substantial effort on Gruber Hurst's part to return and delete documents, the letter is not addressed to the Court and does not purport to be a representation to the Court that all documents are returned or destroyed. In fact, the letter goes beyond the options presented by Judge Sanderson, which did not specifically address electronic copies of documents.

The testimony of Mr. Tautfest and others at the February 25, 2013 hearing confirmed that Gruber Hurst undertook real and substantial efforts both to return and delete documents before Mr. Tautfest sent his letter. For example, Mr. Tautfest testified that he met with the Gruber Hurst team after the 2008 Hearing and instructed Lisa Miller, a paralegal, that Gruber Hurst needed "to send back the originals to Bell Nunnally and . . . get into Summation, get the documents off of there, get them off the system, and round up any copies anybody has and get

them and delete them." (2013 Hearing Trans. at 199:11-14). Ms. Miller testified that after she

met with Mr. Tautfest, he instructed her to "get all the documents out of any working notebooks

and on the system and destroy it all." (2013 Hearing Trans. 225:13-15). She recalled that Mr.

Tautfest also instructed her to get any copies from "the recycle bin so they could be shredded and

return -- delete all the electronic copies off the system and then return the originals back to him

so that he could prepare a letter and have them returned over to Bell Nunnally." (2013 Hearing

Trans. 225:15-19). More to the point, Ms. Miller specifically testified as to her extensive steps to

remove any electronic documents. To wit:

> Q. So I want walk you through that process step-by-step. So you said you knew
> how to go into Summation and delete the documents. So what's the first thing
> you did in that regard?
>
> A. I would have gone into the actual database that we had opened. And then you
> go in and you mark them. There's a way where you can just mark the documents.
> And then you say delete and it says purge, because that's the only way to get them
> out of the actual database. If you just delete them they're still -- you can still see
> them. And then there's a back end that you go in the back way.
>
> Q. Did you hit the purge portion?
>
> A. Yes. And then you have to go in the back end of it also through the actual hard
> drive of the, like the C drive, S drive, might have been S. I can't remember what
> it was called over there. Then you go in and there are actual physical documents
> that are on the hard drive in folders labeled whatever numbers these are. You
> have to go in and actually hit manually delete and move them out of the folders.
> That way they don't reappear in the back end of it. So there's two processes to it.
>
> Q. And so you performed --
>
> A. I did both.
>
> Q. -- performed both of those processes to delete the documents from the
> Summation database?
>
> A. Yes.

(2013 Hearing Trans. 227:18-228:18).

14

Mr. Tautfest testified that after Ms. Miller said she had deleted the documents, he "searched for several of those documents [on Gruber Hurst's system], [but] none of them came up." (2013 Hearing Trans. at 200:1-2). Mr. Tautfest also testified that he had no doubt the documents, including the Report, were deleted because he ". . . went into Summation and confirmed that [he] could no longer access those documents, just to make sure that they weren't there." (2013 Hearing Trans. at 203:18-20).

Of course, unbeknownst to Mr. Tautfest, Ms. Miller, or anyone at Gruber Hurst, a single electronic copy of the Report remained on the system within a large file containing 600,000 electronic images. This unknown fact created the perfect storm for Mr. Magee, who arrived after the deletion and had no knowledge of the Report, the Protective Order, or the prior hearing in 2008, to inadvertently produce the Report. As discussed above, Mr. Magee was wholly lacking in any sort of deliberate or willful misconduct and made nothing more than an inadvertent mistake, which, in part, resulted from his tenacity in meeting discovery obligations in another suit. VAC elicited no facts to indicate that this was anything other than innocent, inadvertent conduct or that Gruber Hurst did not take all reasonable steps to return/destroy the documents. As the Court itself noted at the February 25, 2013 hearing, "there's no evidence in the record that [Gruber Hurst] intentionally or willfully or – didn't [destroy the document]." (2013 Hearing Trans. 323:3-4). Even if Gruber Hurst's good faith efforts failed to meet Judge Sanderson's expectations, there is no obligation on this Court to follow-up. Judge Sanderson himself indicated that any future use of the documents in the related litigation "needs to be brought to the attention of Judge Ward and whoever the assigned magistrate judge who is handling discovery in that case." (2008 Hearing Trans. 71:17-19).

Given those facts set forth above, the failure to destroy this one copy of the Report provides no *reason* to "sanction" Gruber Hurst, especially given that the *reason* courts impose sanctions is to punish and deter dishonest, underhanded misconduct, not where there is a mistake or inadvertence.

