*TO BE FILED UNDER SEAL*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **T-NETIX, INC.** | ) | |
| | ) | |
| *Plaintiff/Counter-Defendant* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **VALUE-ADDED COMMUNICATIONS,** | ) | |
| **INC.** | ) | **Case No. 3-05-654-D** |
| | ) | |
| *Defendant/Counter-Plaintiff* | ) | |
| v. | ) | |
| | ) | |
| **SECURUS TECHNOLOGIES, INC.** | ) | |
| | ) | |
| *Counter-Defendant* | ) | |
| ——————————————— | ) | |

**VALUE-ADDED COMMUNICATIONS, INC.'S RESPONSE TO
GRUBER HURST'S POST-HEARING BRIEF**

Defendant/Counter-Plaintiff Value-Added Communications, Inc. ("VAC"), by and

through undersigned counsel, hereby files its Response to Gruber Hurst's Post-Hearing Brief.[1]

**I.     INTRODUCTION**

In its Post-Hearing Brief, Gruber Hurst persists in dodging the real issue: it is counsel for

Securus/T-Netix, a party to the Protective Order; the McAlexander Rebuttal Report, a document

that the firm should never have had because it was not counsel *in this action*, was improperly

obtained, retained and disseminated, not only in 2008, but again in 2010.  Thereafter, Gruber

Hurst took no steps to alert VAC or any court of the improper possession and dissemination of

---

[1]  This Response only addresses issues relating to Gruber Hurst, because the Securus
Parties did not file a Post-Hearing Brief.

the report.  Although during the February 25th Hearing Gruber Hurst paid lip service to taking

responsibility for its actions ("we disclosed this document. We fall on our sword, *mea culpa,*

we're apologetic for it" ),[2] it seeks to avoid responsibility (and a finding of contempt) by

resorting to hyper-technicalities and distortion of the issues (*e.g.*, VAC is estopped, Gruber Hurst

"was not a party to the 2008 Hearing, was never ordered to take any certain conduct by Judge

Sanderson, and made no representation to Judge Sanderson then or later as to what it would do").

*See* Gruber Hurst Post-Hearing Brief at 3.  Clinging to technicalities and obfuscation, Gruber

Hurst seems to have utterly lost sight of the fact that its lawyers are officers of the Court.  The

reality is that Gruber Hurst should not have had McAlexander Rebuttal Report in 2008 because it

was not counsel in this action; it should not have disseminated it in the 2006 GTL Action in

2008; it should have effectively purged the document in April 2008; it should never have

retained the document; it should never have disseminated it in the Combined and Pinnacle

Actions in 2010.

      In 2010, Gruber Hurst again had the chance to do the right thing: it should have notified

VAC that the McAlexander Rebuttal Report - a document that was specifically at issue in the

2008 contempt proceeding – was again (or always had been) in Gruber Hurst's possession, and

that it had been improperly disseminated in the Combined and Pinnacle Actions.   Mr. Magee's

attempt to justify Gruber Hurst's improper retention of the document (following the 2010

clawback efforts)  on "spoliation" grounds is simply one more contrived excuse.  *See* 2/25 Hrg.

Tr.  310:12-23 ("I do not want to go to the judge in the Combined case or the Pinnacle case and

say I had this document but I destroyed it").   When asked why he simply did not advise the

---

[2]  2/25 Hrg. Tr. 118:12-15.

Combined and Pinnacle Courts that Gruber Hurst had the document and needed to send it back or delete it, Mr. Magee responded:"I don't think I needed to tell the court at that point.  This was an ongoing issue which I expected to be resolved." 2/25 Hrg. Tr.  310:24 - 311:4.   Yet, Mr. Magee took no steps to resolve it, and clearly, it was never resolved.   Thus, with knowledge that it had a document it was not entitled to possess, and until this action was filed, Gruber Hurst failed to take *any* steps in 2010, in 2011, or in 2012, to rectify its improper continued possession, either by alerting VAC or any court, including this Court.  In late 2011 – as in 2008–  VAC learned that Gruber Hurst had possession of  (and had disseminated) the McAlexander Rebuttal Report by  pure happenstance: the violation of the Protective Order was discovered only because Ms. Clouston found the report and related correspondence in materials that had been transferred to her as successor counsel for Combined.[3]   Not until November 2012  however, months after this proceeding was filed, did Gruber Hurst – for the first time – offer to "purge" the McAlexander Rebuttal Report from its database.

