**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **T-NETIX, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:05-CV-0654-D (BK)** |
| | § | |
| **VALUE ADDED COMMUNICATIONS,** | § | |
| **INC.,** | § | |
| **Defendant.** | § | ***SEALED*** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the District Court's *Order of Reference* (Doc. 228), filed October 31, 2012, the Court has considered *Defendant's Motion for Order to Show Cause Why T-Netix, Inc., Securus Technologies, Inc., Richard A. Smith, Dennis J. Reinhold, and Gruber Hurst Johansen Hail Shank, LLP Should Not Be Held in Contempt of Court for Violation of the Court's March 3, 2006 Protective Order* (Doc. 202), filed August 24, 2012.  The Court also has considered Gruber Hurst Johansen Hail Shank LLP's ("Gruber Hurst's") *Motion Seeking Leave to Purge McAlexander Rebuttal Report* (Doc. 263) ("*Motion to Purge*").  On February 25, 2013, the Court conducted a hearing to determine whether to certify facts to the District Judge of the alleged contempt of (1) T-Netix, Inc., Securus Technologies, Inc., Richard A. Smith, Dennis J. Reinhold ("the T-Netix parties"), and (2) Gruber Hurst (collectively, "the Respondents").  Various witnesses and Respondents appeared in person before the undersigned through counsel and gave testimony.  Based on the parties' pleadings, the evidence presented at the hearing, and the parties' post-hearing briefs, the undersigned recommends that the District Court **DENY**

*Defendant's Motion for Order to Show Cause* and **GRANT** Gruber Hurst's *Motion to Purge*.

## I.     BACKGROUND

This case was commenced in April 2005 when T-Netix filed a patent infringement

complaint against VAC.  (Doc. 1).  Subsequently, VAC filed a counterclaim against T-Netix and

its parent company, Securus.  (Doc. 26).  Non-party Respondent Richard Smith is the Chief

Executive Officer and President of Securus.  Non-party Respondent Dennis Reinhold is the Vice-

President, General Counsel, and Secretary of Securus.

On March 3, 2006, the District Court entered the Agreed Protective Order that is the

subject of the current dispute.  (Doc. 44).  The Agreed Protective Order contained the following

provisions:

> Documents designated COUNSEL EYES ONLY CONFIDENTIAL
> INFORMATION and contents thereof shall be available only to counsel for the
> parties, the technical advisers who are assisting them, data processing vendors and
> graphics and trial consultants. . .
>
> CONFIDENTIAL INFORMATION and COUNSEL EYES ONLY
> CONFIDENTIAL INFORMATION shall be held in confidence by each person to
> whom it is disclosed, shall be used only for purposes of this litigation, shall not be
> used for any business or other purpose, and shall not be disclosed to any person
> who is not entitled to receive such information as expressly provided herein. All
> produced CONFIDENTIAL INFORMATION and COUNSEL EYES ONLY
> CONFIDENTIAL INFORMATION shall be carefully maintained so as to
> preclude access by persons who are not entitled to receive such information. . .
>
> CONFIDENTIAL INFORMATION or COUNSEL EYES ONLY
> CONFIDENTIAL INFORMATION shall not be copied or otherwise reproduced
> by a receiving party, except for transmission to qualified recipients, without the
> written permission of the producing party, or, in the alternative, by further order of
> the Court.

(Gruber Hurst Binder Ex. 1 at ¶¶ 16, 19, 23).  The Agreed Protective Order also required that,

within 60 days of the entry of judgment or settlement, each party would either return confidential

information to the producing party or destroy same. *Id.* at ¶ 26. "Counsel" was defined as

"outside attorneys retained by the parties to work on this litigation." *Id.* at ¶9. "Counsel" would

thus include the Pittman and Bell Nunnally law firms, who are counsel of record for T-Netix and

Securus in this case.

   In the instant *Motion for Order to Show Cause*, VAC claims that it learned in late 2007

that T-Netix/Securus first violated the Agreed Protective Order when they disseminated in a state

court proceeding and provided to Non-party Respondent Gruber Hurst a rebuttal expert report

prepared by Joseph C. McAlexander ("the McAlexander Report").[1]  (Doc. 204 at 5-6).  VAC

contends that the McAlexander Report discussed the validity of certain patents in this action and

contained confidential information and lengthy block quotations from "Counsel Eyes Only" VAC

documents. *Id.*  In December 2007, VAC filed a *Motion to Enforce the Agreed Protective Order,

for Civil Contempt, Sanctions and Injunctive Relief* ("*Motion to Enforce*").[2]  (Doc. 155).

   Pursuant to an *Order of Reference*, Magistrate Judge Sanderson held a hearing on April

16, 2008.  At the hearing, Mike Bowers with the Bell Nunnally firm appeared as counsel for T-

Netix/Securus.  He acknowledged that the McAlexander Report had been produced to Gruber

Hurst and then inadvertently produced by Gruber Hurst in a case pending in the Eastern District

of Texas.  (Doc. 204, Ex. A at 46-47).  Bowers argued, however, that Gruber Hurst was

permitted to possess the McAlexander Report because that firm was also representing T-

---

[1] Gruber Hurst has appeared as counsel for T-Netix/Securus in patent litigation filed in
Texas and elsewhere although that firm was not counsel of record in this particular case.

[2] When this case subsequently settled, the *Motion to Enforce* was one of several
documents in this action that was "withdrawn and permanently sealed" by agreement of the
parties. *See* Doc. 200.

Netix/Securus and was therefore subject to the Agreed Protective Order.  *Id.* at 50-52.  VAC's counsel, Stephanie Clouston, asserted that Gruber Hurst was not counsel of record in this case. *Id.* at 57-58.

