# EXHIBIT 1

*TO BE FILED UNDER SEAL*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **T-NETIX, INC.** | ) |
| | ) |
| *Plaintiff/Counter-Defendant* | ) |
| | ) |
| v. | ) |
| | ) |
| **VALUE-ADDED COMMUNICATIONS,** | ) |
| **INC.** | )    **Case No. 3-05-654-D** |
| | ) |
| *Defendant/Counter-Plaintiff* | ) |
| v. | ) |
| | ) |
| **SECURUS TECHNOLOGIES, INC.** | ) |
| | ) |
| *Counter-Defendant* | ) |
| _____ | ) |

## VALUE-ADDED COMMUNICATIONS, INC'S OBJECTIONS TO THE UNITED STATES MAGISTRATE'S MARCH 28, 2013 FINDINGS, CONCLUSIONS AND RECOMMENDATIONS

Defendant/Counter-Plaintiff Value-Added Communications, Inc. ("VAC"), pursuant to

Fed. R. Civ. P. 72(b), Northern District of Texas Local Rules 72.2 and 7.2, and 28 U.S.C.

§636(b)(1), hereby respectfully objects to the Findings, Conclusions, and Recommendations

issued by The Honorable Renee Harris Toliver, United States Magistrate Judge, on March 28,

2013("Findings") (ECF #309).  As set forth more specifically in the accompanying Memorandum

of Law in Support of the Objections, VAC objects on grounds that: Judge Toliver imposed an

incorrect burden on VAC to prove contempt by clear and convincing evidence at the preliminary

show cause stage; Judge Toliver found that VAC was judicially estopped from pursuing a

1

contempt order against Respondent Gruber Hurst; Judge Toliver found that Gruber Hurst should

not be held in contempt for violating the March 3, 2006 Protective Order, or for violating a

directive from Judge Sanderson under the Court's inherent power; Judge Toliver failed to

consider relevant evidence of Gruber Hurst's lack of good faith; Judge Toliver found that the

Securus Party Respondents should not be held in contempt; and Judge Toliver found that VAC's

Motion to Purge should be granted.  In further support of VAC's Objections, the Court is

respectfully referred to the accompanying Memorandum of Law.

Respectfully submitted,

/s/ Dale A. Cooter
Dale A. Cooter (Admitted pro hac vice)
Donna S. Mangold  (Admitted pro hac vice)
COOTER, MANGOLD, DECKELBAUM
& KARAS, LLP
5301 Wisconsin Avenue, NW,  Suite 500
Washington, DC 20015
Telephone:  (202) 537-0700
Facsimile:  (202) 364-3664
Email:  efiling@cootermangold.com

/s/ Steven N. Williams
Steven N. Williams (Bar No. 21577625)
Kenneth P. Kula (Bar No. 24004749)
MCDOLE & WILLIAMS, PC
1700 Pacific Avenue, Suite 1280
Dallas, Texas 75201
Telephone: (214) 979-1122
Facsimile: (214) 979-1123
Email:  swilliams@mcdolewilliams.com

*Attorneys for Defendant/Counter-plaintiff*
*Value Added Communications, Inc.*

## CERTIFICATE OF SERVICE

On this 11th day of April 2013, I electronically submitted the foregoing document with the Clerk of the Court for the Northern District of Texas, Dallas Division, using the case filing system of the Court.

I hereby certify that I have served all counsel of record electronically or by another manner authorized by F.R.Civ.P. 5(b)(2).


/s/ Dale A. Cooter
Dale A. Cooter

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| T-NETIX, INC. | ) | |
| | ) | |
| *Plaintiff/Counter-Defendant* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VALUE-ADDED COMMUNICATIONS, | ) | |
| INC. | ) | **Case No. 3-05-654-D** |
| | ) | |
| *Defendant/Counter-Plaintiff* | ) | *TO BE FILED UNDER SEAL* |
| v. | ) | |
| | ) | |
| SECURUS TECHNOLOGIES, INC. | ) | |
| | ) | |
| *Counter-Defendant* | ) | |
| | ) | |

**VALUE-ADDED COMMUNICATIONS, INC'S MEMORANDUM OF LAW IN
SUPPORT OF ITS OBJECTIONS TO THE UNITED STATES MAGISTRATE'S
MARCH 28, 2013 FINDINGS, CONCLUSIONS AND RECOMMENDATIONS**

Dale A. Cooter
Donna S. Mangold
COOTER, MANGOLD, DECKELBAUM
& KARAS, LLP
5301 Wisconsin Avenue, NW, Suite 500
Washington, DC 20015
(202) 537-0700 (tel.)
(202) 364-3664 (fax)
efiling@cootermangold.com

Steven N. Williams (Bar No. 21577625)
Kenneth P. Kula (Bar No. 24004749)
MCDOLE & WILLIAMS, PC
1700 Pacific Avenue, Suite 1280
Dallas, Texas 75201
Telephone: (214) 979-1122
Facsimile: (214) 979-1123
swilliams@mcdolewilliams.com
*Attorneys for Defendant/Counter-plaintiff*
*Value Added Communications, Inc.*

## TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.     The Clear and Convincing Burden Imposed in the Findings
              is Inconsistent with the Procedure Announced at the
              February 25, 2013 Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.     Judge Toliver Erred in Concluding that VAC Should be Judicially
              Estopped from Seeking to Have Gruber Hurst Held in Contempt . . . . . . . . . . . . 4

      C.     Judge Toliver Erred in Concluding that Gruber Hurst Should
              not be Held in Contempt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      D.     Judge Toliver Erred in Failing to Consider Other Evidence of
              Gruber Hurst's Lack of Good Faith . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      E.     The Findings Related to the Court's Inherent Powers . . . . . . . . . . . . . . . . . . . 17

      F.     Judge Toliver Erred in Requiring VAC to Demonstrate "Clear and
              Convincing Evidence" of a Violation by the Securus Parties . . . . . . . . . . . . . . 21

            1.     *It was error to apply a clear and convincing standard* . . . . . . . . . . . . . 21

            2.     *It was error to find that the Securus Parties were not*
                 *bound by the actions of Gruber Hurst* . . . . . . . . . . . . . . . . . . . . . . . . . 23

      G.     The Motion to Purge Should not be Granted at this Time . . . . . . . . . . . . . . . . . 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## TABLE OF AUTHORITIES

### *FEDERAL CASES*

*Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.,*
  154 F.3d 1345 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Alemite Mfg. Corp. v. Staff*, 42 F.2d 832 (2d Cir. 1930) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Am. Airlines, Inc. v. Allied Pilots Ass'n*, 53 F. Supp. 2d 909  (N.D. Tex. 1999)
  *aff'd*, 228 F.3d 574 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 22

*Arbuckle Broadcasters, Inc. v. Rockwell Int'l Corp.,*
  513 F. Supp. 412 (N.D. Tex. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Bell v. Lockheed Martin Corp.*, Civil No. 08–6292 (RBK/AMD),
  2011 WL 7825362 (D.N.J. Oct. 21, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Central States v. Transcon Lines,* No. 90 C 1853,
  1993 U.S. Dist. LEXIS 12427 (N.D.Ill. Sept. 7, 1993) . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Commodity Futures Trading Comm'n v. Velazquez,* 04 C 5853,
  2007 WL 1673218 (N.D. Ill. June 6, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Estel v. Bigelow Mgmt., Inc.*, 323 B.R. 918 (E.D. Tex. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*In re Coastal Plains, Inc.*, 179 F.3d 197 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Oparaji*, 698 F.3d 231 (5th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Jim Walter Res., Inc. v. Int'l Union, United Mine Workers of Am.,*
  609 F.2d 165 (5th Cir.1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Johnson Serv. Group, Inc. v. France*, 3:10-CV-1988-D,
  2011 WL 2273529 (N.D. Tex. June 9, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Mendoza v. Regis Corp.*,  SA-01-CA-0937- FB,
  2005 WL 1950118 (W.D. Texas Aug. 11, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*NLRB v. Trailways, Inc.,* 729 F.2d 1013 (5th Cir.1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Quinter v. Volkswagen of Am.*, 676 F.2d 969 (3d Cir.1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ii

