IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| T-NETIX, INC. <br><br> *Plaintiff/Counter-Defendant* <br><br> v. <br><br> VALUE-ADDED COMMUNICATIONS, INC. <br><br> *Defendant/Counter-Plaintiff* <br> v. <br><br> SECURUS TECHNOLOGIES, INC. <br><br> *Counter-Defendant* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 3-05-654-D <br><br> *TO BE FILED UNDER SEAL* |

**VALUE-ADDED COMMUNICATIONS, INC'S REPLY TO GRUBER HURST'S RESPONSE TO VAC's OBJECTIONS TO THE UNITED STATES MAGISTRATE JUDGE'S MARCH 28, 2013 FINDINGS, CONCLUSIONS AND RECOMMENDATIONS**

Dale A. Cooter
Donna S. Mangold
COOTER, MANGOLD, DECKELBAUM
& KARAS, LLP
5301 Wisconsin Avenue, NW, Suite 500
Washington, DC 20015
(202) 537-0700 (tel.)
(202) 364-3664 (fax)
efiling@cootermangold.com

Steven N. Williams (Bar No. 21577625)
Kenneth P. Kula (Bar No. 24004749)
MCDOLE & WILLIAMS, PC
1700 Pacific Avenue, Suite 1280
Dallas, Texas 75201
Telephone: (214) 979-1122
Facsimile: (214) 979-1123
swilliams@mcdolewilliams.com
*Attorneys for Defendant/Counter-plaintiff*
*Value Added Communications, Inc.*

Pursuant to Fed. R. Civ. P. 72(b), Northern District of Texas Local Rules 72.2 and 7.2, and 28 U.S.C. §636(b)(1), Defendant/Counter-Plaintiff Value-Added Communications, Inc. ("VAC"), respectfully submits the following Reply to Gruber Hurst's Response to VAC's Objections to the Magistrate Judge's March 28, 2013 Findings, Conclusions, and Recommendations ("Findings") (ECF #309)(VAC-Appx. 001):

## I. INTRODUCTION

In its Response, Gruber Hurst persists in dodging the real issue: it is counsel for Securus/T-Netix, a party to the Protective Order; the McAlexander Rebuttal Report ("McAlexander Report"), a document the firm should never have had because it was not counsel *in this action*, was improperly obtained, retained and disseminated, not only in 2008, but again in 2010. Thereafter, Gruber Hurst took no steps to alert VAC or any court of the improper possession and dissemination of the report. Although during the February 25th Hearing (and in its Response) Gruber Hurst has paid lip service to taking responsibility for its actions ("we disclosed this document. We fall on our sword, *mea culpa*, we're apologetic for it" 2/25 Hrg. Tr. 118:12-15 (VAC Appx. 149)), it seeks to avoid responsibility (and a finding of contempt) by resorting to hyper-technicalities and distortion of the issues (*e.g.*, excusing a failure to comply with Judge Sanderson's directive at the 2008 hearing by describing that directive as "Judge Sandersons' *wishes* at the 2008 hearing"; arguing that VAC is estopped; arguing that Gruber Hurst "should have been permitted to keep the Report"). *See* Gruber Hurst Response ("GH Response") at 2-3. The reality is that Gruber Hurst should not have had McAlexander Rebuttal Report in 2008 because it was not counsel in this action, and it should not

1

have disseminated it in the 2006 GTL Action[1]; it should have effectively purged the document in April 2008; it should never have retained the document; it should never have disseminated it in the Combined and Pinnacle Actions in 2010, and it should never have retained the Report thereafter.

In 2010, Gruber Hurst again had the chance to do the right thing: it should have notified VAC that the McAlexander Report - a "Counsel Eyes Only" document that was specifically at issue in the 2008 contempt proceeding – was in Gruber Hurst's possession, and that it had been improperly disseminated in the Combined and Pinnacle Actions. Thus, with knowledge that it had a document it was not entitled to possess, and until this action was filed, Gruber Hurst failed to take *any* steps in 2010, in 2011, or in 2012, to rectify its improper continued possession, either by alerting VAC or any court, including this Court. **In its Response, Gruber Hurst wholly ignores this failure.**[2] Rather, Gruber Hurst attempts to obscure the issue by arguing that "VAC has repeatedly rebuffed Gruber Hurst's efforts to hire an outside computer expert to remove/destroy the Report from its server." GH Response at 3. Only after this Court reopened the case did Gruber Hurst offer to purge

---

[1] T-Netix/Securus was also involved in litigation with Global Tel*Link Corporation ("GTL"), in *T-Netix, Inc. et al., v. Global Tel-Link Corporation,* No. 2:06-CV-00426 - TJW, in the Eastern District of Texas, Marshall Division ("2006 GTL Action"). Although GTL is now VAC's parent, at the time this action and the 2006 GTL Action were ongoing, VAC and GTL were competitors. Respondent Gruber Hurst represented T-Netix/Securus in the 2006 GTL Action; VAC was not a party in that action.