2.      *There Is No **Basis** to Sanction Gruber Hurst.*

Beyond the fact that there is no *reason* to sanction Gruber Hurst, there also is no *basis* to sanction Gruber Hurst under applicable contempt law, Rule 11, or the Court's inherent powers to sanction a party.

a.      *Contempt*

With respect to its contempt powers, the scope of the findings and recommendations that the Court may make in this matter is limited not only by the District Court's Order of Reference, but also by Movant's application for a show cause order.  Specifically, the District Court's Order of Reference narrows the area of inquiry to VAC's "application for order to show cause" related to whether Gruber Hurst and others "should not be held in contempt for violation of the court's March 3, 2006 protective order."  The Order of Reference[2] does not authorize this Court to make any findings or recommendations as to whether Gruber Hurst failed to comply with any oral directive from Judge Sanderson or failed to proceed according to the spirit of what was contemplated during the hearing.  Likewise, Movant's application for show cause order requests

---

[2] An Order for Show Cause is not required for direct contempt, but direct contempt must take place in the presence of the judge issuing the order of contempt.  It is "available only in limited circumstances where an individual's misconduct not only occurs 'within the personal view of the judge, under his own eye,' . . . but also 'disturbs the court's business.'"  *Brandt v. Gooding*, 636 F.3d 124, 133 (4th Cir. 2011) (*citing In re Oliver*, 333 U.S. 257 (1948)).

that Gruber Hurst be held in contempt "for Violation of the Court's March 3, 2006 Protective Order."[3]  (D.E. 204).

Even if the Order of Reference authorized this Court to address compliance with what the parties and Judge Sanderson understood what was going to happen as a result of the April 2008 hearing, there is no basis for contempt because Judge Sanderson made no order that Gruber Hurst may be held to have violated.  A party seeking an order of contempt must "establish by clear and convincing evidence: (1) that a court order was in effect; (2) that the order required certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order."  *Piggly Wiggly,* 177 F.3d at 382 (5th Cir. 1999).  Judge Sanderson, however, did not order any certain conduct; rather, he merely stated that he "want[ed] those documents returned to counsel" and his belief that the documents "need(s) to go back."  (2008 Hearing Trans. at 70:7-8; 69:15).  In expounding on the court's position, Judge Sanderson gave Gruber Hurst two different options by which to proceed, which can hardly be equated to an order requiring "certain conduct."

Along those lines, holding Gruber Hurst in contempt is equally inappropriate because VAC failed to demonstrate that Gruber Hurst did not substantially comply with the spirit of what Judge Sanderson stated during the April 2008 contempt hearing.  To that end, a "party may avoid a contempt finding where it has substantially complied with the order, or has made every reasonable effort to comply."  *In re Rodriguez*, 2007 WL 593582, 7 (W.D. Tex. 2007) (*citing U.S. Steel Corp. v. United Mine Workers of Am.*, Dist. 20, 598 F.2d 363, 368 (5th Cir.1979)).  As the court noted in *Boink Systems, Inc. v. Las Vegas Sands Corp.*, a minor failure to delete does not require a contempt proceeding:

---

[3] Presumably, VAC focused on only the Protective Order because it recognizes that Judge Sanderson did not order Gruber Hurst to do anything.

> [Plaintiff's] Counsel found a single image [of its trademark image] on the [defendant's] site and attached an enlarged copy of the screen capture depicting the webpage containing the image as an exhibit to the petition.  Thus, LVS has established clear and convincing evidence that the court's permanent injunction has been violated.  However, the court finds that BSI has demonstrated that it made good faith reasonable efforts to comply with the terms of the permanent injunction and has substantially complied.  Additionally, BSI took prompt corrective action once the violation was brought to its attention.  Counsel for LVS elected to file this petition twelve days after finding a single image on BSI's website instead of picking up the phone and notifying opposing counsel of the problem.  The problem could have, and should have, been resolved expeditiously and with minimal expense to both sides.

2011 WL 3419438, 3 (D. Nev. 2011).

Similarly, in this matter, Gruber Hurst took every reasonable step to return or delete copies of the Report by searching its computers, servers, attorney working files, and even recycle bins.  It was only through a quirk of fate, not lack of due diligence, that the Report survived and was produced.  Once it was produced, Gruber Hurst immediately clawed it back and, now, has brought its own Motion to Purge the document at its own expense.  This is exactly the sort of situation that substantial compliance was meant to cover.