---

[3]  VAC has not attempted in this Response to challenge each distortion set forth in the Gruber Hurst Post Hearing Brief.  By way of example only, Gruber Hurst states: "Counsel for VAC erroneously stated at the February 25, 2013 hearing that VAC discovered the 2010 inadvertent production of the Report by sheer chance. ***In truth***, VAC learned of the inadvertent disclosure as a direct result of Mr. Magee's candid explanation in his August 27, 2010 letter of the reason why the Report was being clawed back."  Gruber Hurst Post-Hearing Brief at 11 (emphasis added).  Gruber Hurst's version of "truth" is nothing short of make-believe.   There can be no legitimate dispute that VAC discovered the violation by chance.  Mr. Magee's August 27th letter was written to counsel *for Combined and Pinnacle*.  Despite the fact that Mr. Magee was in communication with Ms. Clouston (VAC's prior counsel) during this very same time period to try to get permission to disclose VAC documents, he certainly was not "candid" *with her* about what had occurred.  The only way it was discovered by VAC was the pure coincidence that Ms. Clouston later became successor counsel for Combined and found the Report (and related correspondence) in the discovery materials that were transferred to her.  If not for that, the violation would *never* have been discovered by VAC.

## II.      GRUBER HURST'S ESTOPPEL ARGUMENTS SHOULD BE REJECTED

VAC submits that Gruber Hurst's estoppel argument should be seen for what it is -- an

after-the-fact attempt to obscure and misdirect the focus from the real issue: that Gruber Hurst,

because it was not counsel of record, and failed to enter its appearance in this action when Judge

Sanderson invited it to do so, should never have possessed the McAlexander Rebuttal Report in

2010, let alone the fact that it disseminated the report in the Combined and Pinnacle Actions.  No

matter how many times Gruber Hurst repeats the statement that VAC argued that Gruber Hurst

was not "subject to" or a "party to" the Protective Order, it is clear that the focus in the 2008

contempt proceeding was that Gruber Hurst was not entitled to the Counsel Eyes Only materials

because it was not counsel of record in this action.  The focus is the same in this proceeding, and

neither Judge Sanderson nor this Court are being misled .  Thus, there can be no judicial

estoppel.[4]

In its Post-Hearing Brief, Gruber Hurst argues for the first time that VAC is "collaterally

estopped" from relitigating the issue it litigated in the 2008 proceedings, "because Judge

Sanderson determined that Gruber Hurst was not a party to the Protective Order."   Gruber Hurst

Post-Hearing Brief at 7.  First, as set forth in VAC's Post-Hearing Brief (and above), the finding

made by Judge Sanderson was that Gruber Hurst (not a respondent in the proceeding before him)

was not counsel of record, and therefore was not allowed to retain the Counsel Eyes Only

materials, unless the firm entered its appearance in this action.  VAC Hrg. Exh. 3 at 6-7 (Report

& Recommendation)("I further find that statements and arguments that members of the Gruber

---

[4]  VAC's arguments on the judicial estoppel issue, as well as citations to the April 2008
Hearing Transcript, and to Judge Sanderson's Report & Recommendation are set forth in VAC's
Post-Hearing Brief (filed March 4, 2013).

firm were retained outside attorneys to work on this litigation, and thus were persons authorized

to receive confidential information ***to be incredible and wholly unworthy of belief***").

Moreover, Gruber Hurst's argument is truly a bizarre application of the doctrine of collateral

estoppel. VAC is not attempting to relitigate a position it has previously lost. As explained in

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645 (1979):

> [O]ffensive use of collateral estoppel occurs when the plaintiff seeks to foreclose the
> defendant from litigating an issue the defendant has previously litigated unsuccessfully in
> an action with another party. Defensive use occurs when a defendant seeks to prevent a
> plaintiff from asserting a claim the plaintiff has previously litigated and lost against
> another defendant.

439 U.S. at 326, 99 S.Ct. at 649, n. 4. VAC's arguments in this proceeding are neither.

Moreover, even if the events here could be subject to the doctrine of collateral estoppel, there

was no "final judgment" upon which collateral estoppel can be predicated, because before the

District Court had an opportunity to enter its findings, the case was settled and dismissed. *See*

*generally, Kariuki v. Tarango*, 12-10174, 2013 WL 644469 (5th Cir. Feb. 21, 2013)(collateral

estoppel applies "[w]hen an issue of fact or law is actually litigated and determined ***by a valid***

***and final judgment***, and the determination is essential to the judgment")(emphasis added); *J.R.*

*Clearwater Inc. v. Ashland Chem. Co.*, 93 F.3d 176, 179 (5th Cir.1996); *Dauterman v. Goodman*

*Grp., Inc. (In re Dauterman),* 1993 WL 13569372 (5th Cir.1993).