Eric Tautfest, then a Gruber Hurst partner, stated during the hearing that Gruber Hurst had expert reports and discovery responses relating to the instant case because the firm was working with the Pittman and Bell Nunnally firms for the benefit of their mutual clients, T-Netix/Securus.  *Id.* at 69.  As to the reports and discovery documents, Judge Sanderson instructed that Gruber Hurst needed to return them right away until the firm formally entered an appearance in the case.  *Id.* at 69-70.  Bowers stated that the documents would be returned that day.  *Id.*

Later that month, Judge Sanderson issued a recommendation to the District Court on VAC's *Motion to Enforce*.[3]  (Doc. 184 at 9).  Judge Sanderson noted that Tautfest "agreed - pursuant to the undersigned magistrate judge's oral directive at the hearing - that copies of any documents which had been produced by VAC in this case under the agreed protective order and which the Gruber law firm had received from T-Netix's counsel of record in this case would be destroyed or returned by the Gruber law firm unless or until the Gruber law firm entered its formal appearance as counsel of record for T-Netix in this action."  *Id.* at 6.  Judge Sanderson noted that Gruber Hurst's argument that the firm represented T-Netix/Securus in the instant case was "incredible and wholly unworthy of belief."  *Id.* at 7.

Judge Sanderson then recommended that the District Court find that T-Netix and its counsel of record, the Pittman and Bell Nunnally law firms, "knowingly and deliberately"

---

[3] Judge Sanderson's recommendation was subsequently removed from the record and sealed pursuant to the parties' joint dismissal motion.  (Doc. 200).

violated the Agreed Protective Order. *Id.* at 8. Nevertheless, Judge Sanderson declined to recommend injunctive relief or disqualify counsel from representing T-Netix as VAC requested because, *inter alia*, the McAlexander Report had been clawed back by Gruber Hurst and either returned to VAC or destroyed. *Id.* at 9-10. Instead, Judge Sanderson recommended an award of costs and attorneys' fees in VAC's favor or, alternatively, a finding of civil contempt against the respondents. *Id.* at 11. In August 2008, prior to the District Court's consideration of Judge Sanderson's recommendation, the parties settled the action. (Doc. 199).

Four years later, VAC moved to reopen this case and filed the instant motion against the Respondents. (Doc. 201). VAC alleged that subsequent to the settlement and dismissal of this case, Gruber Hurst filed patent infringement actions against other defendants on behalf of T-Netix and Securus, namely (1) *T-Netix, Inc. v. Combined Public Communications, Inc.*, 3:09-cv-00743-CRS-DW, in the United States District Court for the Western District of Kentucky ("the Combined Action"); and (2) *T-Netix, Inc. v. Pinnacle Public Services LLC*, 2:09-cv-00333-JRG, in the United States District Court for the Eastern District of Texas (the "Pinnacle Action"). (Doc. 204 at 9). VAC contended that it subsequently learned that Gruber Hurst had improperly produced the McAlexander Report in discovery in at least one of those matters. *Id.* at 9-10. VAC asserted that Gruber Hurst violated Paragraphs 16, 19, 23, and 26 of the Agreed Protective Order by (1) failing to destroy or return the McAlexander Report within 60 days of the dismissal of this case; (2) disseminating the McAlexander Report in the Combined Action; and (3) possibly disseminating the McAlexander Report in the Pinnacle Action. *Id.* at 9-12.

As to individual Respondents Smith and Reinhold, VAC argued that a corporation can only act through the individuals who operate it and, to the extent the Court found that Smith and

5

Reinhold had directed, participated in, or condoned the violations of the Agreed Protective

Order, they should be held in contempt as well. *Id.* at 14. VAC maintained that sanctions

against Gruber Hurst were appropriate because, as a non-party to the case, it never should have

had the McAlexander Report in the first place and, even after it obtained a copy, it wrongly kept

it. *Id.* at 16.

Respondents opposed VAC's *Motion to Reopen*, arguing that they were voluntarily

complying with the Agreed Protective Order, and Gruber Hurst had immediately clawed back the

McAlexander Report, which Gruber Hurst partner Tony Magee had unknowingly produced in the

Combined and Pinnacle Actions. (Doc. 218 at 3-5; Doc. 219 at 8-14). Over Respondents'

opposition, the District Court reopened the case. (Doc. 228).

## II.     EVIDENTIARY HEARING

On February 25, 2013, the parties appeared before the undersigned for a hearing. At the

outset of the hearing, counsel for Gruber Hurst noted that VAC had argued in the prior contempt

proceeding, and Judge Sanderson had found, that Gruber Hurst was not entitled to have the

McAlexander Report because the firm was not a party to the Agreed Protective Order. (Doc. 274

at 6-7). Gruber Hurst asserted that VAC, thus, was estopped from arguing in the instant

proceeding that Gruber Hurst should be held in contempt for violating the Agreed Protective

Order. *Id.*

The Court subsequently heard testimony from Clouston, who discussed the events that

underlay the initial contempt proceedings before Judge Sanderson, as well as the circumstances

that led to the instant proceedings relating to the McAlexander Report. Clouston stated that

immediately following the contempt hearing held by Judge Sanderson in 2008, Gruber Hurst

returned all confidential documents, including the McAlexander Report, to the Bell Nunnally firm, which then returned the documents to Clouston as counsel for VAC. *Id.* at 26-30.

Clouston averred that on August 24, 2010, she received a phone call from Magee inquiring whether she would ask VAC whether it would agree to allow Magee to produce "certain documents" from the instant case in the Combined and Pinnacle Actions. *Id.* at 32-33, 69-70. Clouston testified that she told Magee she did not believe VAC would agree to that because some of the documents he appeared to be asking for had been central in a "prior contempt proceeding" or "prior proceeding," and VAC subsequently did decline to allow the production. *Id.* at 35-36, 72-73. Clouston averred that she did not go into any detail with Magee about what she meant by "prior proceeding," but Magee appeared to understand what she meant. *Id.* at 73-74.

The next day, Magee e-mailed Clouston that he was following up on a letter his associate had sent to VAC, asking whether VAC would allow T-Netix/Securus to produce, in the Combined Action, the settlement agreement and patent license agreement entered in this case as well as any materials that related to invalidity contentions. *Id.* at 62-69; Gruber Hurst Binder Exs. 9, 13. Clouston testified that Magee did not indicate to her at that time that he had the McAlexander Report, that he had any knowledge of the Report, or that the Report had been produced to opposing counsel in any other case. (Doc. 274 at 35, 70-71).