*S.E.C. v. Amerifirst Funding, Inc.*, 3:07-CV-1188-,
    2008 WL 282275 (N.D. Tex. Feb. 1, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13
    *aff'd in part, vacated in part on other grounds,*
    *remanded sub nom. Whitcraft v. Brown, 570 F.3d 268 (5th Cir. 2009)*

*United States v. Rizzo* , 539 F.2d 458 (5th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Villanueva-Diaz*, 634 F.3d 844 (5th Cir. 2011)
    *cert. denied*, 132 S. Ct. 110, 181 L. Ed. 2d 36 (U.S. 2011) . . . . . . . . . . . . . . . . . . . . . . . 23

*Waffenschmidt v. MacKay*, 763 F.2d 711 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Whitcraft v. Brown*, 570 F.3d 268 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 22

*Wyatt ex rel. Rawlins v. Sawyer,* 80 F. Supp. 2d 1275 (M.D. Ala. 1999) . . . . . . . . . . . . . . . . . . 4


## STATE CASES

*Am. Nat. Ins. Co. v. Savage*, 112 S.W.2d 240 (Tex. Civ. App. 1937) . . . . . . . . . . . . . . . . . . . . . 25

*Carburante Land Mgmt., LLC v. Hopkins*, 07-10-00398-CV,
    2012 WL 1970115 (Tex. App. June 1, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Duval County Ranch Co. v. Alamo Lumber Co.,* 663 S.W.2d 627 (Tex. App. 1983) . . . . . . . . . 23

*Glass v. Anderson*, 596 S.W.2d 507 (Tex.1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Gracey v. W.*, 422 S.W.2d 913 (Tex. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*In re Guardianship of Patlan*, 350 S.W.3d 189 (Tex. App. 2011) . . . . . . . . . . . . . . . . . . . . . . . 24

*Johnson v. Rancho Guadalupe, Inc.,* 789 S.W.2d 596 (Tex. App. 1990) . . . . . . . . . . . . . . . . . . 25

*Texas Emp. Ins. Ass'n v. Wermske*, 349 S.W.2d 90 (Tex. 1961) . . . . . . . . . . . . . . . . . . . . . . . . 24


## RULES AND STATUTES

28 U.S.C. §636(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 72(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Northern District of Texas Local Rules 72.2 and 7.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Pursuant to Fed. R. Civ. P. 72(b), Northern District of Texas Local Rules 72.2 and 7.2, and

28 U.S.C. §636(b)(1), Defendant/Counter-Plaintiff Value-Added Communications, Inc. ("VAC"),

respectfully submits the following Objections to the Magistrate Judge's March 28, 2013 Findings,

Conclusions, and Recommendations ("Findings") (ECF #309)(VAC-Appx. 001):

## INTRODUCTION[1]

This case involves the violation of a Protective Order entered by this Court on March 3, 2006

by Respondents T-Netix, Inc. ("T-Netix"), Securus Technologies, Inc. ("Securus"),[2] Richard A.

Smith ("Smith"), Dennis J. Reinhold ("Reinhold"), and Gruber Hurst Johansen Hail Shank LLP

("Gruber Hurst").  In late 2007, VAC filed an earlier contempt application for violation of the same

order by T-Netix/Securus and their counsel Bell Nunnally and Martin, LLP, and Aubrey "Nick"

Pittman (ECF 155).  Pursuant to the Court's Order of Reference, Judge Sanderson conducted

proceedings on April 16, 2008 (VAC Hrg. Exh. 2 (VAC-Appx.424)), and issued his Report and

Recommendation on April 21, 2008 ("Report") (ECF No. 184) (VAC-Appx. 499), recommending

that the respondents be found in contempt for "knowingly and deliberately" violating the terms of

the Protective Order. This action was dismissed on August 6, 2008. *See* ECF 198 (Agreed Motion

to Dismiss), and ECF 199 (Order).  At the time of the dismissal, this Court had not entered an order

regarding the Report.[3]

---

[1]  Except as specifically set forth in the Objections, *infra,* VAC does not object to the Magistrate Judge's description of the Background of the case at pages 2 through 6 of the Findings.

[2]  Respondents T-Netix and Securus are hereinafter sometimes collectively referred to as "T-Netix/Securus," and along with Respondents Smith and Reinhold are collectively referred to as the "Securus Parties."

[3]  In conjunction with the dismissal of the case, numerous filings, including the Motion to Enforce (ECF # 155), the Report (ECF # 184), and related filings were "withdrawn and permanently

1

Subsequent to the dismissal, T-Netix and Securus filed patent infringement actions against other defendants, including *T-Netix, Inc. v. Combined Public Communications, Inc.*, 3:09-cv-00743-CRS-DW, in the United States District Court for the Western District of Kentucky (Bowling Green Division)("the CPC Action"), and *T-Netix, Inc. v. Pinnacle Public Services LLC*, 2:09-cv-00333-JRG, in the United States District Court for the Eastern District of Texas (Marshall Division)("PPS Action"). Gruber Hurst is counsel of record for T-Netix/Securus in both of these cases; VAC is not a party in either case.

After it learned that Gruber Hurst, as counsel for T-Netix/Securus had improperly retained the McAlexander Report and disseminated it in the CPC and Pinnacle Actions, VAC moved to reopen this case, seeking to hold the Securus Parties and Gruber Hurst in contempt. VAC learned of the improper dissemination by virtue of the sheer coincidence that Stephanie Clouston, original counsel for VAC in this action, became successor counsel for Combined Public Communications, Inc. ("CPC") in the CPC Action. In 2011, while reviewing documents turned over by prior counsel for CPC, Ms. Clouston discovered that in August 2010, two years following the contempt proceeding in front of Judge Sanderson, Gruber Hurst had improperly disseminated the McAlexander Report in the CPC Action.[4] Although Gruber Hurst attempted to claw-back the McAlexander Report from prior counsel for CPC and counsel for Pinnacle, at least as to CPC, that effort was unsuccessful, because the Report remained in the documents turned over when Jones Day became successor counsel for CPC. VAC Hrg. Exh. 13 (VAC Appx.538); 2/25 Hrg. Tr. 55:9 (VAC Appx. 086).

Pursuant to the Order of Reference by this Court, United States Magistrate Judge Renee

---

sealed." *See* Amended Order dated August 8, 2008 (ECF # 200) (Sealed Order).

[4] The report was also improperly produced by Gruber Hurst in the Pinnacle Action.

2

Harris Toliver held a hearing on February 25, 2013, to determine whether there were facts that may

constitute contempt and to certify those facts to the District Court. 2/25 Hrg. Tr. at 5:1-14 (VAC-

Appx. 036). Following the hearing and post-hearing briefing on limited issues, Judge Toliver issued

Findings, Conclusions, and Recommendation ("Findings") (VAC-Appx. 001), concluding that the

Application for Order to Show Cause should be denied. Judge Toliver's conclusion was rooted in

erroneous findings on several fundamental issues, including: applying a clear and convincing

standard at this threshold stage; finding that VAC is judicially estopped; finding that Gruber Hurst's

conduct was inadvertent; and finding that T-Netix/Securus is not bound by the conduct of its attorney

and agent, Gruber Hurst. VAC submits that the Findings are in error, and should be rejected.[5]

## OBJECTIONS

A.   **The Clear and Convincing Burden Imposed in the Findings is Inconsistent with the Procedure Announced at the February 25, 2013 Hearing**

As Judge Toliver framed the issue at the beginning of the evidentiary hearing held on

February 25th, the focus that day was to determine whether there were facts that "may constitute

contempt" and to certify those facts to the District Court. 2/25 Hrg. Tr. at 5:1-14 (VAC-Appx. 036).