[2] Gruber Hurst became judge of its own conduct and the enforcement of the Protective Order when Mr. Magee determined to retain the document in 2010, and not alert VAC or any court about what happened. *See* VAC Objections at 13. *See Goya Foods, Inc. v. Wallack Mgmt. Co.,* 290 F.3d 63, 75-76 (1st Cir. 2002) ("the appellants could have asked the district court for clarification as to the enduring vitality of the [certain orders], but they eschewed that course. They chose instead to rely on their own judgment as to whether the orders remained in effect. In so doing, the appellants acted at their peril").

the McAlexander Report.  *See generally* Motion to Purge (ECF #263 at p. 3)(describing communications in November 2012). VAC did not "repeatedly rebuff" those efforts – VAC declined to agree to the purge because it was rightfully concerned that any purge would deprive it of its ability to trace the acquisition and dissemination of the document.  *See* VAC Hrg. Exh. 15 (November 16, 2012 e-mail from K. Kula to Shara Schafer, A. Magee, *et al.* explaining VAC's reasons for not agreeing to the purge of the Report)(VAC Appx. 544).  VAC submits that its concerns were warranted, given that until the day of February 25, 2013 hearing, neither Gruber Hurst nor the Securus Parties had ever offered any explanation for *how* the McAlexander Report had been retained or reacquired by Gruber Hurst. Significantly, until that time, none of the Respondents apparently knew, or cared to find out. It was not until two weeks before the February 25th hearing that Gruber Hurst finally hired a computer specialist (Mr. David Cowen) to figure out what had happened. VAC first learned about his efforts when Mr. Cowen testified at the hearing.

## II. VAC'S "LEGAL RELATIONSHIP" ANALYSIS IS APPROPRIATE

Gruber Hurst argues that VAC is relying on "newly found cases" to support its argument that Gruber Hurst's legal relationship with the Securus Parties can provide a basis for finding Gruber Hurst, a non-party, in contempt. *See* GH Response at 8. This is simply not true. VAC made the same argument in its briefing before Judge Toliver, and previously cited both *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 833 (2d Cir. 1930)(for a finding of contempt, "the respondent must either abet the defendant, or must be legally identified with him"), and *Quinter v. Volkswagen of Am.*, 676 F.2d 969, 972 (3d Cir.1982)(expert witness who violated a protective order was "legally identified" with both the plaintiff and the plaintiff's attorney, justifying a finding of contempt against the expert who divulged confidential materials in another case).  *See* VAC Brief on Certain Issues Raised at the

February 25, 2013 Hearing (ECF #269) at 9-10 (also citing *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 53 F. Supp. 2d 909, 941 (N.D. Tex. 1999) *aff'd*, 228 F.3d 574 (5th Cir. 2000); *Whitcraft v. Brown*, 570 F.3d 268, 272 (5th Cir. 2009); *NLRB v. Laborers' Int'l Union of N. Am., AFL–CIO*, 882 F.2d 949, 954 (5th Cir.1989); *Waffenschmidt v. MacKay*, 763 F.2d 711, 726 (5th Cir.1985)).

Moreover, VAC unequivocally argued at the February 25th hearing that as litigation counsel for the Securus Parties in other patent matters, Gruber Hurst was acting on behalf of the party bound by the Protective Order, and thus, could be subject to contempt. *See generally* 2/25 Hrg. Tr. 122:17 - 123:11; 127:6 - 130:18 (VAC Appx. 153-54, 158-61). Although VAC cited to *Whitcraft* and *Waffenschmidt* at the February 25th Hearing, its reliance on the "legal relationship" cases in its post-hearing briefing was to address Judge Toliver's inquiry at the hearing about whether active conspiracy to violate the Protective Order was required. *See* 2/25 Hrg. Tr. 122:17 - 123:11; 127:6 - 130:18 (VAC Appx. 153-54, 158-61). Gruber Hurst refers to *Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.*, 154 F.3d 1345 (Fed. Cir. 1998), as one of "VAC's newly found cases." GH Response at 8. This is not true. Magistrate Judge Toliver cited *Additive Controls* in the Findings (VAC Appx. 15), and so VAC's reliance on that case in its Objections was clearly appropriate. VAC's focus on "legal relationship" is not, as Gruber Hurst now contends, "playing loose and fast with the law." Nor is this an attempt by VAC to "divert the Court's attention" to cases from other circuits. GH Response at 8. Although it is a Federal Circuit case, *Additive Controls* involved an appeal from the Southern District of Texas, and the Federal Circuit specifically relied on Fifth Circuit law. *Additive Controls*, 154 F.3d at 1353 (citing *Waffenschmidt*, 763 F.2d at 723-26). Although *Whitcraft* and *Waffenschmidt* state the general principal for non-party contempt liability in the Fifth Circuit, VAC's citation to other cases was not an "objection" to