### b.   Rule 11

Rule 11 does not apply either.  By its terms, Rule 11 only applies where there is a "pleading, written motion, or other paper."[4]  Fed. R. Civ. P. 11; *see*, *Rogler* 2002 WL 307731 at 4 (10th Cir. 2002) ("Rule 11 only applies to the presentation of 'pleading[s], written motion[s], or other paper[s]' to the court.").  While Eric Tautfest was present at the hearing before Judge Sanderson and answered the court's questions, he never filed any "pleading, written motion, or other paper."  Moreover, Rule 11(b) further narrows its applicability to four limited implied representations an attorney makes when submitting a written pleading to the court, namely:

---

[4] While the Rule does note that a party may be sanctioned for "later advocating" a written filing, this would not apply to Gruber Hurst because by its words it still requires a filing first.

18

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

None of the aforementioned situations applies to the facts before this Court. There is no basis to assert that Mr. Tautfest, who never actually responded to the Court's two options, made any representation for (1) the purpose of delay, or (2) to advance frivolous arguments. Certainly, if Mr. Tautfest's silence is taken as consent to choose one course or another, he has (3) reasonable evidentiary support, or a (4) reasonable belief that the documents were deleted because of his discussions with Ms. Miller and his own database searches. Even if Mr. Tautfest had violated one of the implied representations, Rule 11 contemplates a twenty-one day safe harbor before a motion for sanctions can be brought by a party. Rule 11(c)(2). A court may act on its own without a motion by a party or safe harbor. However, "[w]hen courts act on their own under Rule 11," and without allowing a safe harbor for the party to correct its actions "available sanctions are limited to 'nonmonetary sanctions or a monetary penalty payable to the court'—an award of attorney's fees or other expenses is not appropriate." *Florance v. Bush*, 2010 WL 2710665, 4, n.6 (N.D. Tex. 2010) (*citing Marlin v. Moody Nat'l Bank, N.A.*, 533 F.3d 374, 379 (5th Cir. 2008); *see, Burger v. Military Sea Lift Command*, 1999 WL 511534, 4 (5th Cir. 1999)

(upholding a district court's discretion to refuse awarding Rule 11 sanctions absent a finding of bad faith).

### c.    The Court's Inherent Powers

Finally, the only other possible basis to sanction Gruber Hurst would be the Court's inherent powers.[5]  While a court has the inherent power to impose sanctions, "the threshold for the use of inherent power sanctions is high." *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995) (*citing Reed v. Iowa Marine and Repair Corp.*, 16 F.3d 82, 84 (5th Cir. 1994)).  A court "should 'ordinarily' rely on a rule or statute rather than their inherent power." *Florance v. Bush*, 2010 WL 2710665, 4 (N.D. Tex. 2010) (*citing Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991)).  In fact, the Fifth Circuit "has held that in order to impose sanctions against an attorney under its inherent power, a court must make a specific finding that the attorney acted in bad faith." *Elliott*, 64 F.3d at 217 (remanding to the district court because "it failed to make a specific finding of bad faith") (*citing Chaves*, 47 F.3d at 156).  As set forth above, the evidence here shows mere inadvertence and does not provide a basis for a "bad faith" finding against Gruber Hurst.

### C.    VAC Failed to Demonstrate By Clear and Convincing Evidence that Gruber Hurst Is In Contempt of Court By Violating the Protective Order.

While the Court only asked for briefing on the two issues addressed above, Gruber Hurst commends to the Court's attention Gruber Hurst's prior Response to VAC's Application for Order to Show Cause (D.E. 230) and that of T-Netix/Securus (D.E. 232), which Gruber Hurst adopts by reference, and the Statement of Position that Gruber Hurst provided to the Court at the

---

[5] Sanctions under 28 U.S.C. § 1927 (prohibiting vexatious multiplication of litigation by an attorney) are punitive in nature and require "clear and convincing evidence, that every facet of the litigation was patently meritless." *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525-26 (5th Cir. 2002).  This requires "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Id*.

February 25, 2013 Hearing.  (Attached to this Post-Hearing Brief as Exhibit A).  Briefly, even if

Gruber Hurst *were* subject to the Protective Order, GH's Statement of Position outlines that:

(1)     Gruber Hurst would then be entitled to lawfully possess the Report because ***it is a party to the Protective Order.***  While VAC might argue that Gruber Hurst was required to destroy the Report, the Protective Order did not require Gruber Hurst to destroy the document.  Section 26 provides that counsel shall be entitled to maintain copies of all written discovery requests and responses.  As the Report was an expert report (and T-Netix's expert report moreover), Gruber Hurst would have been permitted by the Protective Order to keep the Report.  Further, Section 26 actually contemplated that parties to the Protective Order could retain non-physical, electronic material subject to the Protective Order.