    In late  October 2008, after Gruber Hurst had already improperly obtained and

disseminated the Counsel Eyes Only information in the 2006 GTL Action, Eric Tautfest actually

signed Exhibit A to the Protective Order.[5] As set forth in VAC's Post-Hearing Brief, however,

---

[5] As Ms. Clouston noted at the April 2008 Hearing, she only saw the executed Exhibit A
sometime shortly before that hearing. 4/16/08 Hrg. Tr. 27:13-18.

whether Gruber Hurst is "subject to" or a "party to" or a "signatory to" the Protective Order is semantics over substance.   Because Gruber Hurst was at all times working (albeit in other litigation) on behalf of its client Securus/T-Netix, a party to the Protective Order, and Gruber Hurst's possession and dissemination of the McAlexander Rebuttal Report was in furtherance of Securus/T-Netix's interests in other patent litigation, Gruber Hurst's conduct in violation of the Protective Order subjects it to a finding of contempt.

### III.     GRUBER HURST AND THE SECURUS PARTIES HAVE NOT SUBSTANTIALLY COMPLIED WITH THE PROTECTIVE ORDER OR JUDGE SANDERSON'S DIRECTIVE AT THE APRIL 2008 HEARING

Despite their protestations that they have gone "above and beyond" and "substantially complied," Gruber Hurst's and the Securus Parties' real conduct with regard to compliance was woefully inadequate.   As to the firm's 2010 possession and dissemination of the McAlexander Rebuttal Report, Mr. Magee testified:  "I didn't think I needed to tell the court at that point." 2/25 Hrg. Tr.  311:3-4.  And because he did not think he "needed to," he never did.  Nor did he tell VAC, or its counsel, despite the fact that Gruber Hurst was in communication with them, trying to obtain permission to produce VAC's confidential materials in the Pinnacle and Combined Actions.  Similarly, Mr. Reinhold (Securus/T-Netix general counsel) testified: "I didn't have a duty to do anything about it.  I never had the document in my possession, nor was it ever in Securus' possession.  Our outside counsel did a [clawback] and told me about it, and so I had no further duty."  2/25 Hrg. Tr. 114:2-5.   The consistent theme from the Respondents is that the retention of the report and its dissemination were "inadvertent," essentially, "no big deal."  Apparently, no one had a duty to make sure that scrupulous compliance with the Protective Order was a priority.

Gruber Hurst argues that it attempted to comply with the Protective Order by clawing back the Rebuttal Report in 2010, and that it has gone "above and beyond" anything required by Judge Sanderson, arguing that it has substantially complied with the Protective Order.  In *F.T.C. v. Lane Labs-USA, Inc.*, 624 F.3d 575 (3rd Cir. 2010), the FTC filed a contempt motion for violating a consent decree entered into pursuant to the parties' agreement to settle litigation involving  deceptive advertising practices.  624 F.3d at 578. The district court denied the contempt motion, finding, *inter alia,* that the defendants were entitled to the defense of "substantial compliance."  624 F.3d at 581 (discussing district court opinion denying motion for contempt).    The Third Circuit reversed, and on remand, the district court concluded that the defendants had ***not*** substantially complied with the decree.  *F.T.C. v. Lane Labs-USA, Inc.*, No. 00–cv–3174 (DMC), 2011 WL 5828518 (D.N.J. Nov. 18, 2011)  at *11.  In its review of opinions from other courts, the district court observed that none of them "permitted the defense of substantial compliance . . . where contemnors violated the actual substance of a court order." 2011 WL 5828518 at *10.   Because the defendants' representations *substantively* violated the order, they had failed to establish a substantial compliance defense.  2011 WL 5828518 at *11. The same is true here, and the Respondents have admitted it: "we disclosed this document. We fall on our sword, *mea culpa*, we're apologetic for it" ).   2/25 Hrg. Tr. 118:12-15.