Clouston subsequently began representing Combined in the Combined Action. *Id.* at 37. In going through the discovery in the case, she noticed a reference to the McAlexander Report in an August 27, 2010 letter from Magee to Clouston's predecessor counsel. *Id.* at 39-41; VAC Binder Ex. 11. In the letter, Magee noted that he had inadvertently produced the McAlexander

Report, which was protected from disclosure by a protective order in this case but, "as indicated in previous discussions," he was talking with VAC to see if it would consent to permit production of the Report.  (VAC Binder Ex. 11).  After Clouston spoke with her law partners, it was decided that VAC should be notified that the McAlexander Report had been produced in other litigation in violation of the Agreed Protective Order.  (Doc. 274 at 43).  Upon examination by counsel for the T-Netix parties, Clouston testified that she had no knowledge that Securus, T-Netix, Reinhold, or Smith had provided a copy of the McAlexander Report to Gruber Hurst or asked Gruber Hurst to provide that document to any party in any lawsuit.  *Id.* at 100-01.

VAC's only other witness was Respondent Reinhold, and he categorically testified that Securus "did not have the document," and, "[w]e still don't have the document.  We've never had the document."  *Id.* at 115.  Reinhold also averred that he had an electronic search run which did not find the document in Securus's possession.  In his words, "I wanted to make sure we did not have the document.  I knew we did not have the document, because I had never seen it, nor had anyone in my office ever seen it, and so we did a search this past week."  *Id.* at 114.

Gruber Hurst attorney Tony Magee testified as follows:  He joined Gruber Hurst on September 2, 2008, after the instant case had settled.  *Id.* at 239.  In September 2009, he filed the Pinnacle and Combined actions on behalf of T-Netix/Securus.  *Id.* at 240.  The McAlexander Report was found in Gruber Hurst's archives after he had the firm's document vendor search for all documents the firm had produced in a previous patent case so that Magee could use the same production in the Combined and Pinnacle Actions, which involved similar patents.  *Id.* at 241-48. The vendor's search led to the location of several hundred thousand images, including the McAlexander Report, which Magee then produced in the Combined and Pinnacle Actions.  *Id.* at

8

248-50, 298.  At the time, Magee was unaware of the existence of the McAlexander Report and

the prior contempt proceeding in this case.  *Id.* at 241-42, 250.

He subsequently learned from opposing counsel in the Combined Action that he had

included some potentially privileged documents in his discovery response.  *Id.* at 253-55.  In an

effort to assemble a privilege log to claw back the privileged documents, on August 24, 2010,

Magee obtained the privilege log used in the prior case that he had pulled the discovery responses

from.  *Id.* at 260-61; Gruber Hurst Binder Ex. 11.  The privilege log was 41 pages long and listed

288 documents, including the McAlexander Report at item number 166 on page 23.  (Doc. 274 at

262-64; Gruber Hurst Binder Ex. 26).  Magee averred that when he spoke to Clouston on the

phone that same day, he still was unaware of the McAlexander Report.  (Doc. 274 at 263).  Over

the course of the next two days, Magee determined which of the documents on the privilege log

had been produced in the Combined Action and he reviewed them individually to determine

whether it was worth clawing them back.  *Id.* at 270-71.

During the review process, Magee came across the McAlexander Report and was

confused about why an expert report was marked "privileged."  *Id.* at 272.  He asked an associate

at the firm, who told him that the McAlexander Report was not privileged, but it was subject to a

protective order, Gruber Hurst was not supposed to have it, and it had to be clawed back from

Combined.  *Id.* at 272-73.  Magee believed that he learned this on August 26, 2010.  *Id.* at 301.

Magee thus amended the privilege log he was drafting for the Combined Action to note that the

McAlexander Report was being clawed back because it was subject to a protective order, not

privileged.  *Id.* at 273.  On August 27, 2010, Magee sent the privilege log to counsel in the

Combined Action, noting that the basis for withholding the McAlexander Report was that it was

9

subject to a protective order and explaining that he was willing to produce the Report with the consent of VAC with whom he was in discussion. *Id.* at 274-75.

Magee denied that he had spoken with Clouston about the McAlexander Report or that Clouston had ever told him about the contempt proceeding. *Id.* at 282. Magee said that while he spoke with Clouston in this timeframe, he did not know about the McAlexander Report when they talked, and he called her because he wanted VAC's permission to disclose to Combined two other documents from this case. *Id.* at 263, 264-65. Regarding the follow-up e-mail Magee had sent to Clouston the day after they spoke, Magee acknowledged that the e-mail said he had "not seen the contentions because they were covered by a protective order." *Id.* at 267; (Gruber Hurst, Binder Ex. 13). He testified, however, that he was not referring to the McAlexander Report and, in fact, had no idea that the McAlexander Report had anything to do with invalidity contentions because that was not information referenced on the privilege log. *Id.* at 263-64; Gruber Hurst, Binder Exs. 13, 26; (Ex. 26 privilege log, listing Bates Number "ST200646-200760 - Rebuttal Report of Joseph Alexander (VAC case) - Attorney Client and Work Product").

Magee also testified at length regarding the measures Gruber Hurst undertook to alleviate VAC's concerns about dissemination of the McAlexander Report. He stated that the firm verbally offered to have a forensic expert determine where the McAlexander Report was in Gruber Hurst's system and purge it at Gruber Hurst's expense, but VAC's counsel rejected the offer. (Doc. 274 at 288-90). Gruber Hurst then repeated that offer in writing, suggested a potential forensic expert, and forwarded the proposed expert's resume to VAC's counsel. *Id.* at 290-92; Gruber Hurst Binder Ex. 20. VAC's counsel advised that such a measure did not mitigate Gruber Hurst's past actions and did not affect the pending contempt matters. (Gruber

10

Hurst Binder Ex. 21).

On examination by T-Netix/Securus's counsel, Magee stated that he had never received a copy of the McAlexander Report from any of the T-Netix parties or affiliates, nor had any of those parties ever directed him to produce a copy of the Report in the Combined or Pinnacle Actions.  (Doc. 274 at 292-93).