Judge Toliver further explained:

> My show cause isn't the show cause you [VAC] requested, and so that's how I started out
> explaining. ... My show cause is for you to show cause why a show cause ... order should be
> issued. And I know it's convoluted, which is why I started with the explanation. Because
> ultimately it will be Judge Fitzwater who determines whether or not to issue a show cause
> based on my report and also if I certify facts to him that I believe constitute contempt.

2/25 Hrg. Tr. at 8:8-18 (VAC-Appx.039). Notwithstanding the limited nature of the hearing, the

Findings imposed a "clear and convincing" burden on VAC (Findings at 11, 25 (VAC-Appx.11,

---

[5]   As set forth below, VAC also objects to the recommendation that the Court grant (at this
time) the Gruber Hurst Motion to Purge.

3

25)), thus erroneously requiring VAC to satisfy the ultimate burden to prove contempt at a preliminary stage – "a show cause to show cause" hearing.  The Respondents rested their case very late in the day on February 25th, (2/25 Hrg. Tr. at 320:2 (VAC Appx. 351)),[6] and because of the limited nature of the hearing, and the lateness of the hour, VAC did not seek to put on a rebuttal case. VAC respectfully submits that it was error to require VAC to prove contempt by clear and convincing evidence at this preliminary stage. *See, e.g., Wyatt ex rel. Rawlins v. Sawyer,* 80 F. Supp. 2d 1275, 1277-78 (M.D. Ala. 1999)(court rejected defendants' contention that show cause order not warranted because plaintiffs did not come forward with clear and convincing evidence of civil contempt, noting that the "defendants confuse what the plaintiffs must produce at trial (clear and convincing evidence) with what they must show for issuance of a show-cause order (adequate allegations)").  Similarly, in *Commodity Futures Trading Comm'n v. Velazquez,* 04 C 5853, 2007 WL 1673218 (N.D. Ill. June 6, 2007), the district court recognized that at the preliminary stage, the "[movant's] burden-simply to establish the propriety of having a [show cause] hearing-is therefore logically less demanding," because the "'factual determination that sets the [contempt] proceedings in motion is perhaps best described as a preliminary assessment that the facts presented implicate defendants in violation of the court's order.'"  2007 WL 1673218 (quoting *Central States v. Transcon Lines,* No. 90 C 1853, 1993 U.S. Dist. LEXIS 12427, at *7 (N.D.Ill. Sept. 7, 1993)).  Once Judge Toliver directed that the February 25th Hearing was only to "show cause why a show cause order should be issued," it was error to hold VAC to a clear and convincing standard.

**B.      Judge Toliver Erred in Concluding that VAC Should be Judicially Estopped from Seeking to Have Gruber Hurst Held in Contempt**

---

[6] Although the transcript does not reflect the time, undersigned counsel represents that the hearing concluded well after 5 p.m.

Judge Toliver concluded that VAC should be judicially estopped from arguing that Gruber Hurst can be subject to contempt under the Protective Order, based on VAC's earlier arguments to Judge Sanderson. Judge Toliver concluded that "the applicability of the Agreed Protective Order to Gruber Hurst in this proceeding is dependent on Gruber Hurst being T-Netix/Securus's counsel of record in this case ... ." Findings at 14 (VAC-Appx.014). VAC respectfully submits that Judge Toliver's conclusion is based on a fundamental misunderstanding of VAC's argument. VAC has *always* contended, in 2008 and now, that Gruber Hurst *is not, and never has been*, counsel of record for T-Netix/Securus in this action, and for that reason was not ever entitled to possess or retain "Counsel Eyes Only" information. VAC's position is not "dependent on Gruber Hurst being counsel of record in this case" for the simple reason that if it were counsel of record, it would have been entitled to possess such Counsel Eyes Only information (at least until the litigation was concluded). Rather, VAC's position is that Gruber Hurst, as officers of this Court, and as lawyers working for, on behalf of, and for the benefit of T-Netix/Securus in other litigation, and who had knowledge of the Protective Order, should be held in contempt for possessing, disseminating, and retaining the McAlexander Report, which it had no right to possess. There is nothing inconsistent in the positions VAC took before Judge Sanderson or that it takes now in this proceeding. The respondents in the 2008 proceeding were T-Netix/Securus and its counsel of record in this action, Bell Nunnally. Gruber Hurst was not named as a respondent. Although rooted in Gruber Hurst's 2007 improper acquisition of the McAlexander Report, the current proceeding focuses on Gruber Hurst's conduct after the April 2008 hearing, and its failure to comply with the directive of Judge Sanderson to either return or destroy the confidential materials, or enter an appearance in this action. Gruber Hurst did not enter an appearance, failed to effectively purge the McAlexander Report from its system, and

5

further disseminated the report in 2010, and then maintained possession of the report thereafter.

Gruber Hurst's argument that VAC should be judicially estopped was first raised at the February 25th Hearing. 2/25 Hrg. Tr. at 7:7-11 (VAC-Appx. 038). In his cross-examination of Ms. Clouston, counsel for Gruber Hurst (Mr. Mateja) read from the April 16, 2008 Transcript before Judge Sanderson, in which Ms. Clouston argued that T-Netix/Securus and its counsel of record violated the Protective Order when they provided documents to Gruber Hurst "who we think from the record *were not counsel in this case when they were provided the information.*" 2/25 Hrg. Tr. 78:4-13 (VAC-Appx. 109)(quoting Ms. Clouston at the 4/16/08 Hrg. Tr. at 28) (emphasis added). Gruber Hurst's judicial estoppel argument is based on a false premise. VAC did not argue, and Judge Sanderson did not find, that Gruber Hurst was not "subject to" the Protective Order. Rather, as clearly set forth in the April 16, 2008 Hearing excerpt read by Mr. Mateja at the February 25th Hearing,[7] VAC argued to Judge Sanderson that T-Netix/Securus and Bell Nunnally "violated that provision of the protective order by first providing the documents to the Gruber firm who we think from the record *were not counsel in this case when they were provided the information.*" 4/16/08 Hrg. Tr. 28 (emphasis added). VAC's argument that Gruber Hurst improperly obtained and disseminated "Counsel Eyes Only" materials in 2008 – because it was not counsel in this litigation – does not mean that VAC is estopped from now seeking a contempt citation against Gruber Hurst based on its continued possession and further dissemination of the McAlexander Report in 2010.[8]

---

[7] Although Mr. Mateja's follow-up question to Ms. Clouston about her 2008 argument was framed as "Gruber Hurst is not a party to the protective order," it is clear from the arguments at the April 2008 hearing, Judge Sanderson's comments, and his ultimate Report, that the complaint about the conduct of Gruber Hurst in 2008 was that they should not have had the Counsel Eyes Only information because they were not counsel of record.

[8] Gruber Hurst admits that it possessed and improperly disclosed the document. "Your Honor ... we disclosed this document. We fall on our sword, *mea culpa*, we're apologetic for it."

Gruber Hurst was at all times the attorney for T-Netix/Securus, and prior to the time it disseminated the McAlexander Report in the Combined and Pinnacle Actions in 2010, Gruber Hurst attorneys (at the very least, partner G. Michael Gruber and associate Michael Lang) had actual knowledge of the Protective Order.[9]

There is nothing inconsistent about VAC's positions that would subject VAC to judicial estoppel. The focus of the April 2008 hearing was whether Bell Nunnally should have given Gruber Hurst Counsel Eyes Only materials (which Gruber Hurst then disseminated in litigation in the Eastern District to which VAC was not a party). Gruber Hurst contended it was "counsel in this action" and VAC contended, based on evidence it submitted to Judge Sanderson (including Gruber Hurst's engagement letter with T-Netix/Securus), that Gruber Hurst's position that it was counsel "in this case" was not true, and therefore it could not have access to the Counsel Eyes Only materials. *See* 4/16/08 Hrg. Tr. at 20:6- 21:12 (Mr. Tautfest argument on behalf of Gruber Hurst)(VAC-Appx. 443-44). ; 4/16/08 Hrg. Tr. at 28:18 - 29:2 (argument of Ms. Clouston)(VAC-Appx. 451-52); 4/16/08 Hrg. Tr. at 22:16 - 27:5, 56:10 - 57:10 (argument regarding Gruber Hurst correspondence and engagement letter demonstrating the firm was not counsel of record)(VAC-Appx. 445-46, 479-80). Near the end of the April 2008 hearing, Judge Sanderson told Gruber Hurst that if they entered an appearance in the case, they could get access to the confidential documents. 4/16/08 Hrg. Tr. at 70:7-16 (VAC-Appx. 493); *accord* Report at 6 (VAC-Appx. 504). Nowhere in the April 2008 hearing, or in the Report, does Judge Sanderson find that Gruber Hurst was not

---

2/25 Hrg. Tr. 118:12-15 (statement of Mr. Mateja)(VAC-Appx. 149).