4

Fifth Circuit case law. *See* GH Response at 8. VAC was simply arguing that Gruber Hurst – as counsel for the Securus Parties – was not in the same position of the non-party bank in *Waffenschmidt*, and that the attorney-client relationship here could support a finding of contempt. VAC Objections at 11 (distinguishing *Waffenschmidt*, 763 F.2d at 726).

In addition, VAC did not "confuse" the *Additive Controls* discussion regarding non-party contempt. *See* GH Response at 8 n.1. The Federal Circuit recognized that because the non-party did not have a relationship with the enjoined party, "active concert and participation" was required to hold him in contempt. 154 F.3d at 1353. By selective quotation, Gruber Hurst asserts that the *Additive Controls* court "clearly states that 'in the Fifth Circuit' finding a non-party in contempt requires 'active concert and participation [with an enjoined party].'" GH Response at 9 (quoting *Additive Controls*, 154 F.3d at 1353). The full quotation from the case is as follows: "**because Harshmann had no relationship** [with the enjoined party], his contempt finding can be sustained only if he acted 'in active concert and participation'" with the former president of the enjoined party. 154 F.3d at 1353 (emphasis added). Thus, the Federal Circuit recognized that if a non-party has a "relationship" with the party subject to an order, the non-party can be found in contempt without a finding that he actively participated with the party to violate the order. *See also Additive Controls*, 154 F.3d at 1351(citing *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 833 (2d Cir. 1930)(for a finding of contempt, "the respondent must either abet the defendant, *or must be legally identified with him*")(emphasis added)). These cases do not reject the Fifth Circuit's jurisprudence nor are they inconsistent with it. To find Gruber Hurst in contempt of the Protective Order under these particular circumstances - where Gruber Hurst knew about the Protective Order, had a relationship to those bound, and had possession of the subject document - would not be inequitable nor would it conflict

5

with or undermine Fifth Circuit law. To exonerate Gruber Hurst merely because there is no evidence it actively conspired with a party to the Protective Order would deprive this Court of any meaningful ability to enforce its order.[3]

Gruber Hurst asserts that it would be "an enormous leap for a court to hold an attorney legally identifiable with a client in the same manner as an owner and majority shareholder." GH Response at 8 n. 1. To the contrary, under the facts of this case, it is not such a leap. It is undisputed that Gruber Hurst was acting on behalf of T-Netix/Securus in 2007 when it first obtained the McAlexander Report, disseminated it in 2008, and again, when it disseminated it in 2010. Indeed, Mr. Tautfest argued to Judge Sanderson, and testified at the February 25th Hearing, about the "coordinated effort" between Bell Nunnally and Gruber Hurst. *See, e.g,* 4/16/08 Hrg. Tr. at 20:19-21 (VAC-Appx.443) ("They gave them to us, our firm, because we also are assisting and are counsel in the Northern District case because we have overlapping patent issues"); 2/25 Hrg. Tr. 183:2 - 185:25 (VAC-Appx. 214-16)(describing "coordinated" activity on behalf of their shared client, T-Netix/Securus). Obtaining documents from this case to use in other litigation was clearly action by Gruber Hurst on behalf of its client T-Netix/Securus, and which was authorized by the client. Mr. Reinhold (T-Netix/Securus General Counsel) testified as follows: "Well, their role was they wanted some documents in connection with another case, and as we've all heard in testimony this morning they asked for permission, and that was their involvement." 2/25 Hrg. at 109:20-23 (VAC-Appx. 140). When Gruber Hurst represented T-Netix/Securus in the Pinnacle and CPC Actions, as well

---

[3] VAC submits that Fed. R. Civ. P. 65(d)(2) is instructive. Rule 65(d)(2)(A) binds all who are parties to the injunction. Rule 65(d)(2)(B) expressly binds a party's "officers, agents, servants, employees, and attorneys," while Rule 65(d)(2)(C) expressly binds "other persons who are in active concert or participation" with any party or person identified in subsections (A) or (B).