(2)     Civil contempt is not appropriate because VAC's motion does not seek (a) to enforce compliance with a court's order through coercion or (b) to compensate a party who has suffered unnecessary injuries or costs because of contemptuous conduct – fundamental elements of any civil contempt action.  It does not seek to enforce compliance through coercion because there is nothing to coerce – the Report was clawed back and Gruber Hurst is more than willing (and has been so since last September) to destroy the Report.  VAC does not seek compensation because VAC offered no evidence at the contempt hearing establishing any actual damage or costs (including any attorney's fees they might have claimed) subject to compensation.  Rather, VAC is seeking retribution.

(3)     Because Gruber Hurst not only took reasonable steps to remove the Report from its computers in 2008 and quickly clawed back the Report in 2010, it "substantially complied" with the protective order, which substantial compliance negates any contempt finding.[6]

(4)     Finally, VAC's request is barred by laches given that, ***at best,*** it took 10 months to prosecute its contempt claim.  VAC's utter lack of diligence exposes the fact that the acts about which it complains have not caused any actual damage to VAC and do not raise any significant risk of potential damage in the future.

**D.      Gruber Hurst Urges the Court to Grant Its Motion to Purge.**

        In closing, Gruber Hurst would again note to the Court that it regrets that the Report was

not completely wiped off its computers despite the diligent efforts of Mr. Tautfest and Ms.

---

[6] "A party may avoid a contempt finding where it can show that it has substantially complied with the order, or has made every reasonable effort to comply."  *In re Rodriguez,* 2007 WL 593582, 7 (W.D. Tex. 2007) (*citing U.S. Steel Corp. v. United Mine Workers of Am.,* Dist. 20, 598 F.2d 363, 368 (5th Cir.1979)).  Even if a violation is demonstrated, the defendant may "cause the district court to withhold the exercise of its contempt power" with either "mitigating circumstances" or "substantial compliance with the [court's] order."  *Whitfield v. Pennington,* 832 F.2d 909, 914 (5th Cir.1987).  "A party substantially complies when it takes all reasonable steps to do so, but nonetheless contravenes the court order by good faith mistake or excusable oversight."  *F.T.C. v. Lane Labs-USA, Inc.,* 624 F.3d 575, 590-591 (3rd Cir. 2010).

Miller, who believed that they had destroyed or returned all copies of the Report.  To that end, Gruber Hurst has tried repeatedly to remedy this situation.  The Court heard testimony that, as early as last September, Gruber Hurst went to VAC's counsel offering to do what needed to be done to allay VAC's concerns and claw back any copies of the Report that might still exist.  Last November, it again reached out to VAC's counsel by telephone and in writing, willing to go even one step further and retain a forensic computer expert *at its own expense* to permanently delete the Report from its computers.  Having been rebuffed by VAC, Gruber Hurst filed its own Motion to Purge, which inexplicably was opposed by VAC, seeking the Court's permission to do what it has been willing to do and which VAC's motion to reopen asks for: to destroy the Report for all time and to otherwise remedy this situation.

To the extent the Court feels the need to vindicate any interest, particularly in the spirit of what was contemplated during the hearing with Judge Sanderson, Gruber Hurst urges the Court to grant its Motion to Purge and to permit Gruber Hurst, *at its own expense,* to engage Mr. Cowen, the forensic expert who testified at the contempt hearing, to permanently delete any electronic copies of the Report and to certify to the Court that such deletion has been accomplished.

Respectfully submitted,

**FISH & RICHARDSON P.C.**

By:    *s/ William B. Mateja*
       William B. Mateja
       Texas Bar No. 13185350
       mateja@fr.com
       Albert A. Starkus III
       Texas Bar No. 24051376
       starkus@fr.com

1717 Main St., Suite 5000
Dallas, Texas 75201
(214) 747-5070 – Telephone
(214) 747-2091 – Facsimile


**GRUBER HURST JOHANSEN HAIL SHANK, LLP**

By:    *s/ A. Shonn Brown*
       G. Michael Gruber
       Texas Bar No. 08555400
       mgruber@ghjhlaw.com
       Anthony J. Magee
       Texas Bar No. 00786081
       amagee@ghjhlaw.com
       A. Shonn Brown
       Texas Bar No. 24007164
       sbrown@ghjhlaw.com

1445 Ross Avenue, Suite 2500
Dallas, Texas 75202
(214) 855-6800 – Telephone
(214) 855-6808 – Facsimile


**COUNSEL FOR GRUBER HURST JOHANSEN HAIL SHANK, LLP**

## CERTIFICATE OF SERVICE

On this 4th day of March, 2013, I caused the foregoing document to be electronically filed with the Clerk of the Court for the Northern District of Texas, Dallas Division, using the case filing system of the Court.

I hereby certify that I have served all counsel of record electronically or by another manner by FED. R. CIV. P. 5(b)(2).


_s/ Albert A. Starkus III_
Albert A. Starkus III