In *Bell v. Lockheed Martin Corp.*, Civil No. 08–6292 (RBK/AMD), 2011 WL 7825362, *3 (D.N.J. Oct. 21, 2011), the magistrate judge recognized that "[n]either mistake nor subsequent compliance after discovery of the violation by opposing counsel" protected the plaintiff from a finding of contempt.  *Bell*, 2011 WL 7825362 at *8.  Here, there is not even "subsequent compliance."  At most, Gruber Hurst has described ineffective and non-compliant efforts – it

7

failed to purge the document from its computer system in 2008, and its 2010 clawback efforts were clearly ineffective, as the McAlexander Rebuttal Report remained in the discovery materials in the Combined Action when the case was transferred to Jones Day.[6]

Gruber Hurst seeks to excuse its conduct by arguing that the McAlexander Rebuttal Report is an isolated document in a database of 600,000 pages. Gruber Hurst Post-Hearing Brief at 11. It is the only document VAC *knows of* – VAC has absolutely no basis to know if any of its other Counsel Eyes Only or other confidential documents reside on the Gruber Hurst server, or for that matter, on any other computer or device within the control of Gruber Hurst or any of the Securus Parties. What VAC does know, based on the testimony from Mr. Cowen at the February 25th hearing, is that despite Mr. Tautfest's directions and beliefs, and Ms. Miller's

---

[6] Counsel for Gruber Hurst questioned Ms. Clouston as to why her Declaration (VAC Hrg. Exh. 4) did not explicitly state that the McAlexander Rebuttal Report was in the production transferred to her by Combined's prior counsel. This is one more attempt to obfuscate a fact that Gruber Hurst has absolutely no basis to contest. The Clouston Declaration was filed as an exhibit to VAC's Reply to the Gruber Hurst Response to VAC's Show Cause (ECF 238). As Ms. Clouston testified, the focus of the Declaration was not that she "saw" the McAlexander Rebuttal Report, but rather to provide a "timeline." 2/25 Hrg. Tr. 55:11-16. This is because the Declaration (dated December 14, 2012) was submitted by VAC specifically to rebut Gruber Hurst's argument that VAC waited two years before filing this proceeding. Thus, the Declaration addresses when Ms. Clouston first realized that the McAlexander Rebuttal Report had been produced in the Combined and Pinnacle Actions. *See* VAC Hrg. Exh. 4 at ¶¶15-16 (she did not discover that the documents had been produced until July 2011, when she saw Mr. Magee's "clawback" letter, and the enclosed privilege log). By the time her Declaration was drafted and submitted to this Court as an exhibit (on December 14, 2012), Ms. Clouston had already sent her letter to Bell Nunnally and Gruber Hurst (VAC Hrg. Exh. 13, dated October 13, 2012), stating that she "discover[ed] a copy of the McAlexander Rebuttal Report included in the discovery materials that I inherited when I took over representation of CPC. I recognized the document as subject to the Protective Order. As a result, the document was segregated and purged from our electronic database and all copies were destroyed." This letter was attached as Exhibit A-5 to the Securus Parties' Response to the Show Cause Application (ECF 232-1). There was simply no reason for her to address that issue in her Declaration, which was focused on *timing* in response to the Gruber Hurst argument about delay.

efforts, the entirety of the Summation database from the 2006 GTL Action was copied to a new

server a week after Judge Sanderson issued his Report & Recommendation, and about two weeks

after Judge Sanderson directed Mr. Tautfest to return or destroy the confidential documents.  *See*

Gruber Hurst Hrg. Exh. 25 (demonstrative exhibit).   Moreover, Ms. Miller's testimony makes it

clear that beyond her efforts with the Summation database and looking for hard copies, she did

not attempt to purge the McAlexander Rebuttal Report from any other media where it may have

resided, including desktops, personal laptops,[7] or cell phones (2/25 Hrg. Tr. 235:22 - 237:3) any

of which could have contained the Report on its own or as an e-mail attachment.  As Mr. Cowen

acknowledged in response to the Court's inquiry, a copy could have been copied onto an

individual's computer, even if is not being shown by the logs as being accessed from the server.

2/25 Hrg. Tr. 161:14 - 162:5.  Gruber Hurst's statement at page 13 of its Brief that Gruber Hurst

"missed one electronic version of the Report" is utterly without support, because it is clear that

the *attempted* purge was of the Summation database and hard copies only; there was no attempt

to even check other storage media where the Report may have also resided.

In *Mendoza v. Regis Corp*., SA-01-CA-0937- FB, 2005 WL 1950118 (W.D. Texas Aug.

11, 2005), the United States Magistrate Judge considered the issue of substantial compliance

with an agreed upon injunction which enjoined defendants from using the "Hairmasters" mark.

On two occasions, one before, and one after the consent injunction was entered, the defendants

instructed their media agency to replace all listings for "Regis Hairmasters" with listings for

"Style America."   Defendants took no other steps, other than those directives to its media

---

[7] Ms. Miller did not recall if she checked for the report on any "firm laptop."  2/25 Hrg.
Tr. 236:6-17.