At the close of the evidence, the Court directed the parties to submit post-hearing briefs on the issues of (1) whether Gruber Hurst was subject to the Agreed Protective Order; (2) whether VAC was estopped from arguing that Gruber Hurst was subject to the Agreed Protective Order in light of the position it took in the 2008 contempt proceedings before Judge Sanderson; and (3) whether Gruber Hurst violated Judge Sanderson's directive about the destruction or return of the McAlexander Report and, if so, whether sanctions were appropriate.  *Id.* at 320-24.

## III.   APPLICABLE LAW

To satisfy the clear and convincing standard necessary to justify a finding of civil contempt, the movant's evidence must be "so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case."  *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 582 (5th Cir. 2005) (quotation omitted).  The movant must prove that (1) a court order was in effect; (2) the order required certain conduct by the respondent; and (3) the respondent failed to comply with the court order.  *Id.* at 581-82.

## IV.   ARGUMENTS AND ANALYSIS

### A. Whether Gruber Hurst Can Be Subject to Contempt Under the Agreed Protective Order

Gruber Hurst contends that VAC is judicially estopped from arguing that Gruber Hurst is

a party to the Agreed Protective Order because VAC espoused the opposite position in the 2008

briefing and hearing before Judge Sanderson on its *Motion to Enforce*.  (Doc. 271 at 4-7).

Further, Gruber Hurst argues that because Judge Sanderson determined that the firm was not a

party to the Agreed Protective Order, VAC is also collaterally estopped from relitigating that

issue.  *Id.* at 7-8.  Moreover, Gruber Hurst asserts, it is not liable for having "acted with" an

enjoined party to violate the Agreed Protective Order because the evidence demonstrates that it

did not conspire with any of the other Respondents to use or possess the McAlexander Report.

*Id.* at 9-10.  Even if it there were any evidence to support VAC's aiding and abetting theory,

Gruber Hurst maintains that it acted in good faith by immediately clawing back the McAlexander

Report from opposing counsel in the Combined and Pinnacle actions.  *Id.* at 10-11.  Finally,

Gruber Hurst asserts that VAC is estopped from arguing that Tautfest's execution of the

Confidentiality Agreement attached to the Agreed Protective Order brought Gruber Hurst within

its scope.  (Doc. 285 at 3-4).

    VAC urges that it has not taken inconsistent positions that would warrant application of

the doctrine of judicial estoppel.  (Doc. 269 at 2).  In particular, VAC contends that it takes the

same position now as it did in the hearing before Judge Sanderson, which is that Gruber Hurst

never should have had the McAlexander Report because it was not counsel of record in this

action.  *Id.* at 2, 7-8.  VAC submits that Gruber Hurst's judicial estoppel argument is based on

the false premise that VAC argued (and Judge Sanderson found) that Gruber Hurst was not

"subject to" the Agreed Protective Order.  VAC maintains that its complaint about Gruber

Hurst's conduct in 2008 – and the basis of Judge Sanderson's ruling – was that the firm should

not have had the McAlexander Report because it was not counsel of record.  *Id.* at 3-8.

In short, VAC asserts that the fact that Gruber Hurst was not a signatory to the Agreed Protective Order and that it has never been counsel in this action does not mean that Gruber Hurst cannot be held in contempt for its admitted violation of the Agreed Protective Order because (1) Gruber Hurst was at all times the agent of Securus/T-Netix; and (2) prior to its dissemination of the McAlexander Report in the Combined and Pinnacle Actions in 2010, Gruber Hurst had actual knowledge of the Agreed Protective Order. *Id.* at 4. Thus, VAC maintains, Gruber Hurst's retention and dissemination of the McAlexander Report in the Pinnacle and Combined Actions was for the benefit of Securus/T-Netix and as part of Gruber Hurst's coordination of efforts with the Bell Nunnally firm, which supports a finding of contempt against Gruber Hurst. *Id.* at 9-11. VAC further notes that Tautfest executed a Confidentiality Agreement stating that he would keep all information provided to him in this case confidential and acknowledging that he was subject to the authority of the Court if the Agreed Protective Order was violated.[4] *Id.* at 10-11 (citing Gruber Hurst Binder Ex.2).

Courts in the Fifth Circuit generally consider three criteria when evaluating a defense of judicial estoppel, including whether: "(1) the party against whom judicial estoppel is sought has asserted a legal position that is 'plainly inconsistent' with a position asserted in a prior case; (2) the court in the prior case accepted that party's original position, thus creating the perception that one or both courts were misled; and (3) the party to be estopped has not acted inadvertently." *In re Oparaji*, 698 F.3d 231, 235-36 (5th Cir. 2012) (citing *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012)). The purpose of the judicial estoppel doctrine is to protect the integrity

---

[4] VAC and Gruber Hurst also have filed responses to each other's post-hearing briefs that largely reiterate their original arguments and thus will not be extensively summarized here. (Docs. 281, 285).

of the judicial process by preventing parties "from playing fast and loose with the courts" to suit their self interests. *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999).

In the 2008 contempt proceeding, VAC (1) objected to the Bell Nunnally firm's assertion that Gruber Hurst was counsel in this case, and (2) argued that Gruber Hurst was not entitled to see VAC's confidential documents and expert reports because it was not counsel of record. (Doc. 204, Ex. A at 12-13, 22-24, 26-29, 56-57, 67-68).  Judge Sanderson agreed and determined that Gruber Hurst should not have copies of the McAlexander Report or other confidential documents until the firm entered a formal notice of appearance in the case.  *Id.* at 68-69, 71.

Under these circumstances, VAC is judicially estopped from arguing that Gruber Hurst is subject to the terms of the Agreed Protective Order and can thus be held in contempt for violating it.  *See* Doc. 204 at 10-12 (stating at p. 10 that the McAlexander Report should never have been in the hands of Gruber Hurst because they were not outside counsel of record in this action; stating at pp. 12, 15-16 that Gruber Hurst's possession of the McAlexander Report violated the Agreed Protective Order, and Gruber Hurst should be held in contempt due to its knowledge of the Order).  The applicability of the Agreed Protective Order to Gruber Hurst in this proceeding is dependent on Gruber Hurst being T-Netix/Securus's counsel of record in this case, and VAC taking that position would be "plainly inconsistent" with its position in the 2008 contempt hearing; (2) Judge Sanderson accepted VAC's original position; and (3) VAC did not act inadvertently in taking that position.  *Oparaji*, 698 F.3d at 235-36.  Even though Gruber Hurst is not bound by the terms of the Agreed Protective Order as a signatory, the Court still must consider whether Gruber Hurst can be held in contempt for conspiring with one of the other Respondents to violate the Agreed Protective Order.