[9] G. Michael Gruber and Michael J. Lang are identified as additional counsel for Gruber Hurst on an Emergency Motion to Quash and the Objection filed in conjunction with the April 2008 Proceedings. (ECF #179 and ECF #179-7).

"subject to" the Protective Order.  Rather, Judge Sanderson found that the firm was not counsel of record, and that arguments that it was counsel of record were "incredible and wholly unworthy of belief." Report at 7-8 (VAC-Appx. 505-06).  Gruber Hurst never entered its appearance in this case, and instead confirmed to Bell Nunnally that all documents had been returned, "deleted" from the Gruber Hurst database, or "destroyed."  This confirmation was transmitted to Ms. Clouston by Bell Nunnally on April 18, 2008, and Mr. Tautfest was copied on the transmittal letter. VAC Hrg. Exh. 8 (VAC-Appx. 522).

There are three criteria when evaluating a defense of judicial estoppel, including whether: "(1) the party against whom judicial estoppel is sought has asserted a legal position that is "plainly inconsistent" with a position asserted in a prior case; (2) the court in the prior case accepted that party's original position, thus creating the perception that one or both courts were misled; and, (3) the party to be estopped has not acted inadvertently." *In re Oparaji*, 698 F.3d 231, 235-36 (5th Cir. 2012).  The doctrine protects the integrity of the judicial process, rather than the litigants, "by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999).  VAC simply has not taken "plainly inconsistent" positions.  Rather, its position has been consistent:  Gruber Hurst was not counsel of record in this action, and therefore should never have had Counsel Eyes Only materials, including the McAlexander Report.  The only position that Judge Sanderson accepted was that Gruber Hurst was not counsel of record in this action, and either had to enter its appearance, or return and destroy the documents, an implicit recognition that Gruber Hurst "is subject to" the Protective Order. Furthermore, there cannot be any serious suggestion that VAC is "playing fast and loose with the courts" to suit its own self-interest, or that either Judge Sanderson or this Court have been misled.

8

Quite simply, there is absolutely no basis for VAC to be judicially estopped from seeking a contempt sanction against Gruber Hurst, and Judge Toliver's finding to the contrary is error.[10]

In the context of the judicial estoppel finding, Judge Toliver also concluded that "Gruber Hurst is not bound by the terms of the Agreed Protective Order as a signatory... ." Findings at 14 (VAC-Appx.014). This finding is in error as a matter of fact. Although Gruber Hurst has never been counsel of record in this action (except to now represent itself in the current contempt proceeding), in late October 2008, after Gruber Hurst had already improperly obtained and disseminated the Counsel Eyes Only information in the 2006 GTL Action, Eric Tautfest actually signed Exhibit A to the Protective Order.[11] Thus, although Gruber Hurst was never counsel of record which would have entitled it to obtain Counsel Eyes Only information, Gruber Hurst was in fact a signatory to the Protective Order, a fact which Judge Toliver did not consider.

### C.      Judge Toliver Erred in Concluding that Gruber Hurst Should not be Held in Contempt

Despite finding that VAC was judicially estopped, and that Gruber Hurst was not a signatory to the Protective Order (both erroneous findings), Judge Toliver nevertheless considered "whether Gruber Hurst can be held in contempt for conspiring with one of the other Respondents to violate

---

[10]    Indeed, it is Gruber Hurst (and the Securus Parties) that should be bound by representations made to Judge Sanderson. As a result of the representations of Gruber Hurst and Bell Nunnally at the April 2008 Hearing, Judge Sanderson declined to award injunctive relief, finding that " copies of the McAlexander report were retrieved by the Gruber firm and they and all other documents were returned to T-Netix's attorneys in this case or otherwise destroyed." Report at 9 (VAC-Appx.507). As Mr. Mateja argued to Judge Toliver: "[w]ell, the irony is, is that, quite frankly, Your Honor, we argued then and we -- and we contend now that we were subject to the protective order." 2/25 Hrg. Tr. at 7:7-11 (VAC-Appx. 038). That does not mean however, that they are, or ever were, entitled to Counsel Eyes Only materials.

[11]    As Ms. Clouston noted at the April 2008 Hearing, she only saw the executed Exhibit A sometime shortly before that hearing. 4/16/08 Hrg. Tr. 27:13-18 (VAC-Appx. 450).

the Agreed Protective Order." Findings at 14 (VAC Appx.014).   Judge Toliver concluded that the production of the McAlexander Report in the CPC and Pinnacle Actions was "solely the error" of Gruber Hurst.  Findings at 17-18 (VAC-Appx. 017-18).   Accordingly, Judge Toliver found that because Gruber Hurst and the Securus Parties did not "engage in coordinated activity *to violate the Agreed Protective Order,*" Gruber Hurst cannot be held to have "violated the Agreed Protective Order." Findings at 17 -18 (VAC-Appx. 017-18).  Thus, Gruber Hurst, despite being officers of this Court, and in possession of a Counsel Eyes Only document it should not have had under the terms of the Protective Order, was insulated from a finding of contempt.

It is undisputed that Gruber Hurst was acting on behalf of T-Netix/Securus in 2007 when it first obtained the McAlexander Report, and again, when it disseminated the McAlexander Report in 2010.  Indeed, Mr. Tautfest argued to Judge Sanderson, and testified at the February 25th Hearing, about the "coordinated effort" between Bell Nunnally and Gruber Hurst.  *See, e.g,* 4/16/08 Hrg. Tr. at 20:19-21 (VAC-Appx.443) ("They gave them to us, our firm, because we also are assisting and are counsel in the Northern District case because we have overlapping patent issues"); 2/25 Hrg. Tr. 183:2 - 185:25 (VAC-Appx. 214-16)(describing "coordinated" activity on behalf of their shared client, T-Netix/Securus). When Gruber Hurst represented T-Netix/Securus in the Pinnacle and CPC Actions, as well as earlier, in the 2006 GTL Action, and it obtained, retained, and disseminated Counsel Eyes Only materials, it was doing so as the agent, and for the benefit of T-Netix/Securus. Its sole purpose was to promote the cause of its client, T-Netix/Securus, a party to the Protective Order.   Rather than exculpating Gruber Hurst, the firm's "coordination" with Bell Nunnally on behalf of T-Netix/Securus, establishes the propriety of a contempt finding. Judge Toliver found that this concerted action was insufficient, because VAC did not establish coordinated effort *to violate*

10

*the Protective Order*.