as earlier, in the 2006 GTL Action in the Eastern District of Texas, and it obtained, retained, and disseminated the McAlexander Report, it was doing so as the agent, and for the benefit of T-Netix/Securus. Its sole purpose was to promote the cause of its client. VAC submits that Gruber Hurst was sufficiently legally identified with T-Netix/Securus, a party to the Protective Order, to subject it to contempt. In *Quinter v. Volkswagen,* the expert witness was found in contempt for violation of a protective order because he was "legally identified" with both the plaintiff and the plaintiff's attorney, despite the fact that the expert divulged the documents in cases involving totally unrelated parties. 676 F.2d 969, 972; *see also Thompson v. Johnson,* 410 F. Supp. 633, 640 (E.D. Pa. 1976), *aff'd,* 556 F.2d 568 (3d Cir. 1977)(prison mail room supervisor, although not a party to a consent decree dealing with privileged mail, was bound by the decree and could be found in contempt because he met "the identity test of *Alemite Manufacturing Corp.*").[4] Here of course, Gruber Hurst's acquisition, retention, and dissemination of the McAlexander Report was on behalf of its client T-Netix/Securus, a party to the Protective Order.[5] A finding of contempt is appropriate.

### III. VAC IS NOT ATTEMPTING TO CHANGE THE CLEAR AND CONVINCING STANDARD

VAC has always acknowledged that contempt must be proven by clear and convincing evidence. As set forth in the Objections however, it was inappropriate for Judge Toliver to impose

---

[4] Although finding that the mail room supervisor was legally identified with the defendant officials of the correctional institution, and therefore was bound by the consent decree for contempt purposes, the *Thomas* Court did not find him in contempt. 410 F. Supp. at 642.

[5] VAC does not contend that the presence of an attorney client relationship would under any and all circumstances, simply on its own, support a contempt finding. The relationship must be examined in the context of the order which is violated, and how the violation occurs. Here, there is no dispute that Gruber Hurst's acquisition, retention, and dissemination of the protected document – the McAlexander Report – was specifically in furtherance of its attorney client relationship with the T-Netix/Securus.

that burden at the "show cause to show cause" stage. Objections at 3-4.[6]  Both of the cases cited by Gruber Hurst (*Lawfinders Assoc. Inc. v. Legal Research Center, Inc.,* CIV.A.3:98-CV-1766-D, 1998 WL 872844, *2 (N.D. Tex. Nov. 30, 1998); *S.E.C. ABC Viaticals Inc.,* 3:06-CV-02136-P, 2013 WL 1288168, *8 (N.D. Tex. Mar. 28, 2013)) are decisions by the District Court. *Lawfinders* involves a determination by the District Court, and does not arise from Magistrate Judge proceedings. *Lawfinders* simply does not address the proper burdens to be imposed by the Magistrate Judge at the preliminary stage. *Viaticals* involved *de novo* review by the District Court following recommendations by the Magistrate Judge. Although the District Court noted that the Magistrate Judge imposed a clear and convincing burden, there was no analysis as to whether that was the appropriate standard, and in its *de novo* review, the District Court explicitly ignored the credibility determinations made by the Magistrate Judge in its determination of whether the movant had established the contempt by clear and convincing evidence.   2013 WL 1288168, at *5.

## IV.  GRUBER HURST HAS OVERSTATED THE MAGISTRATE JUDGE'S FINDINGS REGARDING GOOD FAITH AND CREDIBILITY

As VAC argued in its Objections, Gruber Hurst's bad faith is at least in part demonstrated by Mr. Magee's communications with Ms. Clouston in August 2010. VAC submits that the only fair interpretation of these communications (described in detail at pages 14-17 of VAC's Objections) is that Mr. Magee intentionally communicated to Ms. Clouston in such a way that she was not alerted to the fact that Gruber Hurst possessed, and had disseminated, the McAlexander Report. And indeed, he affirmatively represented to Ms. Clouston that he had not seen the Report. In response,

---

[6] By challenging the burden applied by Judge Toliver, VAC does not concede that it failed to establish a prima facie case of contempt by clear and convincing evidence, even at the preliminary stage.