9

agency.  Unbeknownst to defendants, the directory listing was not changed as requested, and the

Regis Hairmaster listings continued.  2005 WL 1950118, at *2 .  The Magistrate Judge rejected

defendants' argument that its efforts to comply with the order relieved them of liability, finding

that only by making "every reasonable effort to comply" with a court's order does a contemnor

satisfy the substantial compliance test.  *Id.* at *4 (defendants "did not establish substantial

compliance; at best they put forth a casual effort to comply").  Significantly, the Magistrate

Judge stated, "[n]or does the record present any evidence that Regis took any action beyond

normal procedures to ensure the deletion of the listings in question.  Regis has offered no

evidence that it ever took the initiative to follow up with [media or telephone directory]

personnel concerning the change requests or to review the directories to ensure that they were in

compliance with the injunction."  *Id.* [8]

Similarly here, the evidence demonstrates that Gruber Hurst took no efforts, other than

those by Ms. Miller on the day of the April 2008 contempt hearing, and Mr. Tautfest's "test" of

her efforts, to ensure compliance.  As Mr. Cowen made clear in his testimony, he readily found

that the McAlexander Rebuttal Report was in the database that was transferred to the new server

on April 28, 2008.  VAC submits, with all due respect to Ms. Miller's efforts, that if Gruber

Hurst had taken its purge responsibilities seriously, it would have confirmed the purge with its

information technology vendor – the same vendor that apparently transferred the database two

weeks later.  Moreover, Gruber Hurst would have made certain that the McAlexander Rebuttal

---

[8] The Magistrate Judge's finding of contempt and sanctions (including attorneys fees) were approved and accepted by the District Court. *See Mendoza v. Regis*, SA-01-CA-0937- FB, United States District Court for the Western District of Texas (San Antonio Division), Doc. #90 and Doc. #115.

Report did not reside on any back-up file, desktop, laptop, or other media.  Securus/T-Netix, because its general counsel apparently believes he has "no duty" in this regard, also failed to ensure compliance by its law firm.

      The lack of attention to the Protective Order continued in 2010, when the McAlexander Rebuttal Report was located and disseminated to counsel for Combined and Pinnacle.  This production was done as a wholesale transfer of documents, apparently without any review whatsoever.  In his Affidavit (VAC Hrg. Exh. 16),[9] Mr. Magee states that during discovery in the Combined and Pinnacle Actions, he  determined that – given the "overlap"– it would be appropriate to produce the documents previously produced in the 2006 GTL Action.  He directed a new paralegal, Josh Ellis, to try to locate the documents in the firm's computer database.  Magee Decl. ¶7.  Mr. Ellis was not successful in locating the database or the documents that had been produced.  *Id.*  Curiously, Mr. Magee fails to state whether he spoke to either his partner, Michael Gruber, or an associate, Michael Lang, about the absent database and documents.  Both of these Gruber Hurst attorneys were counsel of record in the 2006 GTL Action, and they were also counsel in both the Combined and Pinnacle Actions.  If he had spoken to them, he may have learned about Gruber Hurst's improper acquisition and dissemination of the Rebuttal Report in the 2006 GTL Action, and the ensuing contempt proceedings in this action.  Indeed, as set forth in VAC's Show Cause Brief, Messrs. Gruber and Lang were both included as counsel on

---

[9]  Mr. Magee's Declaration was submitted as Exhibit A-1 to the Appendix to Gruber Hurst's Response to VAC's Motion to Reopen (ECF 220-1).  It was also admitted as VAC Hrg. Exh. 16 at the February 25th Hearing.  Given the lateness of the day when Mr. Magee was cross-examined, the issues described in his Affidavit relating to his discovery of the 2006 GTL database, and wholesale production in the Combined and Pinnacle Actions were not explored at the hearing.

pleadings filed by Gruber Hurst in the 2008 contempt proceedings.  *See* VAC Show Cause Brief at p. 15.   Apparently, instead of speaking to his partner and associate, Mr. Magee directed Mr. Ellis to contact Gruber Hurst's outside vendor.  *See* Magee Decl. ¶7.[10]