14

The general rule in a civil contempt proceeding is that a party need not intend to violate an injunction to be found in contempt.  *See McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949).  However, the rule is different when it comes to non-parties like Gruber Hurst.  A non-party can be subject to contempt sanctions if it "acts with" an enjoined party to bring about a result prohibited by court order, but only if the non-party is aware of the order and knows that its acts are in violation.  *Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.*, 154 F.3d 1345, 1353 (5th Cir. 1998), quoting *Waffenschmidt v. MacKay*, 763 F.2d 711, 723-26, 726 (5th Cir. 1985) ( "Although good faith is irrelevant as a defense to a civil contempt order, good faith is relevant to whether [a non-party] aided or abetted [an enjoined party] in dissipating the funds with knowledge that it was violating the court's orders.") (alterations in original); *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1304-05 (Fed. Cir. 2012) (stating that a non-party to an injunction may not be held in contempt for its wholly independent conduct and noting that *Additive Controls* held that a finding of contempt requires that the non-party "act[ed] with an enjoined party to bring about a result forbidden by the injunction . . . if they are aware of the injunction and know that their acts violate the injunction.").  Thus, a court order binds not only the parties subject thereto, but also non-parties who act with the enjoined party, although a showing of wilfulness must be shown before a non-party can be found held liable.  *See NLRB v. Laborers' Int'l Union of N. Am., AFL-CIO*, 882 F.2d 949, 954 (5th Cir. 1989) ("[A]ny party who knowingly aids, abets, or conspires with another to evade an injunction or order of a court is also in contempt of that court.").

In *Whitcraft v. Brown*, 570 F.3d 268, 272 (5th Cir. 2009), the district court held that an attorney violated the court's freeze order, which prohibited his client (and the client's officers,

15

agents, employees, attorneys, etc.) from spending funds or disbursing assets in the client's possession.  The appeals court upheld the district court's ruling, noting that the freeze order clearly bound the attorney, and the attorney had actual notice of the order.  570 F.3d at 272. Further, the district court determined that counsel had acted in "active concert or participation" with his client by (1) participating in discussions about how to get funds to his client, (2) approving the sale of a painting, and (3) permitting his office to be used as the place to consummate the sale.  *Id.*  The appellate court found that the attorney's actions in facilitating the sale of the painting "aided or abetted [the client] . . . with knowledge that [the client] was violating the court's orders."  *Id.*

In *Waffenschmidt*, the court noted that good faith was relevant in considering whether a non-party bank had knowingly aided or abetted the defendant in dissipating funds in violation of a temporary restraining order.  763 F.2d at 726.  The bank had relied on the defendant's assurances and required him to pledge a note as collateral when it loaned him money.  The appellate court found that when the bank, on the defendant's instructions, applied the proceeds of the security to the defendant's debts, it did not knowingly violate a court order, because the restraining order had expired and the bank had not received a copy of the preliminary injunction. *Id.*  The appellate court noted that while the bank might have been negligent, it did "not affect the conclusion that the [b]ank did not actively aid or abet [defendant] with knowledge that it was violating the court's orders."  *Id.*

In this case, VAC did not present any evidence that Gruber Hurst "acted with" or "actively aided or abetted" T-Netix/Securus, Reinhold, Smith, or anyone at the Pittman or Bell Nunnally law firms to violate the Agreed Protective Order by disseminating the McAlexander

Report to opposing counsel in the Combined and Pinnacle Actions. *Additive Controls*, 154 F.3d at 1353; *Waffenschmidt*, 773 F.2d at 726. Clouston testified that she was aware of no such evidence. (Doc. 274 at 100-01). Reinhold testified that T-Netix/Securus never had possession of the document, and no one there had ever even seen it. *Id.* at 114-15. There is no evidence in the record to suggest that the Pittman or Bell Nunnally law firms had any further involvement with the McAlexander Report after they returned it to VAC and settled this case in 2008. Although VAC argues at length that Gruber Hurst generally engaged in "coordinated activity" with Bell Nunnally and T-Netix/Securus in litigating various causes of action, VAC has not shown that those parties engaged in any coordinated activity *to violate the Agreed Protective Order* in connection with the 2010 disclosure of the McAlexander Report, which is the required showing in this Circuit. *Additive Controls*, 154 F.3d at 1353; *NLRB*, 882 F.2d at 954; *Waffenschmidt*, 773 F.2d at 726.

Gruber Hurst partner Magee testified that the production of the McAlexander Report in the Combined and Pinnacle Actions was solely the error of Gruber Hurst. Magee recalled in detail the manner in which the McAlexander Report was found, and the Court finds his testimony to be credible in all material respects. In particular, Magee averred that the McAlexander Report was located in Gruber Hurst's archives by the firm's document vendor when Magee was searching for documents the firm had produced in a previous patent case so that he could replicate that production in the Combined and Pinnacle Actions. *Id.* at 241-48. The McAlexander Report was included in Magee's document production together with approximately 600,000 other images, and the Court thus deems it credible that Magee was not aware of its existence until after he had already produced the Report in the Combined and Pinnacle Actions.

*Id.* at 241-42, 248-50.  Further, the Court finds credible Magee's testimony that he was unaware

of the prior contempt proceedings in this action given that he did not start to work at Gruber

Hurst until after the instant action was dismissed.  *Id.* at 239.  For these reasons, VAC has not

shown that Gruber Hurst "acted with" or "actively aided or abetted" T-Netix/Securus, Reinhold,

Smith, or anyone at the Pittman or Bell Nunnally law firms to violate Paragraphs 16, 19, or 23 of

the Agreed Protective Order by disseminating the McAlexander Report to opposing counsel in

the Combined or Pinnacle Actions.  *Additive Controls*, 154 F.3d at 1353; *Waffenschmidt*, 773

F.2d at 726.  Accordingly, the Court cannot find that Gruber Hurst violated the Agreed Protective

Order.  Thus, *Defendant's Motion for Order to Show Cause Why T-Netix, Inc., Securus*

*Technologies, Inc., Richard A. Smith, Dennis J. Reinhold, and Gruber Hurst Johansen Hail*

*Shank, LLP Should Not Be Held in Contempt of Court for Violation of the Court's March 3,*

*2006 Protective Order* (Doc. 202) should be **DENIED** as to Gruber Hurst.