VAC submits that exonerating Gruber Hurst based on the aiding and abetting and good faith analysis set forth in *Waffenschmidt v. MacKay*, 763 F.2d 711 (5th Cir. 1985), was too narrow a focus given the facts of this case. In *Waffenschmidt*, the Fifth Circuit considered whether a non-party bank could be held in contempt for applying enjoined proceeds to the defendant's debts. 763 F.2d at 726. VAC submits that Gruber Hurst is simply not in the same position of the non-party bank in *Waffenschmidt*. VAC submits that because Gruber Hurst is indisputably "legally identified" with the Securus Parties, a contempt finding is appropriate. As implicitly recognized by the Federal Circuit in *Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.*, 154 F.3d 1345 (Fed. Cir. 1998),[12] if a non- party has a "relationship" with the party subject to an order, the non-party can be found in contempt without a finding that he actively participated with the party to violate the order. 154 F.3d at 1353 ("because Harshmann had no relationship [with the enjoined party], his contempt finding can be sustained only if he acted 'in active concert and participation' [with a non-party who was the former president of the enjoined party] to violate the injunction")(applying Fifth Circuit law and citing *Waffenschmidt*, 763 F.2d at 723-26) . VAC submits that whether there is a legal relationship is the more appropriate focus here, rather than a narrow inquiry into whether Gruber Hurst actively participated with T-Netix/Securus to violate the Protective Order. If there is a legal relationship, Gruber Hurst can be found in contempt without necessarily finding that it was actively engaged in aiding and abetting a violation of the Protective Order by T-Netix/Securus. *See Additive Controls*, 154 F.3d at 1351(citing *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 833 (2d Cir. 1930)(for a finding of contempt, "the respondent must either abet the defendant, *or must be legally*

---

[12] The Findings cite *Additive Controls* as a Fifth Circuit case (at page 15), but it is actually a Federal Circuit case, on appeal from the Southern District of Texas.

*identified with him*")(emphasis added)). In *Quinter v. Volkswagen of Am.*, 676 F.2d 969, 972 (3d Cir.1982), the Third Circuit found that an expert witness who violated a protective order was "legally identified" with both the plaintiff and the plaintiff's attorney, justifying a finding of contempt against the expert who divulged confidential materials to attorneys in cases where the expert was retained on behalf of other plaintiffs. There was no finding that the expert had acted "in active concert" with the plaintiffs to violate the order. Here however, Gruber Hurst's acquisition, retention, and further dissemination of the McAlexander Report undisputably arose from its coordinated activity with counsel in this action on behalf of, and for the benefit of their joint client, T-Netix/Securus. Thus, a finding of contempt is appropriate. This is consistent with Fifth Circuit precedent that the contemptuous actions need not be willful so long as the contemnor actually failed to comply with the court's order. *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir.2000); *NLRB v. Trailways, Inc.*, 729 F.2d 1013, 1017 (5th Cir.1984); *Jim Walter Res., Inc. v. Int'l Union, United Mine Workers of Am.*, 609 F.2d 165, 168 (5th Cir.1980), *cited in Johnson Serv. Group, Inc. v. France*, 3:10-CV-1988-D, 2011 WL 2273529 (N.D. Tex. June 9, 2011).

VAC submits that if legal identification is not enough, there has been sufficient evidence presented to conclude that Gruber Hurst has not acted in good faith with regard to the McAlexander Report and the Protective Order, over and above its failure to scrupulously comply with Judge Sanderson's directive.[13] In *S.E.C. v. Amerifirst Funding, Inc.*, CIV.A. 3:07-CV-1188-, 2008 WL 282275 (N.D. Tex. Feb. 1, 2008) *aff'd in part, vacated in part on other grounds, remanded sub nom. Whitcraft v. Brown*, 570 F.3d 268 (5th Cir. 2009), this Court considered the non-party contempt liability of an attorney who assisted a party to violate a freeze order, by evaluating the attorney's

---

[13] Gruber Hurst's ineffective purge in 2008 is discussed below.

good faith. The focus in *Amerifirst Funding* was whether the non-party attorney had a "good faith belief" that the sale of a painting did not violate the Court's freeze order, concluding that the attorney could be held in contempt, a conclusion that was affirmed by the Fifth Circuit. *Whitcraft v. Brown*, 570 F.3d at 272. Here, whatever Mr. Magee's state of mind or sloppiness when Gruber Hurst disseminated the McAlexander Report in 2010 in the CPC and Pinnacle Actions, there can be no doubt that he knew he was in violation of the Protective Order after his "snap-back" efforts in those cases. VAC submits that his knowledge – and failure to act – is evidence of bad faith. For the first time, at the February 25th Hearing, Mr. Magee testified that Gruber Hurst's continued retention of the document was justified on "spoliation" grounds. *See* 2/25 Hrg. Tr. 310:12-23 (Mr. Magee testified: "I do not want to go to the judge in the Combined case or the Pinnacle case and say I had this document but I destroyed it"). When asked why he simply did not advise the CPC and Pinnacle Courts that Gruber Hurst had the McAlexander Report and needed to send it back or delete it, Mr. Magee responded: "I didn't think I needed to tell the court at that point. This was an ongoing issue which I expected to be resolved." 2/25 Hrg. Tr. 310:24 - 311:4. Yet, Mr. Magee and Gruber Hurst took no steps to resolve it, and clearly, it was never resolved.[14] Thus, with knowledge that it had a document it was not entitled to possess, Gruber Hurst failed to take *any* steps in 2010, in 2011, or in 2012,[15] to rectify its improper continued possession, either by alerting VAC or any court,

---

[14] Similarly, Mr. Reinhold (T-Netix/Securus general counsel) testified: "I didn't have a duty to do anything about it. I never had the document in my possession, nor was it ever in Securus' possession. Our outside counsel did a [clawback] and told me about it, and so I had no further duty." 2/25 Hrg. Tr. 114:2-5. Apparently, no one had a duty to make sure that scrupulous compliance with the Protective Order was a priority.

[15] Only after this Court reopened the case did Gruber Hurst offer to purge the McAlexander Report from its database. *See generally* Motion to Purge (ECF #263 at p. 3)(describing communications in November 2012).

*including this Court.* Respectfully, this is a continuing violation of the Protective Order – or at least evidence of lack of good faith – that Judge Toliver should have, but apparently did not, take into consideration. Rather, as described below, the Findings solely focus on the circumstances following the 2008 contempt proceedings, and the snap-back effort following the 2010 dissemination in the CPC and Pinnacle Actions, concluding that there were "substantial" efforts to comply in 2008, and that the production in 2010 was inadvertent and a mistake. The Findings completely ignore the impropriety of the continued retention of the McAlexander Report following its production in 2010.

### D.     Judge Toliver Erred in Failing to Consider Other Evidence of Gruber Hurst's Lack of Good Faith

At pages 6-7 of the Findings, Judge Toliver summarizes Ms. Clouston's testimony (as a witness for VAC), and at pages 8-11, summarizes the testimony of Anthony Magee, the Gruber Hurst partner that produced the McAlexander Report in the CPC and Pinnacle Actions. VAC submits that in August 2010, Mr. Magee affirmatively misled Ms. Clouston about the fact that Gruber Hurst had retained, and weeks earlier had disseminated the McAlexander Report. Even if Mr. Magee did not affirmatively mislead Ms. Clouston, however, VAC submits that Gruber Hurst's failure to alert Ms. Clouston, or VAC, or this Court, that the firm possessed and disseminated the McAlexander Report is relevant to Respondents' contention that they have substantially complied with the Protective Order, and that any failure to comply was inadvertent and in good faith. Despite Mr. Magee's testimony relating to his conversation with Ms. Clouston, exhibits from August 2010 refute his testimony about his lack of knowledge about the McAlexander Report. Although generally noting the conflict as it was expressed in the testimony, Judge Toliver apparently did not consider the conflicting testimony in light of the contemporaneous exhibits in her assessment of Gruber

14

Hurst's conduct.