Gruber Hurst argues that the Magistrate Judge found that "Gruber Hurst acted in good faith" and that she made a "related finding that Mr. Magee was 'credible in all material respects.'" GH Response at 9. Notably, Gruber Hurst does not cite to any portion of the Findings to support these contentions. There was no generalized finding of "good faith." Rather, the Magistrate Judge found that Gruber Hurst made a "good faith effort" to comply with Judge Sanderson's directive in 2008 (which has absolutely nothing to do with the events in August 2010). Findings at 23-24 (VAC Appx. 023-24). Similarly, there was no generalized finding of credibility, and no specific finding that Mr. Magee had not misled Ms. Clouston. Rather, the credibility findings were specific:

> Gruber Hurst partner Magee testified that the production of the McAlexander Report in the Combined and Pinnacle Actions was solely the error of Gruber Hurst. Magee recalled in detail the manner in which the McAlexnader Report was found [by an outside vendor so Magee could produce documents in the Combined and Pinnacle cases] and the Court finds his testimony *to be credible in all material respects*. ... the McAlexander Report was included ... with approximately 600,000 images, and the Court thus deems it credible that Magee was not aware of its existence until after he had already produced the Report in the Combined and Pinnacle Actions. ... Further the Court finds credible Magee's testimony that he was unaware of the prior contempt proceedings in this action given that he did not start to work at Gruber Hurst until after the instant action was dismissed.

Findings at 17-18 (VAC Appx. 017-18)(emphasis added). VAC did not contest Mr. Magee's testimony on these issues. The Magistrate Judge clearly did not make a generalized statement of Magee's credibility, nor find that his testimony about what and how he communicated to Ms. Clouston in late August 2010 was "credible." Even if the Magistrate Judge had made such a finding of credibility in the specific context of Magee's communications with Ms. Clouston, VAC would submit that any such finding would be in error, given Mr. Magee's written communications to Ms. Clouston and Christine Ryan (then-counsel for Combined) at the same time. The conflict is not between Mr. Magee's testimony and Ms. Clouston's testimony. Rather, the conflict is between Mr.

Magee's current testimony and his communications in late August 2010. *See* VAC Hrg. Exhs. 10 and 11 (VAC Appx. 527-28, 529-35). *See* VAC's Objections at pages 14-17.

VAC has not placed Magee's communications with Ms. Clouston, Mr. Lang, and Ms. Ryan out of sequence. *See* GH Response at 10. Mr. Magee testified that he "first learned" of the Protective Order and the McAlexander Report at the same time, in his conversation with Mr. Lang which "was probably" on August 26, 2010. 2/25 Hrg. Tr. 301:12 - 302:7 (VAC Appx.332-33). Yet, his *August 25th* e-mail to Ms. Clouston explicitly refers to the Protective Order: "I have not seen these contentions because of the prohibitions *contained in the protective order* ... ." VAC Hrg. Exh. 10 (VAC-Appx. 527). This is the very same protective order (the Protective Order in this case) he now claims he did not know about until August 26th. In addition, two days after his e-mail to Ms. Clouston, (in his August 27th "snapback" letter to Ms. Ryan) he specifically describes the McAlexander Report as "relating to invalidity contentions," and states that he is "*in discussions with VAC* and will let you know its position [about producing the McAlexander Report] as soon as we can." VAC Hrg. Exh. 11(VAC-Appx. 529)(emphasis added). His "discussions with VAC" about producing the McAlexander Report can only refer to his earlier telephone and e-mail communications with Ms. Clouston. VAC respectfully submits that Mr. Magee's conduct in August 2010 in his communications with Ms. Clouston are evidence of bad faith which should have been considered by Judge Toliver, and which support a finding of contempt.

## IV. CONCLUSION

For the foregoing reasons, and as set forth in VAC's Objections, VAC respectfully requests that Judge Toliver's Findings, Conclusions, and Recommendation be rejected.

                    Respectfully submitted,

/s/ Steven N. Williams
Steven N. Williams, Bar No. 21577625
Kenneth P. Kula, Bar No. 24004749
MCDOLE & WILLIAMS, PC
1700 Pacific Avenue, Suite 1280
Dallas, Texas 75201
Telephone: (214) 979-1122
Facsimile: (214) 979-1123
Email: swilliams@mcdolewilliams.com

/s/ Dale A. Cooter
Dale A. Cooter   (Admitted pro hac vice)
Donna S. Mangold (Admitted pro hac vice)
COOTER, MANGOLD, DECKELBAUM
& KARAS, LLP
5301 Wisconsin Avenue, NW
Suite 500
Washington, DC 20015
(202) 537-0700 (tel.)
(202) 364-3664 (fax)
efiling@cootermangold.com

May 9, 2013

*Attorneys for Defendant/Counter-plaintiff
Value Added Communications, Inc.*

## CERTIFICATE OF SERVICE

On this 9th day of May 2013, I electronically submitted the foregoing document with the Clerk of the Court for the Northern District of Texas, Dallas Division, using the case filing system of the Court.

I hereby certify that I have served all counsel of record electronically or by another manner authorized by F.R.Civ.P. 5(b)(2).


/s/ Dale A. Cooter
Dale A. Cooter