Although the outside vendor had retained an archive of documents from the 2006 GTL Action,  the archive "did not contain the vast majority of the documents [Mr. Magee] was looking for."  Magee Decl. ¶7.  Still, Mr. Magee apparently made no inquiry of either Mr. Gruber or Mr. Lang.  Rather, on August 4, 2010, the vendor was able to access the images from the 2006 GTL Action on Gruber Hurst's Summation database.  Magee Decl. ¶8.   The bates range included over four hundred thousand page images (ST 000001 - 400731).   Given the quickness with which the documents were produced in the Combined and Pinnacle Actions, it does not appear that *any substantive*  review of the documents was performed.  Rather, Mr. Magee directed a wholesale production of the 2006 GTL Action database in both the Combined Action and the Pinnacle Action:  two days later, on August 6th, the images, having been downloaded onto a hard drive, were produced to opposing counsel in the Combined and Pinnacle Actions.  Magee Decl. ¶9.  It was only when Ms. Ryan (then counsel for Combined) brought to his attention that privileged documents may have been included in the production, did Mr. Magee finally talk to Mr. Lang.  Magee Decl. ¶11.  Once Mr. Magee learned from Mr. Lang that the McAlexander Rebuttal Report had been the subject of the prior contempt proceeding, he apparently took no steps to determine *why or how* the document continued to reside on the firm's

---

[10]  Similarly, he did not seek out either Ms. Miller or Mr. Tautfest, and although they were no longer with the firm, seem more likely than the outside vendor to have had information about the database.  If he had done so, he would undoubtedly have learned about the 2008 contempt proceedings and the attempted purge of the database.

server in the Summation database.  He also apparently took no steps to make sure, in 2010, or at

any time thereafter, that it did not reside on any other computer, back-up file, desktop, laptop, or

other media.  Rather, the *only* review to try to figure out what happened in 2008 apparently

happened about three weeks before the February 25th hearing, when Mr. Cowen made his

inspection.

## IV.  A CONTEMPT FINDING AGAINST GRUBER HURST IS APPROPRIATE

### A.  The Court's Inherent Power

Whether as a sanction for violating the Protective Order as the agent of Securus/T-Netix,

or as an exercise of the Court's inherent power, a contempt finding against Gruber Hurst is

appropriate.  Gruber Hurst contends that the Court cannot exercise its inherent power to impose a

contempt sanction because the firm is not in "bad faith."  Gruber Hurst Post-Hearing Brief at 20.

VAC submits that the totality of the circumstances supports a finding of bad faith.  These

circumstances include Gruber Hurst's representations to Judge Sanderson (or silence, in the face

of Mr. Bower's representations that the documents would be returned); its failure to effectively

purge the document when it was directed to do so in 2008 (and upon which Judge Sanderson

predicated his Report & Recommendation); its failure to advise Ms. Clouston, in 2010, that it

possessed, and had already disseminated the McAlexander Rebuttal Report, at the same time Mr.

Magee represented to her that he had not "seen [the invalidity contentions]" (VAC Hrg. Exh.

10)[11]; its failure, in 2010, 2011 or 2012, to take steps to alert VAC, or any court, about its

_____

[11]  VAC submits that Mr. Magee's testimony that he was not talking about the
McAlexander Rebuttal Report, which had already been disseminated, when he was trying to get
Ms. Clouston to get VAC to allow him to produce VAC's "invalidity contentions" (VAC Hrg.
Exh. 10) strains credulity.

continued possession and dissemination of the Report; and its failure to ever try to determine whether the McAlexander Rebuttal Report resided on any other type of storage media, so it could be completely purged.

VAC submits that Gruber Hurst's unsubstantiated persistence that it is counsel "in this action" should also be considered in determining whether it is in bad faith.  In an effort to demonstrate the appropriateness of its continued possession of the McAlexander Rebuttal Report, Gruber Hurst has returned to its argument that the firm is "counsel in the action."  Of course, this argument was rejected as "wholly unworthy of belief" by Judge Sanderson after he considered the argument and reviewed the evidence presented to him at the 2008 hearing.  VAC Hrg. Exh. 3 (Report & Recommendation at 3).  The resurrected argument is belied by the fact that Gruber Hurst failed to enter its appearance as counsel in this action when invited to do so by Judge Sanderson in 2008.  Moreover, if there was any lingering life in the argument, Mr. Reinhold put a nail in that coffin when he testified that Gruber Hurst's "role in this action" was solely to obtain documents to be used in the 2006 Global Tel Link action.  2/25 Hrg. at 109:20-23.