### B.  Violation of Judge Sanderson's Directive

VAC further asserts that the current proceeding encompasses Gruber Hurst's conduct

after the 2008 hearing before Judge Sanderson and Gruber Hurst's failure to comply with Judge

Sanderson's directive to either (1) return or destroy the confidential materials it possessed or (2)

enter an appearance in this action.  (Doc. 269 at 2).  VAC contends that the key factor in Judge

Sanderson's decision not to recommend injunctive relief was his understanding that Tautfest had

agreed at the contempt hearing to destroy or return the confidential documents.  *Id.* at 11.  VAC

maintains that Gruber Hurst's efforts to purge their files of the McAlexander Report were

ineffectual and half-hearted, and Magee exacerbated the problem by failing to substantively

review the archived documents he located before producing them in the Combined and Pinnacle

18

Actions.  *Id.* at 12.

VAC points out that Gruber Hurst's former paralegal testified that she did not search desktop computers, personal laptops, or any cell phones that might have contained the McAlexander Report, and she could not recall whether she checked any firm laptops; thus, the Report still might exist within Gruber Hurst.  (Doc. 281 at 9) (citing Doc. 274 at 235-37).  VAC maintains that if Gruber Hurst had taken its purge responsibilities seriously, it would have confirmed the purge with its information technology vendor – the same vendor that apparently transferred the firm over to a new database two weeks later and included the McAlexander Report in the documents transferred.  *Id.* at 10.  VAC urges that a contempt sanction against Gruber Hurst is warranted, and the Court can recommend such a sanction based on its inherent authority and Gruber Hurst's repeated instances of bad faith conduct.  *Id.* at 13-15.

As an initial matter, Gruber Hurst argues that the undersigned cannot consider whether the firm's conduct violated Judge Sanderson's directive because that is outside the scope of VAC's application for an order to show cause and the District Court's *Order of Reference*.  (Doc. 271 at 16-17).  Gruber Hurst further argues that Judge Sanderson did not order the firm to take a particular course of action, and Tautfest made no representation to the Court as to what he would do when presented with the options of either entering a notice of appearance or returning the documents in question.  *Id.* at 11-13, 17.  Last, Gruber Hurst maintains that it substantially complied with Judge Sanderson's directive by undertaking extensive efforts to destroy and return all copies of the McAlexander Report as testified to by Tautfest and the firm's former paralegal, Lisa Miller, but mistakenly failed to destroy one version.  *Id.* at 13-17.

19

*1.  Whether the Undersigned Has Authority to Consider Whether Gruber Hurst Violated Judge Sanderson's Directive*

The Court has the inherent power to impose sanctions against attorneys who engage in bad faith conduct in litigation.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991).  Such authority exists when a party shows bad faith by "hampering enforcement of a court order." *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978) (citation omitted).  The undersigned thus finds that while Judge Fitzwater's *Order of Reference* was limited to the acts surrounding the Agreed Protective Order, the Court can call upon its inherent authority to recognize, and recommend punishment for, any bad faith conduct that occurred if a party violated a different Court order. Nevertheless, while this inherent power exists, the threshold for its use to impose sanctions is high.  *Reed v. Iowa Marine and Repair Corp.*, 16 F.3d 82, 84 (5th Cir. 1994).

*2.  Whether Judge Sanderson Issued a Directive With Which Gruber Hurst was Required to Comply*

Tautfest, then a Gruber Hurst partner, stated during the April 2008 hearing before Judge Sanderson that Gruber Hurst had expert reports and discovery responses relating to the instant case because the firm was working with the Pittman and Bell Nunnally firms on behalf of their mutual clients, T-Netix/Securus.  (Doc. 204, Ex. A at 69).  As to those documents, Judge Sanderson instructed: "*that needs to go back right now*.  If you and your firm want to formally enter an appearance as the third counsel representing T-Netix in this case, then so be it.  But I think there are all kinds of confusions here when you are representing T-Netix or Securus in an Eastern District case.  So let's *get that back right now*." *Id.* (emphasis added).

Mike Bowers of the Bell Nunnally firm started to ask a question of the Court regarding the McAlexander Report, and Judge Sanderson stated that he did not need any further

20

information about that, but he did "want those documents returned to counsel whose appearance has already been entered in this case." *Id.* at 70.  Judge Sanderson then remarked that "if you wish to enter an appearance formally . . . in this case . . . then I think *once you have been enrolled* and your firm has been enrolled as co-counsel of record in the Northern District of Texas, you are *then thereafter entitled to access* under the terms of the confidentiality order." *Id.* (emphasis added).  Bowers stated that the documents at issue would be returned that day. *Id.*  When Clouston then started to ask a question regarding the McAlexander Report, Judge Sanderson stated that he was not going to further address it because he had received assurances that everything had been clawed back and that any documents that remained in Gruber Hurst's possession were going to be returned to VAC in the next day or so. *Id.* at 71.

Considering the totality of the evidence, it is clear to the undersigned that Judge Sanderson directed Gruber Hurst to return the documents unless and until such time as Gruber Hurst filed a notice of appearance on behalf of the T-Netix parties.  Only after the notice of appearance was filed would Gruber Hurst then be permitted to access the confidential documents, including the McAlexander Report.  Gruber Hurst never entered an appearance in this case and, therefore,  was required to return the McAlexander Report to counsel of record and/or VAC.  Accordingly, the next issue the Court must address is whether Gruber Hurst complied with Judge Sanderson's directive.