Sometime shortly after Mr. Magee produced the McAlexander Report in the CPC and Pinnacle Actions, Christine Ryan (at the time, counsel for CPC) apparently alerted Mr. Magee that some "privileged" documents had been produced. VAC Hrg. Exh. 16/Magee Decl. ¶10 (VAC-Appx. 546); VAC Hrg. Exh. 9 (VAC-Appx. 525)(August 22-25, 2010 e-mail string between Mr. Magee and Ms. Ryan). In the course of investigating the production of the privileged documents, Mr. Magee discovered that the McAlexander Report had also been produced, and learned from Michael Lang, a Gruber Hurst associate that the McAlexander Report was subject to the Protective Order in this case and should not have been produced. 2/25 Hrg. Tr. 272:5 - 273:6 (VAC-Appx. 303-04). On August 27, 2010, Mr. Magee wrote to counsel for CPC to "snapback" certain documents, including the McAlexander Report.[16] *See* VAC Hrg. Exh. 11(Letter from A. Magee to J. Beres and C. Ryan, dated August 27, 2010)(VAC-Appx. 529). As noted by Judge Toliver (Findings at 8), but seemingly ignored in her analysis, Mr. Magee also stated that "[a]s indicated in previous discussions ... *we are in discussions with VAC* and will let you know its position [about producing the McAlexander Report] as soon as we can." VAC Hrg. Exh. 11(VAC-Appx. 529)(emphasis added).

Consistent with his promise that he was "in discussions with VAC" about producing the McAlexander Report, only a few days earlier, on August 24, 2010, Mr. Magee called Ms. Clouston. Ms. Clouston testified that although Magee did not mention the McAlexander Report by name, he was seeking "invalidity contentions that were a subject of the prior proceeding." 2/25 Hrg. Tr. 69:24 - 70:11 (VAC-Appx. 100-01). Ms. Clouston also testified that it appeared to her that the documents

---

[16] In his letter, Mr. Magee refers to "item 1 on the privilege log" as an item he sought to snapback because it violated a protective order, not because of privilege. The attached privilege identifies the McAlexander Report as item 1. VAC-Appx 529 (letter), 534 (log).

he was seeking to obtain and produce had been "central in [the] prior contempt proceeding." 2/25 Hrg. Tr. 36:5-9 (VAC-Appx.067). Ms. Clouston testified that Mr. Magee did not tell her that Gruber Hurst was in possession of the McAlexander Report, or that it *had already* been produced in the CPC and Pinnacle Actions. 2/25 Hrg. Tr. 35:5-12 (VAC-Appx. 066). Indeed, on the next day, Mr. Magee followed up on the call with an e-mail, asking Ms. Clouston for permission to produce VAC's invalidity contentions in this action, and assuring her that he has "***not seen these contentions because of the prohibitions contained in the protective order ... .***" VAC Hrg. Exh. 10 (August 25, 2010 e-mail from Magee to Clouston)(VAC-Appx. 527)(emphasis added). Thus, although committing to counsel for CPC that he was in discussions with VAC about producing the McAlexander Report, when he communicated with Ms. Clouston to get VAC's permission to produce what he referred to as "***the invalidity contentions,***" he assures her he has not seen them.

At the February 25th Hearing, Mr. Magee defended his failure to advise Ms. Clouston that Gruber Hurst possessed the McAlexander Report and had already produced it by testifying that he first learned about the Protective Order and the McAlexander Report "probably" on August 26, 2010. 2/25 Hrg. Tr. 301:12 - 302:7 (VAC Appx.332-33). He also testified that during his conversation with Ms. Clouston on the evening of August 24, 2010,[17] he did not know that the McAlexander Report had been produced, so he was not talking to Ms. Clouston about the McAlexander Report, and that his reference to "invalidity contentions" was not a reference to the report. *See* Findings at 9-10 (VAC-Appx. 009-10)(summarizing Mr. Magee's testimony). Mr. Magee's own written words, however, belie his current position that he did not know about the McAlexander Report or the Protective Order when he spoke to Ms. Clouston. He  testified that he "first learned" of the

---

[17] Ms. Clouston testified that she believed that she had one other telephone conversation around the same time about the same request. 2/25 Hrg. Tr. 34:11-13 (VAC-Appx.065).

Protective Order in his conversation with Mr. Lang about the McAlexander Report which "was probably" on August 26, 2010. 2/25 Hrg. Tr. 301:12 - 302:7 (VAC Appx.332-33). Yet, his *August 25th* e-mail to Ms. Clouston explicitly refers to the protective order: "I have not seen these contentions because of the prohibitions *contained in the protective order* ... ." VAC Hrg. Exh. 10 (VAC-Appx. 527). This is the very same protective order (the Protective Order in this case) he claims he did not know about until August 26th. In addition, two days after his e-mail to Ms. Clouston, (in his August 27th "snapback" letter to CPC counsel) he specifically describes the McAlexander Report as "relating to invalidity contentions," and states that he is "*in discussions with VAC* and will let you know its position [about producing the McAlexander Report] as soon as we can." VAC Hrg. Exh. 11(VAC-Appx. 529)(emphasis added). VAC respectfully submits that Mr. Magee's conduct in August 2010 in his communications with Ms. Clouston should have been considered by Judge Toliver in the context of evaluating Gruber Hurst's conduct. Moreover, *even if* Mr. Magee only learned of the McAlexander Report on August 26th (two days after his conversation with Ms. Clouston), Gruber Hurst has offered no explanation for its failure at any time after August 26, 2010 to contact Ms. Clouston, and advise her what had happened.

   **E. The Findings Related to the Court's Inherent Powers**

   Judge Toliver correctly concluded that the Court has inherent power to consider Gruber Hurst's violation of Judge Sanderson's April 2008 directive (and his Report) requiring Gruber Hurst to return or purge all confidential materials, including the McAlexander Report. Findings 20-21 (VAC-Appx. 020-21). Judge Toliver further found that Gruber Hurst did not fully comply, because it "inadvertently" retained a copy of the McAlexander Report in its firm database, but that it was "in substantial compliance with Judge Sanderson's directive and should not be subjected to sanctions

17

in that regard." Findings at 24 (VAC Appx.024). In reaching the "substantial compliance" conclusion, Judge Toliver exclusively focuses on the efforts following the April 2008 hearing, and ignores the dissemination in 2010, Magee's failure to alert Ms. Clouston, VAC, or any Court, and Gruber Hurst's continued retention of the McAlexander Report thereafter.

Similar to the earlier explanation to Judge Sanderson of a "technical violation," Gruber Hurst now contends, and Judge Toliver has found, that its retention and dissemination of the McAlexander Report was inadvertent, and it has substantially complied with both the Protective Order and Judge Sanderson's directive. Following Judge Sanderson's directive to return or destroy the documents, Gruber Hurst was – to put it kindly – sloppy. At the February 25th Hearing, the Gruber Hurst witnesses described their efforts following the April 2008 hearing. That testimony, from Mr. Tautfest, and Lisa Miller (a former Gruber Hurst paralegal) made it clear that not only was the Summation database not effectively purged because the offending file was transferred to a new server on April 28, 2008 (a week after Judge Sanderson issued his Report), but in addition, nothing was done to ensure that confidential documents, including the McAlexander Report, were purged from individual computers or other storage media. *See generally,* Gruber Hurst Exh. 25 (demonstrative exhibit describing copying of drive on April 28, 2008)(VAC Appx. 553); 2/25 Hrg. Tr. 232:16 - 237:6 (VAC Appx. 263-268)(cross-examination of Ms. Miller regarding the limited scope of her attempt to purge the confidential documents in 2008); 2/25 Hrg. Tr. 174:6 - 179:9 (VAC Appx. 205-10) (cross-examination of Mr. Cowen regarding the limitations of his examination three weeks before the 2/25 Hearing). Yet, Judge Toliver excuses this ineffective purge by concluding that Mr. Tautfest and Ms. Miller's efforts were "reasonable, considering that the individuals involved are in the legal field, not the information technology field." Findings at 24 (VAC-Appx. 024). It is