Blithely ignoring Mr. Reinhold's testimony, Gruber Hurst persisted in this position at the February 25th Hearing when Mr. Tautfest again tried to support the contention that Gruber Hurst was counsel "in this action" when it obtained the Counsel Eyes Only documents in 2007.  2/25 Hrg. Tr. at 190:6-10, 191:23 - 192:7.[12]  Gruber Hurst perpetuates this distortion of facts by

---

[12]  Incredibly, in an apparently totally new argument, and further distortion of the plain meaning of the Protective Order, Gruber Hurst elicited testimony from Mr. Tautfest (at the February 25 hearing) that Gruber Hurst was entitled to the Counsel Eyes Only documents as "a technical adviser."  2/25 Hrg. Tr. at 188:18-191:9.

arguing in its Post-Hearing Brief that, as "counsel," the firm was allowed to continue to possess

the McAlexander Rebuttal Report and did not have to return it after the litigation was settled and

dismissed in August 2008.  *See, e.g.,* Post Hearing Brief at 21 ("While VAC might argue that

Gruber Hurst was required to destroy the Report [after this litigation concluded], the Protective

Order did not require Gruber Hurst to destroy the document.  Section 26 provides that *counsel*

shall be entitled to maintain copies of all written discovery requests and responses.")(Emphasis

added).  Of course, "counsel" is defined in Paragraph 9 of the Protective Order as "outside

attorneys retained by the parties *to work on this litigation.*"  (VAC Hrg. Exh. 1)(emphasis

added).  All of these circumstances support a finding of bad faith, and exercise of the Court's

inherent power to issue a contempt sanction against Gruber Hurst.

## B.  The Protective Order Violation

Gruber Hurst argues that a contempt finding is not appropriate because VAC's motion

does not seek compliance with a court's order through coercion, because Gruber Hurst is willing

to purge the document.  Gruber Hurst Post-Hearing Brief at 21.  As set forth in VAC's Response

to the Motion to Purge, part of the contempt remedy that VAC seeks is an order for Respondents

to pay for a forensic investigation and purge of the Securus Parties and their local counsel's

computers as well as the Gruber Hurst computers, to ensure that each and every instance of the

report is effectively purged.  As part of the forensic investigation and report, VAC seeks

information on whether the Rebuttal Report resides (or resided) on any computer under the

control of any of the Respondents, and if, when, and how the Rebuttal Report has been received

or transmitted since it was originally produced in this litigation in 2007.  This is an appropriate

contempt remedy.  In *Bell v. Lockheed,*  the  sanctions for plaintiff's violation of a protective

order included subjecting plaintiff's personal computer and email account to examination by a forensic analyst to determine if plaintiff's purge was sufficient and the costs incurred for the forensic analyst.  2011 WL 7825362 at *9 (magistrate judge recommendation); 2012 WL 1677236 (D.N.J. May 14, 2012)(award by district court).

Gruber Hurst also argues that VAC did not establish any "actual damage or costs" at the contempt hearing.  First, as the Court explained, the February 25th hearing was to determine whether there are facts that may constitute contempt and to certify those facts to the District Court.  2/25 Hrg. Tr. at 5:1-14.  Thus, evidence on attorneys fees would have been premature, and quite obviously, there was not enough time in the day for a mini-trial on the issue of VAC's attorney's fees.[13]  Moreover, VAC only has to establish that: 1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with the court's order.  *Whitcraft v. Brown*, 570 F.3d 268, 271-72 (5th Cir. 2009)(*citing Martin v. Trinity  Indus., Inc.*, 959 F.2d 45, 47 (5th Cir.1992));  *Lyn-Lea Travel Corp. v. American Airlines, Inc.*, 283 F.3d 282, 291 (5th Cir. 2002).   Showing compensable loss directly suffered as a result of the violation is not necessary. That such a burden does not exist is plain from the absence of a damages element for showing contempt.   Court orders, including protective orders, should be respected and followed by parties, their employees, and their counsel, without depending on proof of actual damages.

As the magistrate judge recognized in *Mendoza v. Regis Corp.*, "Fifth Circuit jurisprudence recognizes the award of more abstract damages in a civil contempt proceeding."

---

[13]  Early in the day, Mr. Mateja advised the Court that he had "four to seven witnesses." 2/25 Hrg. Tr. at 6:21-22.