   *3.  Whether Gruber Hurst Complied with Judge Sanderson's Directive*

Tautfest testified that he met with the Gruber Hurst team after the 2008 hearing before Judge Sanderson and advised Lisa Miller, the team paralegal, that they needed claw back the documents that Judge Sanderson had ordered Gruber Hurst to return. (Doc. 274 at 198-99;

21

Gruber Hurst Binder Ex. 3).  Tautfest instructed Miller "to send back the originals to Bell Nunnally and . . . get into Summation, get the documents off of there, get them off the system, and round up any copies anybody has and get them and delete them."  (Doc. 274 at 199).

Miller testified that she complied with Tautfest's instructions by (1) getting all copies of the documents out of any working notebooks and from the recycling bin and shredding them; (2) deleting all of the electronic copies off the firm's computer system; and (3) giving the original documents to Tautfest so he could return them to Bell Nunnally.  *Id.* at 225-26.  Miller said that she deleted the electronic documents from the firm's computer system by opening the database, marking the documents for deletion, and purging them.  *Id.* at 227-28.  Then she went into the system through the hard drive where there were actual physical documents in labeled folders and manually deleted the documents and moved them out of the folders.  *Id.* at 228.  Tautfest testified that after Miller told him that she had deleted the documents from the firm's computer system, he searched for several of the documents on the system, but could not find any.  *Id.* at 199-200.

It is clear that Gruber Hurst did not fully comply with Judge Sanderson's directive, however, because it retained a copy of the McAlexander Report in its firm database, even if inadvertently.  Nevertheless, Gruber Hurst contends that its actions constituted substantial compliance, an assertion with which VAC disagrees.  An accused contemnor may avoid a contempt finding if it can show that it has either substantially complied with the order at issue or has made every reasonable effort to do so.  *U.S. Steel Corp.*, 598 F.2d at 368; *Rizzo*, 539 F.2d at 465.

In *Rizzo*, the appellate court reversed a finding of contempt, which the district court had imposed when it found that the defendant had not adequately complied with an IRS summons to

produce certain records. *Id.* The higher court observed that there was no evidence that the defendant had attempted to destroy or withhold any of the missing records, he had ordered his office staff to produce all of the records, he testified that some records might not have been made and others might have been transferred to other doctors, and his record-keeping system was confusing. *Id.* at 466. Moreover, the defendant had produced a great deal of records initially, several more trickled in over time, and he and his assistant testified that they had searched the office files several times for responsive documents and discovered more records, but not all of the ones sought by the IRS. *Id.* The appeals court held that, on these facts, the government had not proved contempt by clear and convincing evidence. *Id.* at 466-67.

In *Mendoza v. Regis Corp.*, 2005 WL 1950118 (W.D. Tex. 2005), cited by VAC, the district court considered whether the defendant had substantially complied with an injunction that enjoined it from using the "Hairmasters" name. On two occasions, one before and one after the consent injunction was entered, the defendant instructed its media agency to replace its telephone listings for "Regis Hairmasters" with a different name, but did nothing further to ensure that the listings were changed. 2005 WL 1950118 at *2. Unbeknownst to the defendant, the directory listing was not changed. The court rejected the defendant's argument that its efforts to comply relieved it of liability, holding that only by making "every reasonable effort to comply" could a contemnor satisfy the substantial compliance test. *Id.* at *4 (finding that the defendant made only a "casual effort to comply," resulting in the incorrect listings appearing in the phone book for more than three years after issuance of the injunction).

The undersigned does not find *Mendoza* to be directly analogous to the circumstances presented here. In this case, it appears that Gruber Hurst made "in good faith all reasonable

efforts to comply" with Judge Sanderson's directive to return the outstanding confidential

documents to VAC and/or Bell Nunnally. *Rizzo*, 539 F.2d at 465.  While Gruber Hurst's

compliance was not perfect – Miller, for example, could have searched individual laptops,

phones, and desk top computers – the team working on this matter was small, as testified to by

Tautfest, and Miller removed physical copies of the documents from individual's offices, went

through the recycling bin to retrieve copies, got the original documents back to Tautfest, and

deleted the documents from the firm's database to the best of her ability.  Tautfest verified

Miller's efforts to delete the documents by attempting to search for them on the database and,

finding none, believed they had been deleted satisfactorily.  The Court believes these efforts to be

reasonable, considering that the individuals involved are in the legal field, not the information

technology field. *U.S. Steel*, 598 F.2d at 368.  Moreover, these efforts are far greater than those

expended by the defendant in *Mendoza*.  The facts here are more analogous to those in *Rizzo*

where the accused contemnor produced significant documentation, but testified that after

repeated efforts he had been unable to locate anything further.  The undersigned thus finds that

Gruber Hurst was in substantial compliance with Judge Sanderson's directive and should not be

subjected to sanctions in that regard.

**C.  Actions of the T-Netix Parties**

VAC next argues that a contempt finding against the T-Netix parties is appropriate

because they did not adequately ensure that their counsel, Gruber Hurst, complied with the

Agreed Protective Order and Judge Sanderson's directive.  (Doc. 269 at 13-16).

The T-Netix parties respond that VAC has not provided any evidence that the T-Netix

parties were ever in possession of the McAlexander Report or that they were aware that Gruber

24

Hurst retained and inadvertently produced the Report in other litigation.  (Doc. 278 at 6-7).  The T-Netix parties assert to the contrary that the evidence shows that they never had the McAlexander Report and did not know about, and are not liable for, its production by Gruber Hurst in 2010.  *Id.* at 7-9, 12-19.  The T-Netix parties conclude that VAC has generated thousands of dollars in unnecessary attorneys' fees to purportedly coerce compliance from Respondents who are not refusing to comply with the Agreed Protective Order, but VAC has refused all of Respondents' offers to destroy the McAlexander Report and have a forensic expert confirm destruction.  *Id.* at 21-22.

Upon consideration of the parties' arguments, the Court finds that VAC has not provided clear and convincing evidence that the T-Netix parties violated either the Agreed Protective Order or Judge Sanderson's directive.  Indeed VAC has not provided any evidence that any of the T-Netix parties ever even saw the McAlexander Report, much less that they were somehow involved with Gruber Hurst's production of the Report in the Combined and Pinnacle Actions.  Under these circumstances, VAC cannot point to the "clear, direct and weighty" evidence required to allow the undersigned "to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case."  *Test Masters*, 428 F.3d at 582.