18

for that very reason that Gruber Hurst should have enlisted an information technology specialist (either from inside the firm, or the outside vendor that transferred the database a few weeks later) to make sure that the confidential documents, including the McAlexander Report, were effectively purged. Failing to recognize their own technical limitations should not excuse the violation. In finding the Gruber Hurst response "reasonable," Judge Toliver principally relied on *United States v. Rizzo* , 539 F.2d 458 (5th Cir. 1976). In *Rizzo*, the district court imposed a contempt sanction when it found that the defendant had not adequately complied with an IRS summons to produce certain records, finding that the government had proven that those records actually existed, but that Rizzo had failed to produce them. *Id.* at 462. The Fifth Circuit reversed, finding that Rizzo had rebutted any presumption that he was "able, but unwilling" to produce the records. *Id.* at 466. The basis for the reversal was Rizzo's *inability* to produce the cards, despite being diligent in trying to locate them. *Id.* The sustained efforts at compliance described in *Rizzo* simply do not aid Gruber Hurst here.[18] Mr. Tautfest testified that the attempted purge effort took place the same day of the hearing before Judge Sanderson. 2/25 Hrg. Tr. 214:12 - 216:12 (VAC-Appx.245-46). Despite what was done that day, as Mr. Cowen testified, the entirety of the Summation database from the 2006 GTL Action was copied to a new server a week after Judge Sanderson issued his Report. Moreover, Ms. Miller's testimony makes it clear that beyond her efforts with the Summation database and

---

[18] Contrary to Judge Toliver's conclusion (Findings at 22-24 (VAC-Appx.022-24)), VAC submits that *Mendoza v. Regis Corp.*, SA-01-CA-0937- FB, 2005 WL 1950118 (W.D. Texas Aug. 11, 2005), rather than *Rizzo,* is more instructive. In *Mendoza*, the Magistrate Judge found it significant that the record did not "present any evidence that Regis took any action beyond normal procedures to ensure the deletion of the listings in question. Regis has offered no evidence that it ever took the initiative to follow up with [media or telephone directory] personnel concerning the change requests or to review the directories to ensure that they were in compliance with the injunction." *Id.* Similarly, Gruber Hurst's singular efforts on the afternoon of April 16, 2008 do not establish "substantial compliance," as there was no follow-up, not in 2008, and not in 2010.

looking for hard copies, she did not attempt to purge the McAlexander Report from any other media where it may have resided, including desktops, personal laptops,[19] or cell phones (2/25 Hrg. Tr. 235:22 - 237:3 (VAC-Appx.266-68)) any of which could have contained the Report on its own or as an e-mail attachment. As Mr. Cowen acknowledged in response to the Court's inquiry, a copy could have been copied onto an individual's computer, even if is not being shown by the logs as being accessed from the server. 2/25 Hrg. Tr. 161:14 - 162:5 (VAC-Appx. 192-93). Judge Toliver's Finding at page 22 that Gruber Hurst "retained a copy of the McAlexander Report in its firm database" does not support the finding of substantial compliance,  because it is clear that the *attempted* purge was of the Summation database and hard copies only; there was no attempt to even check other storage media where the Report may have also resided.  To this day, there has been no other check. *See* 2/25 Hrg. Tr. 174:6-179:9 (VAC-Appx. 205-10) (cross-examination of Mr. Cowen regarding the limitations of what he examined three weeks before the February 25th hearing).  With all due respect to Ms. Miller's efforts, if Gruber Hurst had taken its purge responsibilities seriously, it would have confirmed the purge with its information technology vendor – the same vendor that apparently transferred the database two weeks later.  Moreover, Gruber Hurst would have made certain that the McAlexander Report did not reside on any back-up file, desktop, laptop, or other media.  At most, Gruber Hurst has described ineffective and non-compliant efforts – it failed to purge the document from its computer system in 2008, and its 2010 clawback was clearly ineffective, as the McAlexander Report remained in the discovery materials in the CPC Action  when the case was transferred to Jones Day.  *See* VAC Hrg. Exh. 13 (VAC-Appx.538) (S. Clouston letter to Bell Nunnally and Gruber Hurst, dated October 13, 2012)  (Ms. Clouston discovered a copy of the

---

[19] Ms. Miller did not recall if she checked for the report on any "firm laptop." 2/25 Hrg. Tr. 236:6-17 (VAC-Appx.267).

20

McAlexander Report included in the CPC discovery materials). *See Bell v. Lockheed Martin Corp.*, Civil No. 08–6292 (RBK/AMD), 2011 WL 7825362, *3, 8 (D.N.J. Oct. 21, 2011)("[n]either mistake nor subsequent compliance after discovery of the violation by opposing counsel" protected the plaintiff from a finding of contempt).

Moreover, once the documents were located on the Summation database in 2010, hundreds of thousands of pages, including the McAlexander Report, were transmitted by Mr. Magee to counsel for CPC and Pinnacle. The production was done as a wholesale transfer of documents, apparently without any review whatsoever, and without talking to his partner, Mr. Gruber, or to Mr. Lang, both of whom were counsel in both the CPC and Pinnacle Actions. Once Mr. Magee later learned from Mr. Lang that the McAlexander Report had been the subject of the prior contempt proceeding, he apparently took no steps to determine *why or how* the document continued to reside on the firm's server in the Summation database, and took no steps to make sure that it did not reside on any other computer, back-up file, desktop, laptop, or other media. Rather, the *only* review to try to figure out what happened was Mr. Cowen's review right before the February 25th hearing. Judge Toliver ignored all of these facts when she determined that Gruber Hurst "substantially" complied.

**F.** **Judge Toliver Erred in Requiring VAC to Demonstrate "Clear and Convincing Evidence" of a Violation by the Securus Parties**

**1.** *It was error to apply a clear and convincing standard.*

As set forth above, at this preliminary stage, VAC should not have been held to the clear and convincing standard imposed by Judge Toliver. Findings at 25 (VAC-Appx.025). Nevertheless, relying on the arguments set forth in the Securus Parties' post-hearing "Response" Brief that VAC failed to prove that the Securus Parties were ever in possession of the McAlexander Report or that they were aware that Gruber Hurst retained and disseminated the report, Judge Toliver concluded

21

that she could not "come to a clear conviction, without hesitancy, of the truth of the precise facts of the case." Findings at 25 (VAC-Appx.025) (citing ECF # 278 at 6-7).   VAC submits that it had sufficiently established facts necessary for a show cause to issue:  (1) the Protective Order continues in effect; (2) "Counsel Eyes Only" information (including the McAlexander Report) was restricted to outside counsel of record, and should have been destroyed or returned after this action was terminated; (3) Gruber Hurst improperly retained and disseminated the McAlexander Report; (4) Gruber Hurst was counsel for the Securus Parties, subject to the control of Reinhold, who was subject to the control of Smith.[20] *See generally Whitcraft v. Brown*, 570 F.3d at 271-72.  Thus, VAC established sufficient facts for a show cause order to issue.  VAC is entitled, through discovery,[21] to investigate the Securus Parties' declarations of innocence.   Holding VAC to a clear and convincing standard at the preliminary stage, without having the benefit of discovery, was error.

Although Judge Toliver did not make any explicit findings as to Respondents Smith and Reinhold, they were exonerated by virtue of the findings as to Gruber Hurst and T-Netix/Securus. It is clear however, that as officers of the corporation, they are responsible for ensuring compliance with this Court's orders, and that they did absolutely nothing, following the earlier contempt hearing, to ensure that the Counsel Eyes Only materials were effectively purged.  *See Am. Airlines, Inc. v. Allied Pilots Ass'n*, 53 F. Supp. 2d 909  (N.D. Tex. 1999) *aff'd*, 228 F.3d 574 (5th Cir. 2000) (union's officers in contempt for failing to cause compliance by union).  Mr. Reinhold perceives that

---

[20]   *See* 2/25 Hrg. Tr. 105:13 - 106:6 (VAC-Appx.136-37)(as general counsel, Reinhold managed and supervised litigation and outside counsel, and he was supervised by Mr. Smith).

[21]   In its Reply Brief to the Securus Parties' Response to the Application for a Show Cause Order (ECF #237 at 5 n.5), VAC indicated that it would be filing a discovery motion, but that prudence dictated that VAC wait until a ruling on VAC's Application to Show Cause.

he has "no duty" to ensure compliance with the Protective Order: "I didn't have a duty to do anything about it. I never had the document ... nor was it ever in Securus' possession. Our outside counsel did a callback ... so I had no further duty." 2/25 Hrg. Tr. 114:2-5 (VAC-Appx.145).[22]

> **2.    *It was error to find that the Securus Parties were not bound by the actions of Gruber Hurst.***

It is well-established that a client "is deemed bound by the acts of his lawyer-agent." *United States v. Villanueva-Diaz*, 634 F.3d 844, 852 n.4 (5th Cir. 2011) *cert. denied*, 132 S. Ct. 110, 181 L. Ed. 2d 36 (U.S. 2011); *Estel v. Bigelow Mgmt., Inc.*, 323 B.R. 918, 924 (E.D. Tex. 2005)(under the law of agency, the client is bound by his chosen attorney's deeds). Nevertheless, Judge Toliver found that the Securus Parties were not bound. For the first time, in Post-Hearing briefing, the Securus Parties asserted that Gruber Hurst was a "special agent" and was not authorized to obtain, retain or disseminate the McAlexander Report.[23] Judge Toliver accepted this argument, which was erroneous, both factually and legally. *See* Findings at 25 (VAC-Appx.025). Under Texas law, although an attorney is a "special agent," the attorney's authority includes "those powers necessary to the proper fulfillment of the duties cast upon him by such employment." *Duval County Ranch Co. v. Alamo Lumber Co.*, 663 S.W.2d 627, 633 (Tex. App. 1983) (client bound by statements in

---

[22]    Despite learning about this issue "sometime in 2011", Mr. Reinhold did not have an search done of the Securus computer system until the week before the February 25th Hearing. 2/25 Hrg. Tr. 113:5-115:10 (VAC-Appx.144-46). It was upon that foundation that Judge Toliver accepted the Securus Parties' argument that they never saw the McAlexander Report.

[23]    VAC never had an opportunity to respond to this new argument. Judge Toliver set simultaneous briefing with the first brief due on March 4, 2013. VAC and Gruber Hurst filed briefs that day. Response briefs were due on March 8th. The Securus Parties filed a "Response" Brief on March 8th, which VAC moved to strike on the grounds that the simultaneous briefing schedule did not provide for any further response, and that the brief raised totally new arguments, well beyond the limited briefing directed by Judge Toliver. (*See* ECF #286). Judge Toliver denied the Motion to Strike on March 20th (ECF #304). The Findings were issued a week later.

telegram sent by attorney, because the telegram was sent "within the purview" of relationship, even if statements not authorized); *Glass v. Anderson*, 596 S.W.2d 507, 509 (Tex.1980)(client bound by letter written by attorney repudiating several of the client's contracts, even if not authorized, because where the attorney represented the client generally in a transaction, the client is "bound by the acts or omissions of the attorney ... in the accomplishment of the purpose for which he was retained"); *Arbuckle Broadcasters, Inc. v. Rockwell Int'l Corp.*, 513 F. Supp. 412, 419 (N.D. Tex. 1981)(relying on *Glass* to conclude that client bound by attorneys' pursuit of certain claims because they were within the scope of the attorneys' representation, even if they had not been explicitly authorized).

The Securus Parties never raised Gruber Hurst's lack of authority until the post-hearing briefing, depriving VAC of any effective means of cross-examination on this issue, and revealing it for what it is: an artifice. *See Carburante Land Mgmt., LLC v. Hopkins*, 07-10-00398-CV, 2012 WL 1970115 (Tex. App. June 1, 2012)("significant" that client did not make "lack of authority" argument until new trial motion). This newly minted argument is astounding, given that obtaining documents from this case to use in other litigation was clearly within the purview of Gruber Hurst's responsibility. Mr. Reinhold testified as follows: "Well, their role was they wanted some documents in connection with another case, and as we've all heard in testimony this morning they asked for permission, and that was their involvement." 2/25 Hrg. at 109:20-23 (VAC-Appx. 140). The finding of lack of authority cannot be sustained; otherwise, a simple after-the-fact disavowal of authority would relieve a client from its lawyer's mistakes. This is not the law.[24]

---

[24] Texas law is replete with examples of clients being bound by the acts and omissions of attorneys even if not specifically authorized. *See, e.g., Texas Emp. Ins. Ass'n v. Wermske*, 349 S.W.2d 90, 93 (Tex. 1961)(failure to file compensation claim); *Gracey v. W.*, 422 S.W.2d 913, 916 (Tex. 1968)(failure to prosecute); *In re Guardianship of Patlan*, 350 S.W.3d 189, 197 (Tex. App. 2011)(failure to prosecute prior case in calculating time periods in subsequent case). This is not the typical case where a lawyer is deemed to exceed his authority by conveying property, or settling a

24

### G. The Motion to Purge Should not be Granted at this Time

In discussing the recommendation that the Motion to Purge (ECF #263) be granted, Judge Toliver states that "Gruber Hurst avers that it has repeatedly offered to delete the McAlexander Report from its database with the assistance of a forensic consulting firm, but VAC has refused." *See* Findings at 10, 26 (VAC-Appx.010, 026). Of course, the offer to purge was not made until November 2012, after this case was reopened. (ECF # 228, Oct. 31, 2012). An immediate purge will deprive VAC of its ability to trace the acquisition and dissemination of the document, and to refute the Securus Parties' contention that they *never* possessed the document. *See* ECF # 264 (VAC Response). Mr. Cowen's investigation immediately prior to the February 25th Hearing was the first explanation for how the documents remained in the database, but the admitted limitations of his investigation,[25] support VAC's position that a more thorough analysis is required. Only after a forensic report is prepared, and this Court is satisfied that the investigation was thorough, should the McAlexander Report be purged from the Gruber Hurst server.

### CONCLUSION

For the foregoing reasons, VAC respectfully requests that Judge Toliver's Findings, Conclusions, and Recommendation be rejected.

---

case without authority. *See, e.g., Johnson v. Rancho Guadalupe, Inc.,* 789 S.W.2d 596, 598 (Tex. App. 1990) ("no implied authority for an attorney to release the very right in interest he has been employed to secure and protect" by entering into unauthorized settlement); *Am. Nat. Ins. Co. v. Savage,* 112 S.W.2d 240, 242 (Tex. Civ. App. 1937)(attorney "cannot give away the real estate of his client").

[25] Prior to the hearing, VAC did not know that Mr. Cowen had made his recent inspection of the server. Although VAC did not object to Mr. Cowen's qualifications, or the fact that he was allowed to testify, VAC's ability to cross-examine him as to the adequacy of his investigation was limited. *See* 2/25 Hrg. Tr. 174:6 - 179:20 (Mr. Cowen testimony regarding the limitations of what he examined three weeks before the February 25th hearing).

Respectfully submitted,

/s/ Steven N. Williams
Steven N. Williams
Bar No. 21577625
Kenneth P. Kula
Bar No. 24004749
MCDOLE & WILLIAMS, PC
1700 Pacific Avenue, Suite 1280
Dallas, Texas 75201
Telephone: (214) 979-1122
Facsimile: (214) 979-1123
Email: swilliams@mcdolewilliams.com

/s/ Dale A. Cooter
Dale A. Cooter
Donna S. Mangold
COOTER, MANGOLD, DECKELBAUM
& KARAS, LLP
5301 Wisconsin Avenue, NW
Suite 500
Washington, DC 20015
(202) 537-0700 (tel.)
(202) 364-3664 (fax)
efiling@cootermangold.com

April 11, 2013                           *Attorneys for Defendant/Counter-plaintiff*
                                          *Value Added Communications, Inc.*

26

## CERTIFICATE OF SERVICE

On this 11th day of April 2013, I electronically submitted the foregoing document with the Clerk of the Court for the Northern District of Texas, Dallas Division, using the case filing system of the Court.

I hereby certify that I have served all counsel of record electronically or  by another manner authorized by F.R.Civ.P. 5(b)(2).


/s/ Dale A. Cooter
Dale A. Cooter

27