2005 WL 1950118, at *5 (*citing Sebastian v. Texas Dept. of Corrections,* 558 F. Supp. 507 (S.D.Tex.1983); *In re Reno,* 299 B.R. 823 (Bkrtcy.N.D.Tex.2003)).   In addition, a judicial sanction may also be employed to compensate the complainant.   *Mendoza*, 2005 WL 1950118, at *5 (*citing American Airlines v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000)).   In *Mendoza,* the parties settled the case by the entry of an agreed judgment and permanent injunction.  2005 WL 1950118, at *1.  As discussed above (in VAC's response to the "substantial compliance" argument), despite the injunction, the defendants failed to remove all telephone directory listings with the infringing mark.   The plaintiff was not able to prove any type of lost business damages resulting from the continued publication of the telephone listing, and could not recover as damages increased profit to the defendants as a result of the listing.  2005 WL 1950118, at *5.  In considering the motion for contempt, the magistrate judge was not persuaded that it should adopt the defendants' very narrow view that damages should be limited to quantifiable damages, because compensatory damages "typically remedy those elements of harm which may be calculated, but also those legally recognized losses which are non-pecuniary and those which cannot be quantified with adequate certainty."  2005 WL 1950118, at *5.   The magistrate judge recommended that an award of $5,000 would be appropriate to compensate the plaintiff, and further, that the plaintiff be awarded her attorneys fees.  2005 WL 1950118, at *5-6.  Those recommendations were approved and accepted by the District Court.  *See Mendoza v. Regis*, SA-01-CA-0937- FB, United States District Court for the Western District of Texas (San Antonio Division), Doc. #90 and Doc. #115.

In the context of the "no harm" argument, Gruber Hurst also argues that VAC delayed filing its Show Cause Application.  When VAC finally learned of the violation (in October

2011), it retained undersigned counsel to investigate over the next several months the violation

so that VAC (and its new parent, Global Tel*Link) could determine whether or not to bring this

Show Cause proceeding. The investigation was handicapped by the fact that undersigned

counsel could not look at the actual documents subject to the Protective Order in this case,

including the McAlexander Rebuttal Report, or the document production in the Combined

Litigation, which were subject to a protective order in that case. The lengthy investigation

involved, in part, having to determine precisely which documents had improperly been

disseminated in the Combined and Pinnacle Actions, and also involved a broader investigation of

whether there was any violation of another protective order.[14] In *F.T.C. v. Lane Labs-USA,

Inc.*, No. 00–cv–3174 (DMC), 2011 WL 5828518 (D.N.J. Nov. 18, 2011), the Court found it

irrelevant to its analysis that the FTC waited six years after receipt of non-compliant documents

before moving for contempt.  2011 WL 5828518 at *10; *see also Bell v. Lockheed Martin Corp.*,

Civil No. 08–6292 (RBK/AMD), 2011 WL 7825362, *8 (D. N. J. Oct. 21, 2011)(rejecting

plaintiff's argument that the defendant's delay in moving for contempt precludes a finding of

contempt).   Thus, there is no basis for the application of the doctrine of laches.

## V.  CONCLUSION

VAC respectfully submits that it has established that there are sufficient facts to support a

---

[14]   Initially, it appeared to undersigned counsel that a similar violation of a protective order had been committed by the Securus Parties and their counsel in litigation pending in the Eastern District of Texas between the Securus Parties and Global Tel*Link, VAC's parent corporation. Undersigned counsel was simultaneously investigating the Eastern District violation and the violation in this case (handicapped in both investigations as described above) which lengthened the time it was taking to investigate the violation in this case.  Undersigned counsel then decided it would file the instant show cause proceeding before completing its investigation of the Eastern District violation, leaving for a future time the decision about whether to institute contempt proceedings in the Eastern District.

finding of contempt, and respectfully requests that United States Magistrate Judge Toliver certify those facts to the District Court.

Respectfully submitted,

/s/ Steven N. Williams
Steven N. Williams, Bar No. 21577625
Kenneth P. Kula, Bar No. 24004749
MCDOLE & WILLIAMS, PC
1700 Pacific Avenue, Suite 1280
Dallas, Texas 75201
Telephone: (214) 979-1122
Facsimile: (214) 979-1123
Email: swilliams@mcdolewilliams.com

/s/ Dale A. Cooter
Dale A. Cooter   (Admitted pro hac vice)
Donna S. Mangold (Admitted pro hac vice)
COOTER, MANGOLD, DECKELBAUM
& KARAS, LLP
5301 Wisconsin Avenue, NW
Suite 500
Washington, DC 20015
(202) 537-0700 (tel.)
(202) 364-3664 (fax)
efiling@cootermangold.com

March 8, 2013                    *Attorneys for Defendant/Counter-plaintiff*
                                 *Value Added Communications, Inc.*

## CERTIFICATE OF SERVICE

On this 8th day of March 2013, I electronically submitted the foregoing document with the Clerk of the Court for the Northern District of Texas, Dallas Division, using the case filing system of the Court.

I hereby certify that I have served all counsel of record electronically or by another manner authorized by F.R.Civ.P. 5(b)(2).

/s/ Dale A. Cooter
Dale A. Cooter