Additionally, the T-Netix parties should not be deemed bound by the acts of the Gruber Hurst firm in disseminating the McAlexander Report merely because of their attorney-client relationship.  A client generally is deemed bound by the acts of his lawyer, *United States v. Villanueva-Diaz*, 634 F.3d 844, 851 n.4 (5th Cir. 2011).  However, that is not the case if the lawyer's acts exceeded his authority.  *Heine v. Schendel*, 797 S.W.2d 278, 280 (Tex. App. – Corpus Christi, 1990).  Here, Gruber Hurst's dissemination of a document that it should not have

had and which Reinhold testified the T-Netix parties had never seen should not be binding on the

T-Netix parties.  Moreover, the Court has already found that Gruber Hurst's actions were

inadvertent and not themselves subject to contempt or any other type of sanctions.  It would

hardly seem appropriate to punish Gruber Hurst's client under the circumstances.

For the above reasons, *Defendant's Motion for Order to Show Cause Why T-Netix, Inc.,*

*Securus Technologies, Inc., Richard A. Smith, Dennis J. Reinhold, and Gruber Hurst Johansen*

*Hail Shank, LLP Should Not Be Held in Contempt of Court for Violation of the Court's March 3,*

*2006 Protective Order* (Doc. 202) should be **DENIED** as to the T-Netix parties as well.

### D.  Gruber Hurst's Motion to Purge

Gruber Hurst has filed a *Motion to Purge*, requesting the Court's leave to engage a

computer expert to delete all copies of the McAlexander Report from its computer system and

other storage media and describe and certify the expert's forensic analysis, procedure, metadata

inspection, and results relating to such deletion.  (Doc. 263 at 2, 7-8).  Gruber Hurst avers that it

has repeatedly offered to delete the McAlexander Report from its database with the assistance of

a forensic consulting firm, but VAC has refused.  *Id.* at 7.

VAC responds that an immediate purge of the McAlexander Report will deprive VAC of

its ability to trace the acquisition and dissemination of the document.  (Doc. 265 at 2).  VAC

argues that this Court needs to assist in selecting and instructing the forensic consultant as to the

scope of services to be provided.  Further, VAC maintains that all history related to the

McAlexander Report must be preserved prior to the purge, and the purge cannot occur until VAC

reviews and accepts or objects to the history and tracking report, and this Court determines

whether the investigation and tracking report is sufficient.  *Id.* at 3.  VAC asserts that any

consultant must determine how, when, and to whom Gruber Hurst disseminated the McAlexander Report. *Id.* at 4-5. Finally, VAC contends that the Court also should order Respondents to pay for an investigation and purge of the T-Netix parties' and their local counsel's computers as well. *Id.* at 5.

Gruber Hurst replies that David Cowen, who testified as its computer forensics investigator at the Court's evidentiary hearing, averred that he found every copy of the McAlexander Report that was located on Gruber Hurst's server and explained who had accessed it and when and, thus, VAC's objections have been rendered moot. (Doc. 282-1 at 3). Gruber Hurst notes that VAC has not demonstrated any shortcomings in Cowen's qualifications or expertise. *Id.* at 3-4.

At the evidentiary hearing held before the undersigned, Cowen detailed the McAlexander Report's original location on Gruber Hurst's computer system and how it was transferred to a different drive when Gruber Hurst added additional storage space to its server on April 28, 2008 (12 days after the hearing on the *Motion to Enforce* held by Judge Sanderson). (Doc. 274 at 155-57, 172). Cowen stated that his review indicated that the McAlexander Report was not accessed by anyone other than an information technology administrator after 2010, and he described the Report's two current locations on Gruber Hurst's server. *Id.* at 160, 163-64. Cowen also testified that he was aware that Gruber Hurst had produced in the Combined and Pinnacle Actions an external hard drive that contained the McAlexander Report, but the drive had been sent back to Gruber Hurst. *Id.* at 163-64.

Based on the testimony at the hearing, as a whole, it is clear to the undersigned that the McAlexander Report was acquired by Gruber Hurst before the April 2008 hearing before Judge

27

Sanderson, and there is no evidence to suggest that Gruber Hurst improperly reacquired the McAlexander Report thereafter as VAC has suggested.  VAC had no objection to Cowen testifying as a computer forensic expert and has not suggested that he is unqualified to give his opinion in regard to the remaining matters.  *Id.* at 150.  The undersigned finds Cowen's testimony to be reliable and persuasive.  As to the scope of the additional forensic investigation VAC asserts is required, Cowen testified that the scope of his task in this matter was to "[f]ind out everything I can about the existence of the . . . McAlexander [Report], where it existed on the [Gruber Hurst] server, what happened to [the McAlexander Report], any possible copies of it, track it down, find out what happened to it.").  *Id.* at 168.  Such investigation should be sufficient under the circumstances of the case.

Moreover, there is no support for VAC's assertion that the Court should order Respondents to pay for an investigation and purge of the computers of the T-Netix parties or their local counsel, the Bell Nunnally and Pittman firms.  There is simply no evidence to suggest that the T-Netix parties ever had the McAlexander Report; indeed T-Netix's counsel strongly denied it, and VAC presented no such evidence, but merely speculated to the contrary.  Further, VAC presented no evidence at the evidentiary hearing suggesting that the Bell Nunnally and Pittman firms violated the Agreed Protective Order by retaining the McAlexander Report after the settlement of this case.

## V.      CONCLUSION

For the reasons discussed above, the undersigned recommends that the District Court

**DENY** *Defendant's Motion for Order to Show Cause Why T-Netix, Inc., Securus Technologies,*

*Inc., Richard A. Smith, Dennis J. Reinhold, and Gruber Hurst Johansen Hail Shank, LLP Should*

*Not Be Held in Contempt of Court for Violation of the Court's March 3, 2006 Protective Order*

(Doc. 202) and **GRANT** Gruber Hurst's *Motion Seeking Leave to Purge McAlexander Rebuttal*

*Report* (Doc. 263).

**SO RECOMMENDED** on March 28, 2013.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE